**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

GARY C. and GALE B. WARREN,
and TOLL BROS., INC.,

              Plaintiffs,

    v.

NEW CASTLE COUNTY,

              Defendant.

C.A. No. 07-725 LPS

**NEW CASTLE COUNTY'S BRIEF IN
<u>SUPPORT OF ITS MOTION TO DISMISS</u>**

CONNOLLY BOVE LODGE & HUTZ LLP
Collins J. Seitz, Jr. (Bar No. 2736)
Max B. Walton (Bar No. 3876)
The Nemours Building
1007 North Orange Street, 8th Floor
P.O. Box 2207
Wilmington, DE 19899
Tel: (302) 658-9141
Fax: (302) 656-0116
*Attorneys for New Castle County*

Dated:  January 4, 2008

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ...........................................................................................1

NATURE AND STAGE OF THE PROCEEDINGS ......................................................2

SUMMARY OF ARGUMENT .........................................................................................2

STATEMENT OF FACTS .................................................................................................3

      A.    The State's Grant Of Authority To The County ...................................................3

      B.    The County's State Law Authorization For Sewer Control...................................3

      C.    Sewer Capacity And The County's Land Development Approval Process ............4

      D.    The County's Administrative Appeal Process.........................................................5

      E.    The Southern Sewer Service Area ........................................................................5

      F.    The County Evaluates The SSSA Plan ...................................................................6

      G.    The County Revises the SSSA Concept Plan ........................................................6

      H.    Implementation of Resolution 06-069 ...................................................................8

      I.    Toll's Recognition That No Sewer Service Is Available For The 616 Acre
Tract .......................................................................................................................8

      J.    Toll Continues To Seek Approvals Even After The Passage Of Resolution
06-069 ..................................................................................................................10

      K.    The County Stops Processing Plans For Connection To Sewer When
Sewer Service Is Not Available ...........................................................................11

      L.    Toll Files Suit Instead Of Pursuing An Administrative Appeal ...........................11

ARGUMENT...................................................................................................................12

I.    TOLL'S COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(b)(1)
BECAUSE THE CASE IS NOT RIPE...................................................................12

      A.    Ripeness Is Jurisdictional....................................................................................12

      B.    Toll's Constitutional Claims Are Not Ripe .........................................................13

            1.    The Finality Requirement .........................................................................13

            2.    Toll's Substantive Due Process Claim Is Not Ripe ...................................15

                a.    Toll Has Not Made Any Application For A Private Sewer
System, Nor Has Toll Appealed Any Decision. ............................15

                b.    The Processing Claim Is Not Ripe For Review..............................17

                c.    The County Has Not Finally Decided Whether Sewer
Capacity Will Ultimately Be Available ........................................18

            3.    Toll's Equal Protection Claims Are Not Ripe For Review........................19

C.      Toll's Anti-Trust Claims Are Not Ripe .................................................19

II.     ALL OF TOLL'S CLAIMS SHOULD BE DISMISSED UNDER RULE 12(B)(6) ........21

A.      The Rule 12(b)(6) Standards..................................................................21

B.      Toll's Anti-Trust Claims Fail As A Matter Of Law ...............................21

C.      Toll's Substantive Due Process Claims Fail As A Matter Of Law........................24

1.      Toll Has No Right To Sewer Service .......................................24

2.      The County Has No Duty To Provide A Sewer System ...........................25

3.      The County's Alleged Conduct Does Not Meet The Demanding Substantive Due Process Test .....................................................27

a.      Executive Action Must Shock The Conscience To State A Substantive Due Process Claim ....................................27

b.      Legislative Acts Satisfy The Substantive Due Process Test If Any Rational Basis Exists .....................................27

c.      The County's Actions Are A Hybrid Of Executive And Legislative Actions .......................................................28

d.      The County's "Path Forward" For The SSSA Is Rational And Does Not Shock The Conscience.........................................29\\

D.      Toll Has Failed To State An Equal Protection Claim .............................30

1.      The County Is Not Providing Any Sewer Service To The Northeast SSSA.....................................................................................31

2.      The County Is Not Treating Toll Any Differently Than Pennfield ...........32

E.      The Declaratory Judgment Claim Fails As A Matter Of Law ...............32

1.      The Court Lacks Jurisdiction Over Toll's Declaratory Judgment Claims ...........................................................................33

2.      Section 40.05.520C Does Not Provide Toll A Right To Construct Private Sewer Systems ...............................................................33

F.      The Equitable Estoppel Claim Fails As A Matter Of Law ....................35

1.      The Equitable Estopel Claim Should Be Dismissed For Failure To Exhaust Administrative Remedies.............................................35

2.      Standards For Applying Equitable Estoppel Against The Government....................................................................................36

a.      Toll Equitable Estoppel Claim Should Be Denied Because It Has Uses For The Land Absent Estoppel..................................37

b.      Toll Was Always Aware That Sewer Service Might Not Be Available .................................................................................38

c.      Toll Never Had Any Right To Sewer Service ...............................39

        d.     There Are No Highly Inequitable Circumstances...........................39

CONCLUSION..............................................................................................................................40

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

*Acierno v. Haggerty,*
  2005 WL 3134060 (D. Del. Nov. 23, 2005) ............................................................. 13

*Acierno v. Mitchell,*
  6 F.3d 970 (3d Cir. 1993) ........................................................................... passim

*Acierno v. New Castle County Dept. of Land Use,*
  2006 WL 1668370 (Del. Ch. June 8, 2006) ............................................................. 13

*Acierno v. New Castle County,*
  2000 WL 718346 (D. Del. 2000) ............................................................... 31, 37, 38

*Amiot v. Kemper Ins. Co.,*
  122 Fed. Appx. 577 (3d Cir. 2004)) ...................................................................... 21

*Angstadt v. Mid-West School Dist.,*
  377 F.3d 338 (3d Cir. 2004) .............................................................................. 31

*Anjelino v. The New York Times Co.,*
  200 F.3d 73 (3d Cir. 1999) ............................................................................... 13

*Ash/Ramunno Associates v. Branner,*
  1993 WL 11701 (Del. Ch. Jan. 19, 1993) ................................................................ 25

*Associated Gen. Contractors of Calif., Inc. v. Calif. State Council of Carpenters,*
  459 U.S. 519 (1983) ....................................................................................... 21

*Avalonbay Communities, Inc. v. Sewer Commission of the City of Medford,*
  853 A.2d 497 (Conn. 2004) ..................................................................... 26, 31, 39

*Baldini West, Inc. v. New Castle County,*
  852 F. Supp. 251 (D. Del. 1994) .............................................................. 15, 16, 17

*Bateman v. City of West Bountiful,*
  89 F.3d 704 (10th Cir. 1996)) ........................................................................... 14

*Blain v. Tp. Of Radnor,*
  167 Fed Appx. 330 (3d Cir. 2006) ....................................................................... 27

*Brubaker v. East Heppfield Tp.,*
  234 Fed. Appx. 32 (3d Cir. Apr. 27, 2007) ............................................................... 14

*Christiana Town Center, LLC v. New Castle County,*
  2003 WL 21314499 (Del. Ch. June 6, 2003),
  *aff'd,* 841 A.2d 307 (Del. Jan 16, 2004) .......................................................... 5, 17

*Cine 42nd St. Theater Corp. v. Nederlander Org., Inc.,*
  609 F. Supp. 113 (D.C.N.Y. 1985),
  *aff'd,* 790 F.2d 1032 (2d Cir. 1986) ................................................................... 22

*City of Greenville v. Queen City Lumber Co.,*
　　86 So.2d 860 (Miss. 1956)......................................................................... 26

*City of Lafayette v. La. Power & Light Co.,*
　　435 U.S 389 (1978)................................................................................... 21

*City of Tyler v. Likes*
　　962 S.W.2d 489 (Tex. 1997)...................................................................... 26

*Commonwealth of Penn. v. PepsiCo, Inc.,*
　　836 F.2d 173 (3d Cir. 1988)....................................................................... 21

*Cooper v. Amster,*
　　645 F. Supp. 46 (E.D. Pa. 1986) ............................................................... 19

*County Concrete Corp. v. Tp. Of Roxbury,*
　　442 F.3d 159 (3d Cir. 2006)............................................................... passim

*Crosby v. Hosp. Auth. Of Valdotta & Lowndes Cty.,*
　　93 F.3d 1515 (11th Cir. 1996) ................................................................. 22

*Delaware River and Bay Authority v. Delaware Outdoor Advertising, Inc.,*
　　1998 WL 83056 (Del. Ch. Feb. 20, 1998) ................................................. 37

*Denninno v. Municipality of Penn Hills,*
　　2007 WL 316392 (W.D. Pa. Jan. 31, 2007)............................................... 14

*Desi's Pizza, Inc. v. City of Wilkes-Barre,*
　　2006 WL 2460881 (M.D. Pa. Aug. 23, 2006) ........................................... 25

*Desi's Pizza, Inc. v. City of Wilkes-Barre,*
　　321 F.3d 411 (3d Cir. 2003)....................................................................... 24

*Development Group LLC v. Franklin Tp. Bd. Of Supervisors,*
　　2003 WL 22358440 (E.D. Pa. Sept. 24, 2003),
　　*aff'd,* 162 Fed. Appx. 158 (3d Cir. 2006) ................................................. 30

*Duke/Fluor Caribbean S.P. v. Alstom Power, Inc.,*
　　2004 WL 2095702 (D. Del. Sept. 20, 2004)............................................... 40

*Eastern Shore Environmental, Inc. v. Kent County Department of Planning,*
　　2002 WL 244690 (Del. Ch. Feb. 1, 2002) ....................................... 14, 17, 35, 36

*Eichenlaub v. Tp. Of Indiana,*
　　385 F.3d 274 (3d Cir. 2004)............................................................. 27, 30, 31

*FTC v. Standard Oil,*
　　449 U.S. 232 (1980)................................................................................... 33

*Gagliardi v. Clark,*
　　2006 WL 2847409 (W.D. Pa. Sept. 28, 2006)........................................... 25

*Glendon Energy Co. v. Borough of Glendon,*
　　836 F. Supp. 1109 (E.D. Pa. 1993) ........................................................... 15

*Hackett v. Board of Adjustment Of Rehoboth Beach,*
　　794 A.2d 596 (Del. 2002) .......................................................................... 12

*Hancock Industries v. Schaeffer*,
 619 F. Supp. 322 (E.D. Pa. 1985) .................................................................. 24

*Harden v. Christiana Sch. Dist.*,
 924 A.2d 247 (Del. Ch. 2007)......................................................................... 34

*Hawkins v. City of Greenville*,
 594 S.E.2d 557 (S.C. App. 2004) ............................................................. 26, 39

*Herr v. Pequea Tp.*,
 274 F.3d 109 (3d Cir. 2001)............................................................................ 28

*Hill v. Borough of Kutztown*,
 455 F.3d 225 (3d Cir. 2006)............................................................................ 25

*Huberty v. U.S. Ambassador to Costa Rica*,
 2007 WL 3119284 (M.D. Pa. Oct. 22, 2007) ................................................. 13

*Kaehley v. City of Pittsburgh*,
 988 F. Supp. 888 (W.D. Pa. 1997).................................................................. 22

*Keenan v. City of Philadelphia*,
 983 F.2d 459 (3d Cir. 1992) ........................................................................... 30

*Kopicko v. Department of Services for Children, Youth and Their Families*,
 2004 WL 1837903 (D. Del. Aug. 13, 2004) ................................................... 21

*L & H Sanitation, Inc. v. Lake City Sanitation, Inc.*,
 769 F.2d 517 (8th Cir. 1985) ......................................................................... 23

*Levinson v. Delaware Compensation Rating Bureau*,
 616 A.2d 1182 (Del. 1992) ............................................................................. 35

*Malmed v. Thornburgh*,
 621 F.2d 565 (3d Cir. 1980)............................................................................ 28

*Martinez v. Cook*,
 244 P.2d 134 (N.M. 1952) .............................................................................. 26

*Mayor and Alderman of the City of Vicksburg v. Vicksburg Water Works Co.*,
 202 U.S. 453 (1906)........................................................................................ 26

*Miller v. Brentwood*,
 548 S.W.2d 878 (Tenn. App. 1977)........................................................... 26, 39

*Mortenson v. First Federal Savings and Loan Ass'n*,
 549 F.2d 884 (3d Cir. 1977)...................................................................... 13, 18

*Motiva Enters. LLC v. Secretary of the Dept. of Natural Res. & Envtl. Control*,
 745 A.2d 234 (Del. Super. Ct. 1999) .............................................................. 37

*Myers v. Bethlehem Shipbuilding Corp.*,
 303 U.S. 41 (1938).......................................................................................... 33

*Nicholas v. Pennsylvania State University,*
   27 F.3d 133 (3rd Cir. 2000) ........................................................................ 25

*Pace Resources, Inc. v. Shrewsbury Tp.,*
   808 F.2d 1023 (3d Cir. 1987).................................................................... 28

*Parker v. Brown,*
   317 U.S. 341 (1943)..................................................................................... 21

*Phillips v. County of Alleghany,*
   2006 WL 1330206 (W.D. Pa. May 15, 2006)........................................ 30

*Purze v. Village of Winthrop Harbor,*
   286 F.3d 452 (7th Cir. 2002) .................................................................... 30

*Ramsgate Court Townhome Ass'n v. West Chester Borough,*
   313 F.3d 157 (3d Cir. 2002)...................................................................... 28

*Ransom v. Marrazzo,*
   848 F.2d 398 (3d Cir. 1988)...................................................................... 25

*Richards v. City of Tustin,*
   225 Cal. App.2d 97 (Cal. App. 1964) ................................................. 25, 31

*Rogin v. Bensalem Tp.,*
   616 F.2d 680 (3d Cir. 1980)...................................................................... 28

*Salem Church (Delaware) Associates v. New Castle County,*
   2006 WL 2873745 (Del. Ch. Oct. 6, 2006) ................................... passim

*Sameric Corp. v. City of Philadelphia,*
   142 F.3d 582 (3d Cir. 1998)................................................................. passim

*Shipley v. Orndoff,*
   491 F. Supp.2d 498 (D. Del. 2007).......................................................... 21

*Snyder v. State Dept. of Health and Mental Hygiene,*
   391 A.2d 863 (Md. App. 1978)............................................................ 25, 31

*State Auto Ins. Companies v. Summy,*
   234 F.3d 131 (3d Cir. 2000)...................................................................... 40

*Stevens v. Northwestern Indiana District Council,*
   20 F.3d 720 (7th Cir. 1994) ...................................................................... 16

*Suburban Trails, Inc. v. New Jersey Transit Corp.,*
   800 F.2d 361 (3d Cir. 1986)...................................................................... 20

*Taylor Inv., Ltd. v. Upper Darby Twp.,*
   983 F.2d 1285 (3d Cir. 1993)............................................................... 13, 14

*Thornbury Noble, Ltd. v. Thornbury Twp.,*
   112 Fed. Appx. 185 (3d Cir. 2004)......................................................... 27

*Town of Hallie v. City of Eau Claire,*
   471 U.S. 34 (1985)................................................................................ 22, 23

*Tri-State Rubbish, Inc. v. Waste Mgmt., Inc.*,
    803 F. Supp. 451 (D. Me. 1992) ................................................................. 23

*United Artist Theatre Co., Inc. v. Tp. Of Warrington*,
    316 F.3d 392 (3d Cir. 2003)...................................................................... 27

*United States v. Pollard*,
    326 F.3d 397 (3d Cir. 2003)............................................................... 28, 31

*Unity Ventures v. Lake County*,
    841 F.2d 770 (7th Cir. 1988) ........................................................... passim

*Village of Willowbrook v. Olech*,
    528 U.S. 562 (2000)................................................................................ 31

*Waggoner v. Laster*,
    581 A.2d 1127 (Del. 1990) ...................................................................... 36

*Washington Greene Associates, Inc. v. Mayor of New Castle*,
    1990 WL 1242522 (Del. Super. Ct. Nov. 5, 1990) .................................. 16

**Statutes**

15 U.S.C. §§ 1-2 ............................................................................................ 23

15 U.S.C. §§ 34-36 ........................................................................................ 24

Del. Code Ann. tit. 9 § 1101 ............................................................................ 3

Del. Code Ann. tit. 9 § 1521 ....................................................................... 3, 26

Del. Code Ann. tit. 9 § 2202(2) ................................................................... 3, 22

Del. Code Ann. tit. 9 § 2220 ......................................................................... 3, 4

Del. Code Ann. tit. 9 § 2603 ............................................................................ 3

Del. Code Ann. tit. 9 § 2656(c) ....................................................................... 6

Del. Code Ann. tit. 9 § 2651(b) ....................................................................... 6

Del. Code Ann. tit. 9 § 2656(d) ....................................................................... 6

Del. Code Ann. tit. 26 § 203D(b)................................................................... 35

Del. Const. Art. II § 25 .................................................................................... 3

Title 9, Chapter 26 of the Delaware Code ....................................................... 3

Title 9, Chapter 22 of the Delaware Code ....................................................... 3

**Other Authorities**

2 James W.M. Moore,
    *Moore's Federal Practice* § 12.30[3] (2005) ......................................... 13

**Rules**

Rule 12(b)(1)................................................................................................................ 13

Rule 12(b)(6)................................................................................................................ 21

Rule 12(b)(7)................................................................................................................ 12

Rule 19(c).................................................................................................................... 12

**Regulations**

NCC Code § 38.02.002........................................................................................ 4, 33, 39

NCC Code § 40.05.320........................................................................................ 4, 11, 34

NCC Code § 40.22.330................................................................................................... 4

NCC Code § 40.22.360................................................................................................... 4

NCC Code § 40.30.110............................................................................................... 5, 16

NCC Code § 40.31.112................................................................................................... 4

NCC Code § 40.31.114................................................................................................... 4

NCC Code § 40.31.510............................................................................................... 5, 16

NCC Code § 40.31.512.................................................................................................... 5

NCC Code § 40.31.512A.......................................................................................... 17, 19

NCC Code § 40.31.820........................................................................................... 4, 39

NCC Code § 40.33.300................................................................................................. 16

## PRELIMINARY STATEMENT

Gary C. Warren, Gale B. Warren and Toll Bros., Inc. (collectively "Toll") ask the Court to compel New Castle County ("County") to process land development applications and compel sewer service for a proposed 600 unit housing development, even though all available sewer capacity is committed to other development, and no sewer infrastructure exists where Toll wants to build its massive project. Toll wants a connection to sewage treatment facilities (instead of building septic systems) because sewer connection will allow Toll to obtain more building lots. There is no obstacle to Toll promptly obtaining development approvals to build houses with on-lot septic systems, although there would be some reduction in the overall number of units. Throughout the process, the County advised Toll that no sewer service was or would be available for Toll's proposed development. In June 2006, the County reiterated this position:

> This plan relies on connection to a public sanitary sewer system, but no such system exists. The applicant has been advised on numerous occasions, since the initial plan submission, that the County has made no commitment to provide sewer infrastructure availability to this site. The developer is again reminded that advancing a subdivision plan in reliance of the provision of sewer infrastructure secures no guarantee that the County will provide such infrastructure. Without an approved sewerage strategy, the plan will not be approved and construction will not be permitted. Compl. Ex. "P."

Putting aside the lack of equities in Toll's position, Toll has jumped the gun and filed this suit before pursuing administrative remedies which would result in a final determination regarding Toll's development applications. Its constitutional and antitrust claims are therefore unripe because Toll has not exercised its available administrative appeals. Even if Toll's claims were ripe, Toll has no federally protected right to sewer service, and Toll's constitutional, antitrust, declaratory judgment, and estoppel claims are therefore deficient as a matter of law.

1

## NATURE AND STAGE OF THE PROCEEDINGS

Toll filed this action on November 13, 2007.  This is the County's opening brief in support of its motion to dismiss.

## SUMMARY OF ARGUMENT

I.      Toll has not applied for nor received a final decision on its land use application. The ripeness doctrine therefore bars Toll's antitrust and constitutional claims.

II.     *Parker* immunity bars Toll's antitrust claims against the County because the County is acting pursuant to a clearly articulated State policy.

III.    Toll's substantive due process claim should be dismissed because Toll has no constitutionally protected right to sewer service.  Moreover, Toll has not alleged facts sufficient to state a substantive due process claim.

IV.     Toll's equal protection claim should be dismissed because the County has not provided sewer service to any similarly situated developer or treated any similarly situated developer differently than Toll.

V.      Toll's request for declaratory relief should be dismissed because Toll has failed to exhaust its administrative remedies and because no statute mandates that the County provide sewer service to Toll.

VI.     Toll's equitable estoppel claim should be dismissed because Toll has failed to exhaust its administrative remedies and Toll cannot satisfy the elements of an equitable estoppel claim as a matter of law.

## STATEMENT OF FACTS[1]

### A.    The State's Grant Of Authority To The County

The County is a political subdivision of the State of Delaware established by Title 9 of the Delaware Code.  The State has granted the County "home rule" jurisdiction, which permits the County to exercise all powers that "it would be competent for the General Assembly to grant by specific enumeration."  Del. Code Ann. tit. 9 § 1101; *see also Salem Church (Delaware) Associates v. New Castle County*, C.A. No. 20305, 2006 WL 2873745, at *5 n.44 (Del. Ch. Oct. 6, 2006) ("*Salem Church*").[2]  The County is expressly authorized to adopt and to administer planning, zoning, and subdivision regulations.  *See* Title 9 Chapter 26 of the Delaware Code; *see also* Del. Const. Art. II § 25.  Under the County's zoning power, the County directs development into areas where adequate public facilities are available.  *See* Del. Code Ann. tit. 9 § 2603.

### B.    The County's State Law Authorization For Sewer Control

Under State law, the County has express authority to act upon all matters pertaining to sewers.  Under Title 9, § 1521, entitled "Enumeration Of Certain Specific Powers," the State granted the County the following authority:

> In addition to the powers elsewhere conferred upon the New Castle County Council and without limiting their generality, the New Castle County Council shall have general jurisdiction over all matters pertaining to the County, its business, finances and general welfare, including the power to act upon all matters pertaining to sewers, sewerage disposal plants, trunk line sewers and sewerage systems generally. . .

The County's general jurisdiction to "act upon all matters pertaining to sewers" is further outlined in Title 9, Chapter 22 of the Delaware Code, entitled "Sewers."  Section 2202(2) grants

---

[1]    The County accepts as true the allegations in the complaint only for the purposes of this motion.
[2]    Under the County's home rule statute, "the County is given great flexibility to discharge its functions, except as otherwise limited by the State's Constitution or its statutes."  *Salem Church*, 2006 WL 2873745, at *5 n.44.

the County the right to plan, construct and improve "any sewerage system and furnish the services and facilities rendered or afforded thereby." This authority is "in addition to and not in substitution for the powers conferred by any other general, special or local law." Del. Code Ann. tit. 9 § 2220.

### C.    Sewer Capacity And The County's Land Development Approval Process

To obtain development approval under County law, a developer must satisfy a three stage plan approval process – exploratory, preliminary and record (or final) plan approval. NCC Code §§ 40.31.112-114 and Appendix 1 of Chapter 40;[3] *Salem Church*, 2006 WL 2873745, at *6. If development plans are submitted that require connection to County sewer service, then prior to receiving final or record plan approval, sewer service must be available for the proposed development. NCC Code § 40.05.320. At the record plan stage, developers "reserve" capacity by executing a sewer agreement with the County, which is an allocation of the County's available sewer service capacity for the houses to be built on the recorded development plan.[4] If sewer service is or will be available for the proposed development at the record plan stage, the developer reserves capacity when a sewer agreement is executed as part of a land development improvement agreement ("LDIA") with the County. NCC Code § 38.02.002; NCC Code § 40.31.820.

If sewer service is not available for the proposed development, then the developer is generally required to submit building plans for on-lot wastewater treatment systems, commonly known as septic systems. *See* NCC Code § 40.22.330; *see* NCC Code § 40.22.360. If possible, developers usually seek connection to sewer to obtain more building lots, because developers are

---

[3]    The New Castle County Code may be found online at www.co.new-castle.de.us/landuse/home/webpage22.asp.

[4]    Developers are generally advised at the preliminary plan stage of available sewer capacity for proposed development. NCC Code § 38.02.002.

generally limited to three quarter or one acre lots sizes if the lots proposed are served by septic systems. *See* NCC Code § 40.22.360A.

### D.     The County's Administrative Appeal Process

Under the County's statutory and home rule authority, the County Council has established administrative boards that are the final decision makers for land development applications. *See Salem Church*, 2006 WL 2873745, at *5 n.44.  A land use applicant who is aggrieved by a "finding, decision or interpretation of a decision maker" may appeal a final decision to the proper review board within twenty days after the decision is made.  NCC Code § 40.31.510; *Christiana Town Center, LLC v. New Castle County*, C.A. No. 20215, 2003 WL 21314499, at *4 (Del. Ch. June 6, 2003), *aff'd*, No. 318, 2003, 841 A.2d 307 (Del. Jan 16, 2004). The board may reverse a decision if the administrative official makes an error in an interpretation of the Code, or if the findings are not a result of an orderly and logical review of the evidence. NCC Code § 40.31.512.   For decisions relating to subdivision review or interpretation of subdivision regulations, the Planning Board is generally the appellate body responsible for hearing the appeal.  NCC Code § 40.30.110.  The Board of Adjustment generally hears variance requests and zoning appeals. *See id.*[5]

### E.     The Southern Sewer Service Area

As alleged by Toll, in the mid-1990s, the County began to develop concept plans for sewer service for an area south of the C&D canal and north of Middletown, Delaware.  Compl. ¶ 47.  The area is known as the Southern Sewer Service Area ("SSSA").  The old SSSA plans were concepts plans only because there was limited sewer infrastructure built at that time in this

---

[5]     If a developer claims the County has caused a "taking" of its property, the developer must make a beneficial use appeal to the Board of Adjustment before it can assert a takings claim in court. *Salem Church,* 2006 WL 2873745, at *8.

largely rural area. Compl. ¶ 46.[6]  The County's early plan was a phased plan, and considered expanding Water Farm #1 and potentially building Water Farm #2.

The County decided to upgrade Water Farm #1, and the treatment facility is operational today. The County purchased the land for Water Farm #2, but has not built the facility. As of 2004, the County projected that Water Farm #2, when built, would ultimately service a large portion of the SSSA, but the construction and implementation of Water Farm #2 and necessary conveyance systems would be phased. *See* Compl. Ex. "C."

**F.    The County Evaluates The SSSA Plan**

In 2005, the County decided to study the previous concept plan. As set forth in the exhibits to Toll's complaint, "[i]n light of the magnitude and complexity of sewering the SSSA, the County retained a nationally renowned engineering firm to evaluate alternatives" for the proposed SSSA. Compl. Ex. "H" p. 1. The engineering firm, Red Oak Consulting, performed a comprehensive evaluation of the County's wastewater program for the SSSA ("Red Oak Report"). Compl. ¶ 86. The Red Oak Report found that the County's prior concept proposal was practically and financially unfeasible. As alleged by Toll, the Red Oak Report, issued January 25, 2006, "determined that the County's existing sewage treatment plan for the SSSA was inadequate. . . ". Compl. ¶¶ 87-88.

**G.    The County Revises the SSSA Concept Plan**

After studying the Red Oak Report, the County determined that the old concept plan for SSSA sewer service was not feasible. The County then decided to continue with its plan to

---

[6]    Under the State comprehensive planning statutes, the County is required, as part of its comprehensive plan approval process, to develop capital improvement plans that include sewers. Del. Code Ann. tit. 9 § 2656(c).  Capital improvement plans, however, may be "modified as necessary" without amending the County comprehensive plan. *Id.* at § 2656(d).  Capital improvement plans are merely concept plans, as only the County's comprehensive plan zoning maps have the force of law. Del. Code Ann. tit. 9 §§ 2651(b) and 2652(b).

allocate available sewer capacity in the SSSA in an area known as the Central Core. *See* Compl. ¶ 96. To determine how existing sewer capacity and conveyance systems should be allocated, the County Council passed Resolution 06-069, to provide a "path forward" for the construction and implementation of the SSSA. Compl. Ex. "H."[7]

In Resolution 06-069, the County Council: (1) directed that conveyance systems be constructed for the Central Core; (2) directed the County to purchase additional sewer capacity for the Central Core from the Town of Middletown; (3) stated that the County would utilize existing capacity at Water Farm #1 and from an existing Middletown facility to service certain development over the next five to seven years; (4) decided that developments in the Central Core and developments that will be permanently serviced by Water Farm #1 would receive exclusive priority with respect to available sewer capacity over the next five to seven years; (5) requested that amendments be prepared to the County Code to ensure that development plans can continue through the land development process only if sewer is or will be available; and (6) stated that within eighteen months of "commencing construction of the components of the Central Core transmission system" the County would provide an analysis of the available sewer capacity and that alternative disposal options for active development plans outside the Central Core "would be considered." The fiscal impact of the ordinance states that the County will pay Middletown up to $3.2 million for additional required capacity, and that the construction costs for the Central Core infrastructure will be between $34-39 million. The fiscal note also contemplates an expenditure of between $5-10 million of taxpayer money to evaluate long-term sewer disposal methods for the SSSA over the next five to seven years. Compl. Ex. "H."

---

[7]    Resolution 06-069 references a map that depicts the location of areas in the SSSA that will be serviced by County sewer under the short term SSSA plan. A copy of the SSSA map is contained in the County's appendix A1.

### H.    Implementation of Resolution 06-069

As required by Resolution 06-069, the County prepared amendments to the County Code to assure that "development plans can only continue through the Land Use process if sewer capacity is or will be available for the development." Compl. Ex. "H" § 6.  First, the County adopted Ordinances 06-041 and 06-042 (introduced April 11, 2006), that amended the Code consistent with Resolution 06-069. A2-A13.  A second round of code changes implementing Resolution 06-069 were made with the adoption of Ordinance 06-125 (introduced October, 24, 2006). A13-A18.  This latest round of code revisions were adopted on January 23, 2007.

### I.    Toll's Recognition That No Sewer Service Is Available For The 616 Acre Tract

Prior to the completion of the Red Oak Report, Toll decided to contract for the purchase of 616 acres of land in southern New Castle County which was not serviced by sewer.  *See* Compl. ¶¶ 9-16.  On December 8, 2004, Toll submitted a letter to the County, and requested that it be permitted to design and construct sewer infrastructure for the proposed development of 616 acres. Compl. Ex. "D" at p. 2.  At that time, Toll recognized "that the costs to install the regional system required to service the Property will cost substantially more than can be borne by the development alone." *Id.*  Ultimately, Toll proposed building a regional sewer system to service the development if it were granted a "credit against the impact fees that would otherwise be required." Compl. Ex. "D" at p. 2.  This proposal, however, was not accepted by the County, and Toll does not allege that any agreement was ever reached with the County concerning extension of sewer service for the development.

Toll again wrote the County on June 9, 2005. Compl. Ex. "E."  In that letter, Toll stated that it had between 600 and 700 homes proposed near Port Penn, and sought to develop a "public/private partnership" to "assist the County in expanding the proposed sewer system for

8

the southern part of the County so that Toll Brothers and other developers may proceed with the development of their respective projects . . . with public sewer." Compl. Ex. "E" at p. 1. Toll recognized that substantially all of the remaining capacity for Water Farm #1 had been "reserved" for other development. *Id.* at 2. Toll requested, however, that it be permitted to "borrow" reserved sewer capacity from Water Farm #1 (i.e., capacity already reserved for other developments) until Water Farm #2 was built. *Id.* at pp. 2, 5.

Toll further stated that, for permanent sewer capacity to be furnished for its proposed development, "eventually, the County [with taxpayer funds] is going to have to construct additional facilities," but Toll wanted a reduction of impact fees to construct the proposed facilities. *Id.* at p. 5. Toll was also aware that the County was in the process of retaining a consultant "to reassess how the County should proceed in the future with regard to provision of public sewer service for the southern part of the County in general, and how to proceed with regard to Water Farm #2 in particular." *Id.* at p. 3.[8]

Even though it knew that sewer capacity might not be available for the proposed development, on August 11, 2005 and October 7, 2005, Toll submitted plans for the development of the properties. Compl. ¶¶ 80, 82. Toll did not seek to develop the properties with septic systems. Rather, it gambled that it might get sewer capacity sometime in the future and made a decision to seek approvals for higher density development which is permitted only if sewer is available.

---

[8]     Thus, as of June 9, 2005, Toll was aware that: (1) no sewer capacity was available at Water Farm #1 because that sewer capacity was already reserved for other developments; (2) the County was studying the SSSA to determine how it would proceed with sewer service in southern New Castle County; and (3) there was no guarantee that Water Farm #2 would be built in the near future.

**J.    Toll Continues To Seek Approvals Even After The Passage Of Resolution 06-069**

Just a few months later, on January 25, 2006, the Red Oak Report was released. Compl. ¶ 88. Soon thereafter, in March 2006, the County introduced Resolution 06-069 (adopting many of the recommendations in the Red Oak Report), which put Toll and other developers on further notice that the County did not have any immediate plans to provide sewer service in the northeast portion of the SSSA where Toll's properties are located. Compl. Ex. "H." On March 23, 2006, the County advised Toll in writing that "[a]t the time of this request, sanitary sewer is not available nor has New Castle County warranted when or if sanitary sewer service will be available." Compl. Ex. "J." This fact was again reiterated in a letter from the County Department of Land Use dated March 31, 2006, which again stated "there is no sanitary sewer service in this area." Compl. Ex. "K" p.2, § 17. And, on June 14, 2006, the County Department of Land Use advised Toll that: "This plan relies on connection to a public sanitary sewer system, but no such system exists. . . Without an approved sewerage strategy, the plan will not be approved and construction will not be permitted." Compl. Ex. "P."

Even with repeated notice that sewer service would not be available for the development, Toll pressed forward with its development plans assuming connection to County sewer service. Toll submitted land development plans to the Department of Land Use and received exploratory plan approvals. Toll also submitted plans to the Department of Special Services concerning designs for a potential sewer connection. While the Department of Special Services reviewed an exploratory design plan for sewer on December 20, 2006, the Department stated that its review "shall not be interpreted as a guarantee that sewer service will be provided to this region." Compl. Ex. "L." Again on January, 20, 2007, in response to review of plan submissions, the

10

County advised Toll that sewer service would not be available for the development. Compl. Ex. "M" p.2 § 20 ("there is no sanitary sewer service in this area.").

### K.    The County Stops Processing Plans For Connection To Sewer When Sewer Service Is Not Available

In an October 22, 2007 letter, the County advised Toll of a jointly adopted policy of the Department of Special Services and the Department of Land Use. This policy, consistent with Resolution 06-069, provides standards to be used by the Department of Special Services to determine whether sewer capacity is or will be available for a proposed development.[9] Under the policy, if the Department of Special Services certifies that no sewer capacity will be available, development plans designed for connection to sewer will not be processed by the Department of Land Use because the plans cannot be approved. *See* NCC Code § 40.05.320.[10] On the same date, the County again advised Toll that "there is no sewer capacity of this development and . . . [that] the above application may not continue through the record plan process." Compl. Ex. "N."

### L.    Toll Files Suit Instead Of Pursuing An Administrative Appeal

After the County advised Toll of its decision to stop processing its development application in the County land use process because sewer is unavailable, Toll did not take an appeal to any County administrative board. Even though Toll has previously had cases dismissed in Delaware State courts for failing to take available administrative appeals (*see Toll*

---

[9]    The policy attached to Toll's complaint appears to have been incorrectly photocopied, as it omits certain policy language on page 3. *See* Compl. Ex. "N," pp. 2-3. A complete copy of the policy is contained in the County's appendix. A19-A21.

[10]    This policy correctly states that it is a waste of the County's limited resources to continue to process development plans which contemplate sewer connection when sewer service is not and will not be available.

*Bros., Inc. v. Wicks*, C.A. No. 1314, 2006 WL 1829875, at \*6-8 (Del. Ch. June 21, 2006), Toll

failed to take an administrative appeal and prematurely filed suit in the Court. [11]

## ARGUMENT

**I.    TOLL'S COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(b)(1) BECAUSE THE CASE IS NOT RIPE**

This Court lacks jurisdiction to hear Toll's constitutional and antitrust claims because the

claims are not ripe.  Toll cannot satisfy its "high burden" of demonstrating ripeness, *Acierno v.*

*Mitchell*, 6 F.3d 970, 975 (3d Cir. 1993), because: (1) Toll has not exercised its administrative

appeal rights from the County's land use decisions; (2) Toll has not applied for private sewer

systems; and (3) County Council has not made a final decision whether the County will

eventually permit alternate sewer disposal options for active land use applications, as the

eighteen month study period required by Resolution 06-069 has not passed.   Until these

jurisdictional prerequisites are satisfied, Toll does not have any ripe constitutional or antitrust

claim.

### A.    Ripeness Is Jurisdictional

In this Circuit, questions of ripeness implicate the justiciability of Toll's claims. *Acierno*,

6 F.3d at 975; *see also Sameric Corp. v. City of Philadelphia*, 142 F.3d 582, 598 (3d Cir. 1998)

(remanding to district court with instructions to dismiss an unripe claim). "Because lack of

ripeness impedes justiciability and thus the subject matter jurisdiction of the district court,

---

[11]    Toll alleges that it is acting on behalf of several property owners who are not joined as party plaintiffs.  Compl. ¶¶ 9-12.  As a general rule, all property owners affected should be joined as parties so that complete relief may be afforded. *Hackett v. Board of Adjustment Of Rehoboth Beach*, 794 A.2d 596, 598-99 (Del. 2002); *Toll Bros.*, 2006 WL 1829875, at \*7 n.44 ("because it appears to be only the equitable owner of the parcel of land at the center of this dispute, Toll Brothers should be prepared to bring suit together with the legal owner of the property.").  Toll also has not explained, as required by Rule 19(c), why these owners have not been joined.  Toll should be required to join all property owners or have its complaint dismissed pursuant to Rule 12(b)(7).

ripeness claims should be raised in a Rule 12(b)(1) motion to dismiss rather than in a summary judgment motion." *Huberty v. U.S. Ambassador to Costa Rica,* No. 3:07-CV-1420, 2007 WL 3119284, at *1 (M.D. Pa. Oct. 22, 2007); *see also Taylor Inv., Ltd. v. Upper Darby Twp.,* 983 F.2d 1285, 1290 (3d Cir. 1993).

On a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, "no presumptive truthfulness attaches to plaintiff's allegations," and the plaintiff has the burden to prove that jurisdiction exists. *Mortenson v. First Federal Savings and Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977); *Anjelino v. The New York Times Co.,* 200 F.3d 73, 87 (3d Cir. 1999); *see also Acierno v. New Castle County Dept. of Land Use,* C.A. No. 1173-N, 2006 WL 1668370, at *3 (Del. Ch. June 8, 2006). The Court may consider matters outside the pleadings such as affidavits and other material properly before the Court. *Acierno v. Haggerty,* C.A. No. 04-1376, 2005 WL 3134060, at *4-5 (D. Del. Nov. 23, 2005); 2 James W.M. Moore, *Moore's Federal Practice* § 12.30[3] (2005).

### B.    Toll's Constitutional Claims Are Not Ripe

#### 1.    The Finality Requirement

Toll's substantive due process and equal protection claims are not ripe because the County has not made a final decision on Toll's development plans. "It is well established that, in cases involving land-use decisions, a property owner does not have a ripe constitutional claim until the [land use] authorities have had an opportunity to arrive at a final, definitive position regarding how they will apply the regulations at issue to the particular lands in question." *Sameric Corp.,* 142 F.3d at 597; *Acierno,* 6 F.3d 974 (internal citations and quotations omitted). This finality requirement ensures that issues and the factual components of the dispute are sufficiently fleshed out to permit meaningful judicial review. *Brubaker v. East Heppfield Tp.,*

234 Fed. Appx. 32, 35 (3d Cir. Apr. 27, 2007) (citing *Bateman v. City of West Bountiful*, 89 F.3d 704, 707 (10th Cir. 1996)). Developers challenging County land use decisions have a "high burden" of proving that a final decision has been reached (*Acierno*, 6 F.3d at 975; *Eastern Shore Environmental, Inc. v. Kent County Department of Planning*, C.A. No. 1464, 2002 WL 244690, at *7 (Del. Ch. Feb. 1, 2002)), because "strong policy considerations favor local resolution of land-use disputes." *Denninno v. Municipality of Penn Hills*, No. 05CV1755, 2007 WL 316392, at *9 (W.D. Pa. Jan. 31, 2007) (quoting *Taylor*, 983 F.2d at 291). The Third Circuit has stressed the importance of the finality requirement because local authorities are in a better position than the courts to assess the varying burdens and benefits of land use policy – and the federal courts should not be transformed into "super land-use boards of appeal." *Sameric Corp.*, 142 F.3d at 598.

To have a ripe constitutional claim, the developer making an as-applied challenge[12] to a land use decision must take advantage of available administrative review procedures, such as administrative appeals, before a constitutional claim can be ripe. *Brubaker*, 234 Fed. Appx. at 37. On numerous occasions, courts have found that failure to appeal to a County administrative board renders constitutional challenges to a land use decision unripe. *See Toll Bros.*, 2006 WL 1829875, at *7 (holding Toll's claims unripe when Toll failed to appeal a decision of the County Department of Land Use to the Planning Board because "Toll Brothers has not yet obtained a final decision on its development plans"); *Acierno*, 6 F.3d at 974 (holding that a developer's claim is unripe when the developer failed to exercise an available appeal to the County Board of Adjustment); *Baldini West, Inc. v. New Castle County*, 852 F. Supp. 251, 254-55 (D. Del. 1994)

---

[12]    If the developer makes a facial challenge to a legislative enactment, and argues that any application of the challenged legislation is unconstitutional, the ripeness requirement is not implicated. *See County Concrete Corp. v. Tp. Of Roxbury*, 442 F.3d 159, 164 (3d Cir. 2006).

14

(same).[13]  Therefore, unless and until a developer makes an application, the application is denied,

and the denial is appealed and ruled upon by the applicable administrative appellate body, it has

no ripe constitutional claim.

### 2.    Toll's Substantive Due Process Claim Is Not Ripe

There appear to be three central allegations relevant to Toll's substantive due process

claim – (a) that the County allegedly refused to allow Toll to provide a privately owned and

operated sewer system (Compl. ¶ 181); (b) that the County erred in refusing to allow Toll's

development "from being able to move through the County land development process to record

plan approval because the Proposed Developments purportedly could not demonstrate access to

sewer services" (Compl. ¶ 182); and (c) the application of Resolution 06-069 to its proposed

development project violates substantive due process.  None of these claims are ripe.

### a.    Toll Has Not Made Any Formal Application For A Private Sewer System, Nor Has Toll Appealed Any Decision

Although Toll alleges that the County has rejected its proposal to build a private,

community wastewater treatment facility (*see* Compl. ¶¶ 110, 165, 181), Toll has not formally

applied for, nor has it ever been formally denied, a community wastewater treatment system.

Toll does not allege that it has prepared any engineering plans or studies for a community

wastewater treatment system, that it has formally applied for any approvals for a community

wastewater treatment facility from the County or the Delaware Department of Natural Resources

---

[13]    In rare circumstances, the ripeness requirement may be excused when the applicant is making a facial challenge to a legislative action or when an administrative appeal would be wholly futile. *See County Concrete*, 442 F.3d at 167. However, "[t]o come within the [futility] exception, a sort of inevitability is required: the prospect of refusal must be certain (or nearly so)." *Glendon Energy Co. v. Borough of Glendon*, 836 F. Supp. 1109, 1119 (E.D. Pa. 1993). "The property owner, who bears the burden of proof, must make at least one application for administrative relief before the futility exception may be invoked" and must demonstrate that the hearing board (as opposed to the County Council) "would inevitably deny it any sort of relief." *Id.*

and Environmental Control ("DNREC"), or that it has set aside sufficient land to construct such a

system on its development submissions to the County Department of Land Use. Because Toll

has never made any formal application to the County for a community wastewater treatment

system, its constitutional claims relating to a community wastewater facility are not ripe for

review. *See Toll Bros.*, 2006 WL 1829875, at *7 (holding that Department of Land Use must

make a final decision on development plans before a developer's claim is ripe for judicial

review).

Even assuming that the County denied an application by Toll to build a community

wastewater treatment facility for its proposed development, Toll's constitutional claims would

not be ripe because Toll would (if timely filed)[14] have an available administrative appeal to the

Planning Board. Under the County Code, an applicant pursuing a land use application[15] who is

aggrieved by a finding, decision, or interpretation of a decision maker made in response to

review of such application may appeal such action to the board assigned jurisdiction to hear the

appeal. NCC Code § 40.31.510. Under the Code, Table 40.30.110 of the New Castle County

Code confers jurisdiction on the Planning Board to review interpretations relating to subdivision

---

[14]    If Toll has not timely filed its appeal to the Planning Board, and the time for appeal has
now passed, its claims are barred. *See Baldini West, Inc.*, 852 F. Supp. at 255 ("If there is no
case or controversy before the Court, the Court must dismiss the suit, regardless of the dictates of
a statute of limitations."); *Washington Greene Associates, Inc.* v. *Mayor of New Castle,* C.A. No.
90A-AP-11, 1990 WL 1242522, at *1 (Del. Super. Ct. Nov. 5, 1990) (holding that when the
plaintiff failed to take an available appeal to the Board of Adjustment and the time for appeal had
expired, the case was time barred); *Stevens v. Northwestern Indiana District Council*, 20 F.3d
720, 733 (7th Cir. 1994) ("foreclosure from a judicial remedy is the inevitable consequence of an
unexcused and irremediable failure to exhaust.").
[15]    A "land use application" is defined by the County Code as "[a]ny building permit
application, zoning permit application, subdivision or land development plan application,
rezoning application, limited use application, special use application, variance application,
appeals, or any other application made to New Castle County which, if granted, would have the
effect of permitting the development or use of land. A land use application shall also include an
approved DNREC site evaluation." NCC Code § 40.33.300.

issues. *See Toll Bros.*, 2006 WL 1829875, at *7; *Christiana Town Center*, 2003 WL 21314499, at *4. If a denial of an application for a community wastewater treatment system is appealed, Toll is or was free to argue (as it does here) that the failure to authorize a community wastewater treatment system is an error of law. *See* Compl. ¶¶142-43. The Planning Board, as the final decision maker, may reverse a decision if an interpretation of the Code was made in error. NCC Code § 40.31.512A.1. Toll has not exercised its available administrative appeal and consequently, its constitutional claims cannot be ripe. *Acierno*, 6 F.3d at 974; *Sameric Corp.*, 142 F.3d at 598; *Baldini West, Inc,* 852 F. Supp. at 254-55.

b.     <u>The Processing Claim Is Not Ripe For Review</u>

Toll also alleges that the County should have allowed its plans to proceed through the development process because it apparently believes that there is or will be sewer service available for its proposed 600 unit housing development. Compl. ¶¶ 61, 184. Again, if the County erred in not allowing its plans to proceed through the development process because Toll believes that it is entitled to sewer service, its remedy is to appeal to the Planning Board, which can reverse the decision if the interpretation of the Code is flawed or if the findings and conclusions of the decision maker "were not the result of the orderly and logical review of the evidence." NCC Code § 40.31.512A. Until this is done, the decision is not final and the prerequisites for constitutional ripeness have not been satisfied. *Eastern Shore,* 2002 WL 244690, at *7 (holding that if an applicant truncates the administrative appeal process, the preconditions for constitutional ripeness are not met).

c.    The County Has Not Finally Decided Whether Sewer Capacity
      Will Ultimately Be Available

The purported facial challenge[16] to Resolution 06-069 also fails because County Council

has not made a final decision concerning how it will apply the Resolution to Toll's development

proposal.  Resolution 06-069 provides that certain land use applications in the Central Core will

receive exclusive priority for sewer service.  Compl. Ex. "H," § 5.  The Resolution, however,

also states that within eighteen months of "commencing construction of the components of the

Central Core transmission system," the County will provide a report to County Council showing

the available sewer capacity in the SSSA.  *Id.* at § 10.  If it is determined "at that time" that the

County is or will be unable to provide sewer service for active plans outside the Central Core

area, "alternative sewer disposal options will be considered by the County." *Id.*

Because the construction of the Central Core transmission system did not begin until

February 2007 (*see* Kuipers Aff., A22-A37)[17] the County will be required to make its report to

County Council in August 2008.  "If it is determined <u>at that time</u> that the County will be unable

to provide sewer capacity" for this development, then "alternate sewer disposal options will be

<u>considered</u> by the County." Compl. Ex. "H," § 10.  While nothing obligates the County to

approve "alternate sewer disposal options" if sewer service will not be available, until the

County completes its study, and until the County considers and decides on whether it will allow

---

[16]    As discussed above, wholly facial challenges to legislative acts are generally not subject
to the ripeness requirement. *County Concrete Corp.*, 442 F.3d at 164.  The ripeness requirement,
however, applies here because Resolution 06-069 expressly provides that the County Council
will "consider" alternative disposal systems if capacity is not available upon completion of the
eighteen month study period.  Because County Council will "consider" alternative disposal
systems once available capacity is studied and determined, there is no final decision and no ripe
facial challenge to the Resolution at this time.
[17]    The Kuipers affidavit may be considered on the County's 12(b)(1) motion without
converting the motion to a summary judgment motion. *Mortenson*, 549 F.2d at 891.

"alternate sewer disposal options," there is no final decision. For now, however, there is no sewer capacity available and Toll must wait for the final decision.[18]

### 3. Toll's Equal Protection Claims Are Not Ripe For Review

Toll alleges an equal protection violation because the County has allegedly treated it differently from other developers because it has decided not to provide sewer service to the area to the northeast of the Central Core of the SSSA where Toll's properties are located (Compl. ¶ 193) and because the County refuses "to allow Toll's land development applications to proceed to the record plan stage on the . . . basis of lack of available sanitary sewer capacity and not deferring the issue of the available sewer capacity to the record plan stage of the approval process." Compl. ¶ 197. Again, if Toll believes that a decision of the County is incorrect, and that the County has a legal duty to provide it private or public sewer capacity, or that the County should defer a decision on sewer capacity until the record plan stage, its remedy is to appeal to the Planning Board. NCC Code § 40.31.512A. Until this step is taken, Toll's equal protection claims are not ripe for review. *Acierno*, 6 F.3d at 974; *Sameric Corp.*, 142 F.3d at 598.

### C.    Toll's Antitrust Claims Are Not Ripe

Like its constitutional claims, claims brought for alleged antitrust law violations must also satisfy the finality requirement before they are ripe for review. *See Cooper v. Amster*, 645 F. Supp. 46, 47 (E.D. Pa. 1986) (dismissing an antitrust case for ripeness, among other reasons). As discussed above, Toll alleges that the County must provide it sewer capacity for its proposed

---

[18]    Toll's decision to press forward with development plans at a time when the County had made no provisions for sewer in the area is a self-created hardship. Indeed, Toll could have sought approvals to build with septic systems. Yet, Toll forged ahead with its plans for a denser sewer connection development knowing that the County might not provide sewer service. If Toll's plan application (designed for sewer connection) expires, Toll may resubmit its plan once the County makes a final decision concerning capacity. In the alternative, Toll may submit a development plan that utilizes septic systems, i.e. submit a code compliant plan application.

development or must allow it to build a private community wastewater treatment facility. Because Toll failed to take its available appeals to the Planning Board to challenge any of the County's decisions, its antitrust claims are not ripe.

In *Unity Ventures v. Lake County*, plaintiffs in a similar situation brought an antitrust claim alleging that defendants "improperly denied plaintiffs' request for sewage service in order to control the use of plaintiffs' property . . . ." 841 F.2d 770, 771 (7th Cir. 1988). The Seventh Circuit held that for an antitrust violation claim to be ripe, "[a] final decision must be demonstrated by a development plan submitted, considered, and rejected by the governmental entity." *Id.* at 775. Without taking the available administrative appeal, the decision was not final. Therefore, Plaintiffs could not show that "they have done everything possible" and their antitrust claim was "not ripe for adjudication." *Id.* at 776.

Similarly in *Suburban Trails, Inc. v. New Jersey Transit Corp.*, (a case relied upon in *Unity Ventures*), the Third Circuit dismissed an antitrust claim as unripe because an agency had not made a final ruling on plaintiff's grant application. 800 F.2d 361, 364 (3d Cir. 1986). The Court held that "Courts are discouraged from acting before issues have been properly presented, and the general policy against piecemeal review applies in the administrative field as in other types of litigation." *Id.* at 365. The Court held that, even though plaintiffs might face some hardship, "[a]t most they face some uncertainty over their eventual inclusion in the grant program. That, however, is not sufficient hardship to cause a court to review agency action that cannot be deemed final." *Id.* at 366 (internal citations omitted). Because the agency had not made a final decision, the case was not ripe for review. The same result should occur here, as Toll has not received a final decision from the final decision maker – the Planning Board.

20

## II.    ALL OF TOLL'S CLAIMS SHOULD BE DISMISSED UNDER RULE 12(b)(6)

### A.    The Rule 12(b)(6) Standards

While the Court must accept as true all facts alleged on a motion to dismiss, it may not "assume that the [plaintiff] can prove any facts that it has not alleged." *Associated Gen. Contractors of Calif., Inc. v. Calif. State Council of Carpenters*, 459 U.S. 519, 526 (1983). The Court should also reject "unsupported allegations," "bald assertions," and unsupported "legal conclusions." *Shipley v. Orndoff*, 491 F. Supp.2d 498, 505 (D. Del. 2007) (citing *Amiot v. Kemper Ins. Co.*, 122 Fed. Appx. 577, 579 (3d Cir. 2004)). For this reason, even on a motion to dismiss, Courts may properly reject any "conclusory recitations of law" pled within the complaint. *Commonwealth of Penn. v. PepsiCo, Inc.*, 836 F.2d 173, 179 (3d Cir. 1988); *Kopicko v. Department of Services for Children, Youth and Their Families*, C.A. No. 03-1172-KAJ, 2004 WL 1837903, at *2 (D. Del. Aug. 13, 2004).

### B.    Toll's Anti-Trust Claims Fail As A Matter Of Law

While the specific nature of Toll's antitrust claim is unclear,[19] the County is immune from liability for any antitrust claim under the State action exemption, commonly know as the *Parker* doctrine. "The state action exemption from antitrust liability was established by the Supreme Court in *Parker v. Brown*, 317 U.S. 341 (1943), and extended to local government entities acting 'pursuant to state policy to displace competition with regulation or monopoly public service.'" *Unity Ventures*, 841 F.2d at 777 (citing *City of Lafayette v. La. Power & Light Co.*, 435 U.S 389, 413 (1978)). Municipalities are immune from the antitrust laws if the

---

[19]    Toll bases its antitrust claims on 15 U.S.C. §§ 2, 12 and 26, which implicate provisions of both the Sherman Act and the Clayton Act. Compl. ¶ 172. Toll, however, only specifically alleges a violation of the Clayton Act. *See id.* at p. 31 (Count 1).

municipality is acting pursuant to a "clearly articulated" State policy.[20] *Kaehley v. City of Pittsburgh*, 988 F. Supp. 888, 895 (W.D. Pa. 1997); *Unity Ventures*, 841 F.2d at 777; *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 38-39 (1985).[21]  To determine if a municipality is acting under a clearly articulated State policy, it is not necessary that the State statute granting power to a municipal or state agency "expressly state ... that the legislature intends for the delegated action to have anticompetitive effects." *Id.* at 43.  "An agency is acting pursuant to a clearly articulated state policy so long as the anticompetitive conduct is a foreseeable result of the authority granted by the state." *Kaehley,* 988 F. Supp. at 895; *Town of Hallie*, 471 U.S. at 44 (holding a municipality immune from alleged antitrust violations for withholding sewer service).

The County is immune from any antitrust claim because the County's actions in engaging in alleged anti-competitive conduct are the foreseeable result of the authority granted to it by the Delaware General Assembly.  In Title 9, § 1521 of the Delaware Code (a statute not referenced in Toll's complaint), the Delaware General Assembly has provided the County the express authority to act upon all matters pertaining to sewer.  The statute, entitled "Enumeration of Certain Specific Powers," states that "the New Castle County Council shall have general jurisdiction over all matters pertaining to the County, its business, finances and general welfare, **including the power to act upon all matters pertaining to sewers, sewerage disposal plants, trunk line sewers and sewerage systems generally . . .")."** (emphasis supplied).  Title 9, § 2202 of the Delaware Code also specifically gives the County the right to plan, construct and improve

---

[20]    *Parker* immunity applies to claims brought under both the Sherman Act and the Clayton Act. *Town of Hallie*, 471 U.S. at 44 (Sherman Act); *Cine 42nd St. Theater Corp. v. Nederlander Org., Inc.*, 609 F. Supp. 113, 119 n.6 (D.C.N.Y. 1985), *aff'd,* 790 F.2d 1032, 1040 (2d Cir. 1986) (stating that "the state action defense is generally available to parties defending against a § 7 Clayton Act violation.").
[21]    If State action immunity is found, it bars claims for injunctive relief. *See Crosby v. Hosp. Auth. Of Valdotta & Lowndes Cty.*, 93 F.3d 1515, 1534 (11th Cir. 1996).

"any sewerage system." By providing the County with "general jurisdiction" to "act upon all matters pertaining to sewers," the State has provided the County specific authority to govern sewer and anti-competitive conduct is clearly a foreseeable result of this broad grant of power. *See Town of Hallie*, 471 U.S. at 44.[22]

In *Unity Ventures*, 841 F.2d at 777, the Seventh Circuit granted the municipality antitrust immunity under similar facts. In that case, the statutory scheme authorized counties and municipalities to contract together and combine resources for the provision of sewage treatment and permitted municipalities "to engage in planning processes and activities and to develop plans in cooperation with units of local government ... in connection with each such unit." *Id.* at 778. Even though the State grant of authority was far less express than the Delaware General Assembly's grant of sewer authority to New Castle County, the Court held that the municipality had immunity under the State action doctrine because the State statute expressly authorized the agreement between the village and county, which provided the authority to deny plaintiffs the sewage rights they sought. *Id.* The Court held that the restraint on competition was foreseeable result of that authorizing legislation and held:

> [i]n sum, free competition and competitive pricing are not the policies underlying the Illinois scheme for sewage treatment. Rather the scheme is one in which local governmental units are encouraged to cooperate in providing sewage service to residences within their boundaries for the common good of the communities they serve. These local and regional decisions regarding sewage treatment are guided by political forces, minimal judicial review . . . and state and national

---

[22]    *See also L & H Sanitation, Inc. v. Lake City Sanitation, Inc.*, 769 F.2d 517, 512 (8th Cir. 1985) (holding municipality was shielded from antitrust liability under 15 U.S.C. §§ 1-2 by the *Parker* doctrine where the state legislature specifically required municipalities to develop solid waste management plans and authorized municipalities to provide for solid waste disposal); *Tri-State Rubbish, Inc. v. Waste Mgmt., Inc.*, 803 F. Supp. 451, 459-560 (D. Me. 1992) (finding municipality entitled to state action immunity from claims under 15 U.S.C. §§ 1-2 where city was accused of monopolizing the collection and sale of recyclable waste.

environmental protection laws. Under such a scheme anticompetitive effects are clearly foreseeable and contemplated. *Id.*[23]

The express jurisdiction provided by the Delaware General Assembly to the County over all matters pertaining to sewer provides the County *Parker* immunity. Therefore, Toll's antitrust claim should be dismissed.[24]

### C.    Toll's Substantive Due Process Claims Fail As A Matter Of Law

Toll alleges that the County has violated its substantive due process rights by refusing to allow its proposed development to connect to the County's sewage system, by not allowing it to build a private sewage system, and by passing Resolution 06-069, which directs that the County will distribute its available sewer capacity to the Central Core and development permanently served by Water Farm #1. Compl. ¶¶ 179-188. Toll's claims fail for three reasons: (1) Toll has no right to municipal sewer service; (2) the County is the sole authority for the location of sewers; and (3) none of Toll's allegations meet rigorous standards required to state a substantive due process claim as a matter of law.

#### 1.    Toll Has No Right To Sewer Service

To prevail on a substantive due process claim, Toll must establish as a threshold matter that it has a protected property interest to which the Fourteenth Amendment's due process protection applies. *Desi's Pizza, Inc. v. City of Wilkes-Barre*, 321 F.3d 411, 427 (3d Cir. 2003). Whether a certain property interest is constitutionally protected "is not determined by reference

---

[23]    A similar conclusion was reached in *Hancock Industries v. Schaeffer*, 619 F. Supp. 322, 332 (E.D. Pa. 1985). There, plaintiffs were denied use of specific county landfills. *Id.* at 324. The legislature vested the municipality with such authority to administer the "collection, transportation, processing and disposal of municipal waste which is generated or present within its boundaries." *Id.* at 330. The Court held that defendants were immune from injunctive relief and monetary damages because the anticompetitive effect was both foreseeable and logical, thus vesting the defendants with anti-trust immunity under the state action exemption. *Id.*

[24]    Municipalities are immune from money damages under the Local Government Antitrust Act of 1984. 15 U.S.C. §§ 34-36.

to state law," but rather depends on whether that interest is "fundamental" under the United States Constitution. *Gagliardi v. Clark*, C.A. No. 06-20, 2006 WL 2847409, at *10 (W.D. Pa. Sept. 28, 2006); *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 n.12 (3d Cir. 2006). It is Toll's burden to "provide the requisite evidence of a protected property interest" necessary to state a substantive due process claim. *Desi's Pizza, Inc. v. City of Wilkes-Barre,* C.A. No. 3:CV-01-0480, 2006 WL 2460881, at *21 (M.D. Pa. Aug. 23, 2006) (citing cases).

In the Third Circuit, the law is clear – the provision of water and sewer services, whether by a municipality or by a private utility company, is not a federally protected right worthy of substantive due process protection. *Ransom v. Marrazzo*, 848 F.2d 398, 412 (3d Cir. 1988); *Nicholas v. Pennsylvania State University*, 227 F.3d 133, 141 (3rd Cir. 2000) (quoting *Ransom*); *Gagliardi,* 2006 WL 2847409, at *10 (holding that there is no substantive due process claim for failure to provide water service). Because neither Toll nor the other property owners have a federally protected right to sewer service, it cannot state a substantive due process claim against the County as a matter of law.

2.    The County Has No Duty To Provide A Sewer System

It is well settled that "[d]ecisions as to whether, when or where to provide sewer service, like other plans for public improvements, are matters of discretion" and there is "no duty to provide sewer service." *Snyder v. State Dept. of Health and Mental Hygiene*, 391 A.2d 863, 866 (Md. App. 1978); *Ash/Ramunno Associates v. Branner*, C.A. No. 12389, 1993 WL 11701, at *3 (Del. Ch. Jan. 19, 1993) (holding that the court would not enjoin the sewer allocation procedure adopted by a municipality in the absence of bad faith or fraud); *Richards v. City of Tustin*, 225 Cal. App.2d 97, 99 (Cal. App. 1964) (holding that a city is not required to furnish its inhabitants with sewer disposal services); *Avalonbay Communities, Inc. v. Sewer Commission of the City of*

*Medford*, 853 A.2d 497, 505 (Conn. 2004) ("[t]he date of construction, the nature, capacity, location, number and cost of sewers and drains are matters within the municipal discretion with which the courts will not interfere.").

Because there is no duty to provide sewer service, municipalities are the sole authority for the location of sewer systems and infrastructure and they cannot be compelled to construct or to allow sewer systems. *See Hawkins v. City of Greenville*, 594 S.E.2d 557, 564 (S.C. App. 2004) (quoting *City of Tyler v. Likes,* 962 S.W.2d 489, 501 (Tex. 1997)) ("The duties of the municipal authorities in . . . determining when and where sewers shall be built, of what size and at what level, are of a quasi judicial nature, involving the exercise of deliberate judgment and large discretion, and depending upon considerations affecting the public health and general convenience throughout an extensive territory; and the exercise of such judgment and discretion in the selection and adoption of a general plan or system . . . is not subject to revision by a court or jury in a private action.").[25] "[T]here is no authority for compelling a city to construct an artificial drainage sewer; and it would be a radical, dangerous and undemocratic precedent for the [c]ourts to undertake to enter into municipal legislation and administration in any such respect." *Miller v. Brentwood*, 548 S.W.2d 878, 883 (Tenn. App. 1977). This is especially true in Delaware, as the County has "general jurisdiction over all matters pertaining to the County . . . including the power to act upon all matters pertaining to sewers, sewerage disposal plants, trunk line sewers and sewerage systems generally." Del. Code Ann. tit. 9 § 1521.

---

[25] Long-established precedent supports this position. *See Martinez v. Cook*, 244 P.2d 134, 140 (N.M. 1952); *City of Greenville v. Queen City Lumber Co.*, 86 So.2d 860, 863 (Miss. 1956); *Mayor and Alderman of the City of Vicksburg v. Vicksburg Water Works Co.,* 202 U.S. 453, 472 (1906) (holding that the Court "had no authority to issue a mandatory injunction requiring the city to construct a sewer, . . . the exercise of this authority is primarily vested in the municipality, and not in the courts.").

Because the County has no duty to provide Toll a sewer system, and because no law requires the County to build or to permit Toll to construct a sewer system so it can build a 600 unit housing development, Toll's substantive due process claims fail as a matter of law.

>    3.    The County's Alleged Conduct Does Not Meet The Demanding Substantive Due Process Test

>        a.    Executive Action Must Shock The Conscience To State A Substantive Due Process Claim

Even assuming Toll had a federally protected property interest in receiving sewer service (which it does not), under Third Circuit land use cases, the executive action must meet the rigorous "shock the conscience" for Toll to sustain a substantive due process claim. *Blain v. Tp. Of Radnor*, 167 Fed Appx. 330, 333 (3d Cir. 2006); *United Artist Theatre Co., Inc. v. Tp. Of Warrington*, 316 F.3d 392, 399-400 (3d Cir. 2003). Generally, actions which shock the conscience are "only the most egregious official conduct." *Eichenlaub v. Tp. Of Indiana*, 385 F.3d 274, 285 (3d Cir. 2004). "Courts have generally held that even if a municipality is guided by political motivations, unrelated to an application, that is not enough to shock the conscience under a substantive due process analysis, particularly where the municipality, as the County here, can justify its actions as related to some legitimate goal." *Salem Church*, 2006 WL 2873745, at *13 (citing *Thornbury Noble, Ltd. v. Thornbury Twp.,* 112 Fed. Appx. 185, 188 (3d Cir. 2004)).

>        b.    Legislative Acts Satisfy The Substantive Due Process Test If Any Rational Basis Exists

To sustain a substantive due process claim for legislative actions, the Court applies virtually the same standard of review under the due process clause as it does in equal protection

27

cases[26] involving economic classifications – the law must be rationally related to a legitimate government interest. *Rogin v. Bensalem Tp.*, 616 F.2d 680, 689 (3d Cir. 1980); *County Concrete*, 442 F.3d at 169. Thus, a legislative decision may be invalidated for irrationality or arbitrariness only if "the governmental body could have had no legitimate reason for its decision." *Id.*; *Herr v. Pequea Tp.*, 274 F.3d 109, 110-11 (3d Cir. 2001)) (decisions concerning amendment of municipal service plans must survive due process review unless the government body could have had no legitimate reason for the decision).[27] Typically, a legislative act will withstand a substantive due process challenge if the legislature identifies a legitimate interest and could rationally conclude that the interest was served by the legislative act. *County Concrete*, 442 F.3d at 169. Toll bears the burden of demonstrating that the action of the County is arbitrary and irrational, and must allege facts that support a finding of arbitrary or irrational legislative action. *Pace*, 808 F.2d at 1035.

c.    The County's Actions Are A Hybrid Of Executive And Legislative Actions

Resolution 06-069, while legislative, endorses an executive plan for the provisions of sanitary sewer service to the SSSA. Compl. Ex. "H" (Title). Therefore, this situation presents a hybrid legislative and executive action which may be reviewed under either test. While it is

---

[26]    Because Toll's substantive due process claims are reviewed under virtually the same standards as equal protection, "[t]he court may ... hypothesize the motivations of the ... legislature to find a legitimate objective promoted by the provision under attack." *United States v. Pollard*, 326 F.3d 397, 408 (3d Cir. 2003) (quoting *Malmed v. Thornburgh*, 621 F.2d 565, 569 (3d Cir. 1980). The Court is "free to consider any conceivable legislative purpose so long as it reasonably could have been entertained by the legislature," and Toll bears the burden "to negative every conceivable basis which might support" the legislative action of the County. *Id.*; *Ramsgate Court Townhome Ass'n v. West Chester Borough*, 313 F.3d 157, 160 (3d Cir. 2002).
[27]    The Third Circuit has held: "[t]his court will not substitute its judgment about land use policy and thereby undermine the legitimacy of democratic decision making unless the local legislative judgment is without a plausible rational basis." *Pace Resources, Inc. v. Shrewsbury Tp.*, 808 F.2d 1023, 1035 (3d Cir. 1987).

28

unclear whether Toll's substantive due process challenge is focused on executive action or legislative action, Toll cannot state a substantive due process claim under either test – nothing shocks the conscience and there is a rational basis for the County's actions.

             d.     The County's "Path Forward" For The SSSA Is Rational And Does Not Shock The Conscience

       The County's decision to build infrastructure for the Central Core of the SSSA, while it seeks a long-term solution for the sewer needs of the SSSA, is rationally related to a legitimate governmental interest. The Resolution adopts many of the recommendations in the Red Oak Report, and provides a reasonable path forward for sewer service in the SSSA. Compl. Ex. "H." The County Council rationally determined that it would provide sewer infrastructure (at a cost in excess of $34 million) for the areas where conveyance systems were already substantially designed. Compl. Ex. "H," § 1. At the same time, the County authorized expenditures of between $5-10 million to study the long-term regulatory, technical and financial issues associated with a yet-unbuilt sewer system.

       As Resolution 06-069 recognizes, the County does not currently have the capacity to service all of the development plans in the designated service areas, let alone service developments outside the Central Core. Even Toll recognizes that the County would need to "borrow" capacity because available sewer capacity is already committed to other development and "eventually, the County . . . is going to have to construct additional facilities" if it were to provide service for Toll's planned development. Compl. Ex. "E" at p. 5. The County rationally devised a plan allocating available sewer service to areas in the Central Core, and provided a rational plan to allocate available sewer capacity until its study of the entire system is complete. Indeed, the County would need to make substantial additional capital expenditures to obtain the sewer capacity and infrastructure required to service the entire SSSA. The County, however,

decided to act in a fiscally responsible manner, creating a path forward that furthers environmental stewardship, distributes risks and costs fairly and equitably, and ensures that the long-term solution for the SSSA will be financially self-sustaining.  Compl. Ex. "H" at p. 1. There is nothing irrational or "conscience shocking" about the County addressing the issue of sewers in a careful, studied manner and acting prudently with taxpayer dollars for capital improvements.  While Toll disagrees with the decision, the decision is rational and reasoned.

### D.     Toll Has Failed To State An Equal Protection Claim

An "equal protection claim is not a device to dilute the stringent requirements needed to show a substantive due process violation" and it is "very unlikely that a claim that fails the substantive due process test will survive under an equal protection approach." *Eichenlaub*, 385 F.3d at 287.  To establish a viable equal protection claim, Toll must have "received different treatment from that received by other individuals similarly situated." *Phillips v. County of Alleghany*, C.A. No. 05-1502, 2006 WL 1330206, at *4 (W.D. Pa. May 15, 2006) (quoting *Keenan v. City of Philadelphia*, 983 F.2d 459, 465 (3d Cir. 1992)).  Toll must also allege facts showing that it was treated differently than others who are *prima facie* identical in all relevant respects.  *Purze v. Village of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002); *see also Development Group LLC v. Franklin Tp. Bd. Of Supervisors*, C.A. No. 03-2936, 2003 WL 22358440, at *7 (E.D. Pa. Sept. 24, 2003), *aff'd*, 162 Fed. Appx. 158 (3d Cir. 2006) (granting defendant's motion to dismiss plaintiffs' equal protection claim where plaintiffs did not assert that defendants ignored the same deficiencies in other land use plans).

Even if arbitrary action is alleged, the County may justify its different treatment by demonstrating that the governmental action is rationally related to a legitimate governmental interest.  *County Concrete*, 442 F.3d at 171.  An equal protection claim will only survive when

"there is no rational basis for the difference in treatment," or, otherwise put, the difference is "irrational and wholly arbitrary." *Eichenlaub*, 385 F.3d 287 (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564-65 (2000)). Rational basis review is not a license for Courts to judge the wisdom, fairness, or logic of governmental choices, *Acierno v. New Castle County*, C.A. No. 92-385, 2000 WL 718346, at *7 (D. Del. 2000), but rather is a "highly deferential" standard that requires that the challenged classification must be upheld "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Angstadt v. Mid-West School Dist.*, 377 F.3d 338, 345 (3d Cir. 2004). The Court may even "hypothesize the motivations of the ... legislature to find a legitimate objective promoted by the provision under attack." *United States v. Pollard*, 326 F.3d at 408. Toll bears the burden "to negative every *conceivable* basis which might support" the actions of the County. *Id.* (emphasis supplied).

    1.    The County Is Not Providing Any Sewer Service To The Northeast SSSA

Toll claims that the County government is treating it differently because the County is not providing new sewer service to any part of the northeast area of the Central Core. Compl. ¶ 193. There is no equal protection claim because the County is treating Toll exactly the same as every other developer in the northeast area of the Central Core. *See* A1. When the County is treating every parcel of land in the area exactly the same, and when the County has no duty to provide Toll sewer service, there is no equal protection violation. *See Snyder*, 391 A.2d at 866; *Richards*, 225 Cal. App. at 99; *Avalonbay Communities, Inc.*, 853 A.2d at 505.

Even if the County was treating Toll differently by not providing sewer service, the County has legitimate justifications for providing sewer service to only the Central Core (and development to be permanently serviced by Water Farm #1) at this time, which include, but are not limited to: (1) the limited treatment capacity to be allocated; (2) the design plans for the

31

conveyance system for the Central Core were substantially complete; (3) the County needing time to study the environmental impact of additional treatment facilities; (4) the County assuring that a sewer system that extends miles from the Central Core system is financially sustainable; and (5) the "path forward" allowing the County additional time planning and coordinating infrastructure improvements with other governmental agencies and allowing the County time to evaluate growth. Compl. Ex. "H." Because the County's actions are justified by a legitimate governmental objective, there can be no equal protection claim.

2.     The County Is Not Treating Toll Any Differently Than Pennfield

Toll also alleges that it is being treated unequally because, pursuant to a June 12, 2006 letter ("Pennfield Letter"), another developer was allegedly allowed to proceed to the record plan stage of the development process when sewer service was not available. This action, however, occurred before the adoption of ordinances 06-041 and 06-042, which were adopted on July 25, 2006. The Pennfield Letter also precedes Ordinance 06-125, which was adopted by County Council on January 23, 2007. In addition, the Pennfield Letter was written before the issuance of the October 22, 2007 joint policy of the Department of Land Use and the Department of Special Services, which states that land use applications that contemplate sewer connection where sewer is not available will not be processed because these plans cannot ultimately be recorded. Indeed, if the Pennfield developer sought to move from the preliminary plan to the record plan stage of the development process today, such action would not be permitted. Consequently, there is no unequal treatment.

E.     The Declaratory Judgment Claim Fails As A Matter Of Law

Toll seeks a declaratory judgment that Section 40.05.520 of the New Castle County Code provides it the right to connect to County sewer facilities and/or permits it (in conjunction with

32

the provisions of Title 29 of the Delaware Code) to construct a community sanitary treatment system for its proposed development.  Compl. ¶ 204.  This claim should be dismissed because Toll has failed to exhaust its administrative remedies and § 40.05.520 provides no such right.

1.     The Court Lacks Jurisdiction Over Toll's Declaratory Judgment Claims

Toll has not exhausted its administrative remedies for its declaratory judgment claim, which seeks a declaratory judgment of its rights under the County Code.  Compl. ¶ 204.  "[T]he long-settled rule of judicial administration [is] that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50-51 (1938); *see also FTC v. Standard Oil*, 449 U.S. 232, 242 (1980) ("Judicial intervention into the agency process denies the agency an opportunity to correct its own mistakes and to apply its expertise ... [and] leads to piecemeal review which at the least is inefficient and upon completion of the agency process might prove to have been unnecessary.").  Toll's claim that it is entitled to construct and/or own sewer facilities for sewer treatment under the County Code should be decided by the Planning Board – the final decision maker.

2.     Toll Has No Right To Construct A Private Sewer System

Toll has no right to build a privately owned community sewer treatment system.  Section 40.05.520C of the County Code provides potential development options in the event that the site carrying capacity for the proposed development is insufficient.   This section allows improvements to be made to the sewer "as determined by the Department of Special Services." This section, however, does not mandate that the Department of Special Services must approve a sewer connection or improvements to the system.  Under NCC Code § 38.02.002, the County is not required to execute a sewer agreement with the developer unless sewer capacity is or will be

available. And, NCC Code § 40.05.320 does not allow approval of a record plan unless sewer service is or will be available for the proposed development. Therefore, if Special Services determines that sewer service is not and will not be available, Special Services is not required to allow improvements to the sewer system for connection. In the SSSA, because all capacity has already been committed to certain service areas, there is no requirement that the County allow sewer connection because sewer service is not and will not be available in the near future.

With respect to private community wastewater treatment systems, there is no right to construct such systems under the Code. Under the County Code, the County or its assigns are required to own all sewer systems within the County, except "approved Department of Special Services related sewer projects or . . . septic systems." NCC Code § 38.02.007D. Therefore, Special Services must approve any private "sewer related projects," and must approve any community system built by a developer for which it desires to accept ownership.

Section 40.05.520C does not obligate the County to approve, permit, accept or authorize a community system. The section simply provides options if Special Services approves a community system. If Special Services approves the use of a private system for "sewer related projects," or permits a developer to build a system that the County will own, the sewer improvements "may" include the use of spray irrigation (with certain limitations) or other types of large scale treatment systems. The word "may" is permissive and does not command that Special Services must approve a private system. *See Harden v. Christiana Sch. Dist.*, 924 A.2d 247, 270 n.132 (Del. Ch. 2007) ("The use of the verb "shall" in legislation generally connotes a mandatory requirement while the verb "may" is deemed permissive."). Thus, nothing in Section

34

40.05.520C gives Toll any right to construct a community wastewater treatment system and Special Services has the right to deny an application for a community system if it so chooses.[28]

**F.     The Equitable Estoppel Claim Fails As A Matter Of Law**

   1.    The Equitable Estopel Claim Should Be Dismissed For Failure To Exhaust Administrative Remedies

The pendent state law equitable estoppel claim should be dismissed for Toll's failure to exhaust its available administrative appeal to the Planning Board.  Delaware Courts strongly favor the exhaustion of administrative remedies prior to seeking judicial intervention. *Levinson v. Delaware Compensation Rating Bureau*, 616 A.2d 1182, 1187 (Del. 1992).  "[W]here a remedy before an administrative agency is provided, relief must be sought by exhausting this remedy before the courts will either review any action by the agency or provide an independent remedy." *Id.*; *Christiana Town Center, LLC*, 2003 WL 21314499, at *4.  In other words, the doctrine seeks to relieve courts from having to interfere with an administrative body's "sifting process" when an administrative body might resolve the dispute without unnecessary or premature judicial action. *Salem Church*, 2006 WL 2873745, at *5.

Under Delaware law, a litigant is not required to exhaust its available administrative remedies before asserting a pure equitable estoppel claim.  That is, if the litigant is not challenging the substantive correctness of the underlying decision, a Court of equity may hear the equitable estoppel claim without the litigant being required to appeal to an administrative board. *See Eastern Shore*, 2002 WL 244690, at *6.  However, if the litigant challenges the

---

[28]    The ability of a municipality to deny an application for a private wastewater utility is also recognized by State law.  Under Del. Code Ann. tit. 26 § 203D(b) a private wastewater utility is not permitted to "extend its territory into a service territory of a municipality, government agency or wastewater authority or district without the approval of such entity and then obtaining approval of a certificate of public convenience and necessity from the [Public Service] Commission under this section."

substantive correctness of the underlying decision, administrative remedies must be exhausted. *Id.*; *Salem Church*, 2006 WL 2873745, at *5 n.44.

Toll is challenging the substantive correctness of the County's decision concerning sewer for its proposed development – the County's alleged errors are the entire focus of Toll's forty-one page complaint.  As an example, Toll alleges that NCC Code §40.05.520 requires the County to allow it to connect to sewer and/or construct a community sewage treatment system. Compl. ¶¶ 142, 204.  Toll also alleges that the County cannot prevent it from continuing to seek development approvals through the development process, even though sewer service is not available for the proposed development.  Compl. ¶ 182.  Because these and other allegations challenge the substantive correctness of the County's decisions concerning land use and sewer approvals, Toll must exhaust available administrative remedies before it may assert an equitable estoppel claim in court.

2.    Standards For Applying Equitable Estoppel Against The Government

Even if Toll were not required to exhaust its available administrative remedies, its equitable estoppel claim fails as a matter of law.  The doctrine of equitable estoppel may be invoked only when "a party by his conduct intentionally or unintentionally leads another, in reliance upon that conduct, to change position to his detriment." *Waggoner v. Laster*, 581 A.2d 1127, 1136 (Del. 1990).  To establish estoppel, Toll must prove by clear and convincing evidence that it: (i) lacked knowledge of the truth of the facts in question; (ii) relied on the

conduct of the party against whom estoppel is claimed; and (iii) suffered a prejudicial change of position as a result of such reliance. *Salem Church*, 2006 WL 2873745, at *12.[29]

"Application of the doctrine of equitable estoppel to governmental actions is rare." *Salem Church*, 2006 WL 2873745, at *12. In order not to defeat the carrying out of public policy, estoppel is applied cautiously against the government and "only where the circumstances require its application to prevent manifest injustice." *Delaware River and Bay Authority v. Delaware Outdoor Advertising, Inc.*, C.A. No. 15922, 1998 WL 83056, at *4 (Del. Ch. Feb. 20, 1998). Courts will not apply estoppel against the government "unless there are *exceptional* circumstances which make it *highly* inequitable or oppressive to enforce the regulations." *Salem Church*, 2006 WL 2873745, at *12 (emphasis in original). And, "Courts have also required that a party seeking to estop the government show some sort of "affirmative misconduct," an element normally not required to estop private parties." *Motiva Enters. LLC v. Secretary of the Dept. of Natural Res. & Envtl. Control*, 745 A.2d 234, 250 (Del. Super. Ct. 1999); *Salem Church*, 2006 WL 2873745, at *12 n.107.

      a.     <u>Toll Has Uses For The Land Absent Estoppel</u>

Delaware courts apply estoppel against the government in the development context where landowners have incurred considerable expenses and where landowners have no other practical use for the land. *Acierno*, 2000 WL 718346, at *11. In *Acierno*, Judge Robinson denied Acierno's equitable estoppel claim against the County when the developer retained the ability to build a housing development, "albeit not a 322-unit apartment complex." *Id.* Judge Robinson

---

[29] "In the context of land development, Delaware courts have also recognized equitable estoppel claims where (1) a party, acting in good faith, upon some act or omission of the government, and (2) makes a substantial change of position or incurs extensive obligations and expenses, and (3) it would be highly inequitable or unjust to impair or destroy rights that the landowner has acquired." *Salem Church*, 2006 WL 2873745, at *12.

held that so long as the developer had another practical use for the land, estoppel would not apply. *Id.*

Toll has uses for the land absent application of estoppel. Toll has not asserted a takings claim against the County, thereby implicitly recognizing that the County's decision to not provide sewer at this time has not denied it all economically viable use of the land. Moreover, Toll has alternative uses for the land – it can build a housing development which use septic systems. While this may somewhat limit the number of lots that Toll might be permitted to develop, it still provides Toll a practical use for the land – which precludes an estoppel claim as a matter of law. *Acierno*, 2000 WL 718346, at *11.

> b.    Toll Was Always Aware That Sewer Service Might Not Be Available

Toll's estoppel claim fails because it always knew that sewer service was not available – thereby eliminating Toll's ability to satisfy the first prong of the estoppel test, namely that it lacked knowledge of the facts in question. *Salem Church*, 2006 WL 2873745, at *12. As of June 9, 2005, before Toll submitted its exploratory plans for the proposed developments, Toll recognized that substantially all of the remaining capacity for Water Farm #1 had been "reserved" for other developments. Toll, however, requested that it be permitted to "borrow" reserved sewer capacity from Water Farm #1 – capacity already reserved for other developments – until Water Farm #2 was built. *Id.* at pp. 2, 5. Toll further stated that, for permanent sewer capacity to be furnished for its proposed development, "eventually, the County is going to have to construct additional facilities." With these admissions (contained in a letter attached to Toll's complaint), Toll must concede that: (1) it knew the County's existing sewer capacity was reserved for other developments; (2) the County would need to build additional facilities to service its proposed development; and (3) no facilities were constructed at that time.

Additionally, after the Red Oak Report was issued on January 25, 2006 (Compl. ¶ 87) and after Resolution 06-069 was introduced on March 28, 2006 (just a few short months after exploratory plans were submitted), Toll was well aware that the County had not reserved sewer capacity for the northeast quadrant of the SSSA and had no plans to service the area for the next five to seven years. Comp. Ex. "H;" *see also* Compl. Ex. "P." Toll was well aware of the facts in question and could not have reasonably relied on any representation of the County. Toll, therefore, cannot state an equitable estoppel claim as a matter of law.[30]

### c.    Toll Never Had Any Right To Sewer Service

For equitable estoppel to apply in the land use context, it generally must be highly inequitable or unjust to impair or destroy <u>rights</u> that the landowner has acquired. *Salem Church*, 2006 WL 2873745, at *12. Toll, however, never had any <u>right</u> to sewer service. The County has no duty to provide sewer capacity to its residents. *Avalonbay Communities, Inc.*, 853 A.2d at 505; *Miller*, 548 S.W.2d at 883; *Hawkins*, 594 S.E.2d at 564. Moreover, Toll never had a signed sewer agreement with the County (*see* NCC Code §38.02.002C; NCC Code § 40.31.820), and was always told that sewer capacity could only be reserved at the record plan stage of the development process. Compl. Exs. "F" and "G." Because Toll never had any right to sewer capacity, it cannot be "highly inequitable" to destroy a right that it never had.

### d.    There Are No Highly Inequitable Circumstances

Toll is simply unable, as a matter of law, to establish any "*exceptional* circumstances" which make the County's decision to not provide sewer to the northeast quadrant of the SSSA at this time "*highly* inequitable." *Salem Church*, 2006 WL 2873745, at *12. The County has never built infrastructure to service the area, the County has already committed available sewer

---

[30]    There is no writing attached to the complaint wherein the County at any time guaranteed sewer capacity for the proposed developments.

capacity to other areas, and the cost to build additional treatment capacity is a substantial investment for the County. Indeed, the County intends to spend between \$5-10 million solely to study and develop a long-term solution for the SSSA. When the County has never committed to provide sewer for the proposed development, there can be no "highly inequitable" circumstances to force the County to spend tens of millions in taxpayer dollars to provide sewer service for Toll to build a 600 unit housing development.[31]

### CONCLUSION

For the reasons stated herein, the County respectfully requests that the Toll's complaint be dismissed with prejudice.

CONNOLLY BOVE LODGE & HUTZ LLP

Collins J. Seitz, Jr. (Bar No. 2736)
Max B. Walton (Bar No. 3876)
The Nemours Building
1007 North Orange Street, 8th Floor
P.O. Box 2207
Wilmington, DE 19899
Tel: (302) 658-9141
Fax: (302) 656-0116
*Attorneys for New Castle County*

Dated: January 4, 2008

---

[31]    Toll's jurisdictional basis is federal question jurisdiction over the Clayton Act and § 1983 claims. In the event that these claims are dismissed, the Court should not retain jurisdiction over the declaratory judgment and estoppel claims if those claims remain viable. *See State Auto Ins. Companies v. Summy*, 234 F.3d 131, 135 (3d Cir. 2000) (holding that "it is counterproductive for a district court to entertain jurisdiction over a declaratory judgment action that implicates unsettled questions of state law."). Because there are no considerations of judicial economy, convenience or fairness that provide an affirmative justification for continued adjudication in this forum, the Federal Court should decline to exercise jurisdiction over declaratory judgment and State law claims dealing with interpretation of the County Code and application of State law. *See Duke/Fluor Caribbean S.P. v. Alstom Power, Inc.*, C.A. No. 03-544, 2004 WL 2095702, at *1-2 (D. Del. Sept. 20, 2004).

## CERTIFICATE OF SERVICE

I, Max B. Walton, hereby certify that on the 4th day of January, 2008, a copy of New

Castle County's Brief in Support of Its Motion to Dismiss was served by CM/ECF to counsel of

record as follows:

        Jeffrey M. Weiner (#403)
        Law Offices of Jeffrey M. Weiner
        1332 King Street
        Wilmington, DE 19801

        Max B. Walton (Bar No. 3876)