# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

GARY C. and GALE B. WARREN,
and TOLL BROS., INC.,

                Plaintiffs,

    v.

NEW CASTLE COUNTY,

                Defendant.

C.A. No. 07-725 \*\*\* LPS

## NEW CASTLE COUNTY'S OPENING BRIEF IN SUPPORT OF
## ITS MOTION TO DISMISS THE AMENDED COMPLAINT

CONNOLLY BOVE LODGE & HUTZ LLP
Collins J. Seitz, Jr. (Bar No. 2237)
Max B. Walton (Bar No. 3876)
The Nemours Building
1007 North Orange Street, 8th Floor
P.O. Box 2207
Wilmington, DE 19899
Tel: (302) 658-9141
Fax: (302) 656-0116
*Attorneys for New Castle County*

Dated: January 31, 2008

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ..................................................................................1

NATURE AND STAGE OF THE PROCEEDINGS ..........................................................2

SUMMARY OF ARGUMENT..................................................................................2

STATEMENT OF FACTS........................................................................................3

    A.    The State's Grant Of Authority To The County....................................................3

    B.    The County's State Law Authorization For Sewer Control ...................................3

    C.    Sewer Capacity And The County's Land Development Approval Process ...........4

    D.    The County's Administrative Appeal Process......................................................5

    E.    The Southern Sewer Service Area (SSSA).........................................................5

    F.    The County Evaluates The SSSA Plan.................................................................6

    G.    The County Revises The SSSA Concept Plan......................................................6

    H.    Implementation Of Resolution 06-069 ...............................................................8

    I.    Toll's Recognition That No Sewer Service Is Available For The 616 Acre Tract.....................................................................................................................8

    J.    Toll Continues To Seek Approvals Even After The Passage Of Resolution 06-069 ..................................................................................................................9

    K.    The County Stops Processing Plans For Connection To Sewer When Sewer Service Is Not Available.....................................................................................11

    L.    Toll Files Suit Instead Of Pursuing An Administrative Appeal ...........................11

ARGUMENT.......................................................................................................12

I.    TOLL'S COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(b)(1) BECAUSE THE CASE IS NOT RIPE.........................................................................12

    A.    Ripeness Is Jurisdictional .................................................................................12

    B.    Toll's Constitutional Claims Are Not Ripe .........................................................13

        1.    The Finality Requirement..........................................................................13

        2.    Toll's Substantive Due Process Claim Is Not Ripe ...................................14

        3.    Toll's Equal Protection Claims Are Not Ripe For Review .......................18

    C.    Toll's Anti-Trust Claims Are Not Ripe................................................................18

II.    ALL OF TOLL'S CLAIMS SHOULD BE DISMISSED UNDER RULE 12(b)(6) ........19

    A.    The Rule 12(b)(6) Standards .............................................................................19

    B.    Toll's Anti-Trust Claims Fail As A Matter Of Law ............................................20

C.    Toll's Substantive Due Process Claims Fail As A Matter Of Law ........................22

    1.    Toll Has No Right To Sewer Service .........................................................22

    2.    The County Has No Duty To Provide A Sewer System...........................23

D.    Toll Has Failed To State An Equal Protection Claim ...........................................28

    1.    The County Is Not Providing Any Sewer Service To The Northeast SSSA....................................................................................................29

    2.    The County Is Not Treating Toll Any Differently Than Any Other Developer In The Northeast Area Of The SSSA......................................30

E.    Toll Has Not Stated A Procedural Due Process Claim ........................................32

F.    The Declaratory Judgment Claim Fails As A Matter Of Law..............................33

    1.    The Court Lacks Jurisdiction Over Toll's Declaratory Judgment Claims...................................................................................................33

    2.    Section 40.05.520C Does Not Provide Toll A Right To Construct Private Sewer Systems....................................................................34

F.    The Equitable Estoppel Claim Fails As A Matter Of Law...................................36

    1.    The Equitable Estopel Claim Should Be Dismissed .................................36

    2.    Standards For Applying Equitable Estoppel Against The Government ...............................................................................................37

CONCLUSION .............................................................................................................40

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

*Acierno v. Haggerty,*
  2005 WL 3134060 (D. Del. Nov. 23, 2005)................................................................13, 20

*Acierno v. Mitchell,*
  6 F.3d 970 (3d Cir. 1993) ...........................................................................................passim

*Acierno v. New Castle County Dept. of Land Use,*
  2006 WL 1668370 (Del. Ch. June 8, 2006)........................................................................13

*Acierno v. New Castle County,*
  2000 WL 718346 (D. Del. May 23, 2000) .........................................................................29

*ADB Monroe, Inc. v. Monroe Twp.,*
  2008 WL 58876 (D.N.J. Jan. 3, 2008) ..........................................................................29, 31

*Alvin v. Suzuki,*
  227 F.3d 107 (3d Cir. 2000) ......................................................................................32, 33

*Amiot v. Kemper Ins. Co.,*
  122 Fed. Appx. 577 (3d Cir. 2004)) ..................................................................................20

*Angstadt v. Mid-West School Dist.,*
  377 F.3d 338 (3d Cir. 2004) ..............................................................................................29

*Anjelino v. The New York Times Co.,*
  200 F.3d 73 (3d Cir. 1999) ................................................................................................12

*Ash/Ramunno Associates v. Branner,*
  1993 WL 11701 (Del. Ch. Jan. 19, 1993)..........................................................................23

*Associated Gen. Contractors of Calif., Inc. v. Calif. State Council of Carpenters,*
  459 U.S. 519 (1983) .............................................................................................................19

*AvalonBay Communities, Inc. v. Sewer Commission of the City of Medford,*
  853 A.2d 497 (Conn. 2004)........................................................................24, 30, 39

*Baldini West, Inc. v. New Castle County,*
  852 F. Supp. 251 (D. Del. 1994) .........................................................................14, 15, 16

*Bateman v. City of West Bountiful,*
  89 F.3d 704 (10th Cir. 1996) ..............................................................................................13

*Blain v. Tp. Of Radnor,*
  167 Fed Appx. 330 (3d Cir. 2006)......................................................................................25

*Brubaker v. East Heppfield Twp.,*
  234 Fed. Appx. 32 (3d Cir. 2007).......................................................................................13

iii

*Christiana Town Center, LLC v. New Castle County,*
2003 WL 21314499 (Del. Ch. June 6, 2003),
*aff'd,* 841 A.2d 307 (Del. Jan. 16, 2004)......................................5, 16

*City of Columbia v. Omni Outdoor Advertising,*
499 U.S. 365 (1991) ......................................22

*City of Greenville v. Queen City Lumber Co.,*
86 So.2d 860 (Miss. 1956)......................................24

*City of Tyler v. Likes*
962 S.W.2d 489 (Tex. 1997) ......................................24

*Cooper v. Amster,*
645 F. Supp. 46 (E.D. Pa. 1986)......................................18

*County Concrete Corp. v. Tp. Of Roxbury,*
442 F.3d 159 (3d Cir. 2006)......................................14, 26, 29

*Crosby v. Hosp. Auth. Of Valdotta & Lowndes Cty.,*
93 F.3d 1515 (11th Cir. 1996) ......................................20

*Delaware River and Bay Authority v. Delaware Outdoor Advertising, Inc.,*
1998 WL 83056 (Del. Ch. Feb. 20, 1998)......................................37

*Denninno v. Municipality of Penn Hills,*
2007 WL 316392 (W.D. Pa. Jan. 31, 2007) ......................................13

*Desi's Pizza, Inc. v. City of Wilkes-Barre,*
2006 WL 2460881 (M.D. Pa. Aug. 23, 2006) ......................................23

*Desi's Pizza, Inc. v. City of Wilkes-Barre,*
321 F.3d 411 (3d Cir. 2003) ......................................23

*Doug Grant, Inc. v. Greate Bay Casino Corp.,*
232 F.3d 173 (3d Cir. 2000) ......................................10, 20

*Duke/Fluor Caribbean S.P. v. Alstom Power, Inc.,*
2004 WL 2095702 (D. Del. Sept. 20, 2004)......................................40

*Eastern Shore Environmental, Inc. v. Kent County Department of Planning,*
2002 WL 244690 (Del. Ch. Feb. 1, 2002) ......................................13, 17, 36

*Eichenlaub v. Twp. of Indiana,*
385 F.3d 274 (3d Cir. 2004) ......................................25, 28, 29

*FTC v. Standard Oil,*
449 U.S. 232 (1980) ......................................33

*Gagliardi v. Clark,*
2006 WL 2847409 (W.D. Pa. Sept. 28, 2006)......................................23

*Glendon Energy Co. v. Borough of Glendon,*
836 F. Supp. 1109 (E.D. Pa. 1993)......................................14

*Hackett v. Board of Adjustment Of Rehoboth Beach,*
794 A.2d 596 (Del. 2002)......................................11

iv

*Harden v. Christiana Sch. Dist.*,
  924 A.2d 247 (Del. Ch. 2007) ...................................................................35

*Hawkins v. City of Greenville*,
  594 S.E.2d 557 (S.C. App. 2004) ..........................................................24, 39

*Herr v. Pequea Twp.*,
  274 F.3d 109 (3d Cir. 2001) ......................................................................26

*Hill v. Borough of Kutztown*,
  455 F.3d 225 (3d Cir. 2006) ......................................................................23

*Huberty v. U.S. Ambassador to Costa Rica*,
  2007 WL 3119284 (M.D. Pa. Oct. 22, 2007) ...........................................12

*Kaehley v. City of Pittsburgh*,
  988 F. Supp. 888 (W.D. Pa. 1997) ...........................................................20

*Keenan v. City of Philadelphia*,
  983 F.2d 459 (3d Cir. 1992) ......................................................................28

*Levinson v. Delaware Compensation Rating Bureau*,
  616 A.2d 1182 (Del. 1992) ........................................................................36

*Malmed v. Thornburgh*,
  621 F.2d 565 (3d Cir. 1980) ......................................................................25

*Martinez v. Cook*,
  244 P.2d 134 (N.M. 1952) .........................................................................24

*Mayor and Alderman of the City of Vicksburg v. Vicksburg Water Works Co.*,
  202 U.S. 453 (1906) ..................................................................................24

*Miller v. Brentwood*,
  548 S.W.2d 878 (Tenn. App. 1977) ..........................................................24

*Mortenson v. First Federal Savings and Loan Ass'n*,
  549 F.2d 884 (3d Cir. 1977) ................................................................12, 17

*Motiva Enters. LLC v. Secretary of the Dept. of Natural Res. & Envtl. Control*,
  745 A.2d 234 (Del. Super. Ct. 1999) .........................................................38

*Myers v. Bethlehem Shipbuilding Corp.*,
  303 U.S. 41 (1938) ....................................................................................33

*Nicholas v. Pennsylvania State University*,
  27 F.3d 133 (3d Cir. 2000) ........................................................................23

*Novak v. City of Pittsburgh*,
  2006 WL 3420959 (W.D. Pa. Nov. 27, 2006) ..........................................32

*Pace Resources, Inc. v. Shrewsbury Twp.*,
  808 F.2d 1023 (3d Cir. 1987) ....................................................................26

*Parker v. Brown*,
  317 U.S. 341 (1943) ..................................................................................20

*Phillips v. County of Alleghany,*
   2006 WL 1330206 (W.D. Pa. May 15, 2006) ....................................................28

*Purze v. Village of Winthrop Harbor,*
   286 F.3d 452 (7th Cir. 2002) ....................................................................29

*Ramsgate Court Townhome Ass'n v. West Chester Borough,*
   313 F.3d 157 (3d Cir. 2002) ....................................................................25

*Ransom v. Marrazzo,*
   848 F.2d 398 (3d Cir. 1988) ................................................................23, 32

*Rogin v. Bensalem Twp.,*
   616 F.2d 680 (3d Cir. 1980) ................................................................26, 32

*Salem Church (Delaware) Associates v. New Castle County,*
   2006 WL 2873745 (Del. Ch. Oct. 6, 2006) ..................................................3, 4

*Sameric Corp. v. City of Philadelphia,*
   142 F.3d 582 (3d Cir. 1998) ......................................................12, 13, 14, 16

*Shipley v. Orndoff,*
   491 F. Supp.2d 498 (D. Del. 2007) ............................................................19

*Snyder v. State Dept. of Health and Mental Hygiene,*
   391 A.2d 863 (Md. App. 1978) .............................................................23, 30

*State Auto Ins. Companies v. Summy,*
   234 F.3d 131 (3d Cir. 2000) ....................................................................40

*Stevens v. Northwestern Indiana District Council,*
   20 F.3d 720 (7th Cir. 1994) ....................................................................16

*Suburban Trails, Inc. v. New Jersey Transit Corp.,*
   800 F.2d 361 (3d Cir. 1986) ....................................................................19

*Taylor Inv., Ltd. v. Upper Darby Twp.,*
   983 F.2d 1285 (3d Cir. 1993) ..............................................................12, 13

*Thornbury Noble, Ltd. v. Thornbury Twp.,*
   112 Fed. Appx. 185 (3d Cir. 2004) .............................................................25

*Toll Bros., Inc. v. Wicks,*
   2006 WL 1829875 (Del. Ch. June 21, 2006)) ............................................passim

*United Artist Theatre Co., Inc. v. Twp. Of Warrington,*
   316 F.3d 392 (3d Cir. 2003) ....................................................................25

*United States v. Pollard,*
   326 F.3d 397 (3d Cir. 2003) ................................................................25, 29

*Unity Ventures v. Lake County,*
   841 F.2d 770 (7th Cir. 1988) ......................................................19, 20, 21, 22

*Village of Willowbrook v. Olech,*
   528 U.S. 562 (2000) ............................................................................29

*Waggoner v. Laster,*
   581 A.2d 1127 (Del. 1990)...................................................................37

*Washington Greene Associates, Inc. v. Mayor of New Castle,*
   1990 WL 1242522 (Del. Super. Ct. Nov. 5, 1990)............................16

**Statutes**

15 U.S.C. § 34 ....................................................................................20

Del. Code Ann. tit. 26, § 203 ..............................................................35

Del. Code Ann. tit. 9 § 1101 .................................................................3

Del. Code Ann. tit. 9 § 1521 .................................................3, 24, 36

Del. Code Ann. tit. 9 § 2220 ...........................................................3, 4

Del. Code Ann. tit. 9 § 2603 .................................................................3

Del. Code Ann. tit. 9 § 2651 .................................................................6

Del. Code Ann. tit. 9 § 2656 .................................................................6

Del. Const. Art. II § 25 .........................................................................3

**Rules**

Rule 12(b)(1) .......................................................................................12

Rule 12(b)(6) .......................................................................................19

Rule 12(b)(7) .......................................................................................11

Rule 19(c) ............................................................................................11

**Regulations**

NCC Code § 38.02.002 ...........................................................4, 34, 40

NCC Code § 38.02.007 ........................................................................34

NCC Code § 40.05.320 .................................................................passim

NCC Code § 40.22.330 ..........................................................................4

NCC Code § 40.22.360 .......................................................................4, 5

NCC Code § 40.30.110 .....................................................................5, 16

NCC Code § 40.31.112 ..........................................................................4

NCC Code § 40.31.114 ..........................................................................4

NCC Code § 40.31.510 ...............................................................5, 16, 32

NCC Code § 40.31.512 ..........................................................5, 16, 17, 18

NCC Code § 40.31.820 ....................................................................4, 40

NCC Code § 40.33.300 ........................................................................16

## PRELIMINARY STATEMENT

Gary C. Warren, Gale B. Warren, and Toll Bros., Inc. (collectively "Toll") ask the Court to compel New Castle County ("County") to process land development applications and to require the County to provide sewer service for a proposed 631 unit housing development, even though all sewer capacity is committed to other developments, and no sewer infrastructure exists where Toll wants to build its massive project. Toll wants a connection to sewage treatment facilities (instead of building septic systems) because sewer connections will allow Toll to make more money building more houses. Throughout Toll's development review process, the County advised Toll that no sewer service was or would be available for Toll's proposed development. As late as June 2006, the County reiterated this position:

> This plan relies on connection to a public sanitary sewer system, but no such system exists. The applicant has been advised on numerous occasions, since the initial plan submission, that the County has made no commitment to provide sewer infrastructure availability to this site. The developer is again reminded that advancing a subdivision plan in reliance of the provision of sewer infrastructure secures no guarantee that the County will provide such infrastructure. Without an approved sewerage strategy, the plan will not be approved and construction will not be permitted. AC[1] Ex. "P."

Not only does Toll have no equities on its side, Toll has jumped the gun and filed this suit before pursuing administrative remedies and obtaining a final determination regarding Toll's development applications. Its constitutional and antitrust claims are therefore unripe because Toll has not exercised its administrative appeal rights. Even if Toll's claims were ripe, Toll has no federally protected right to sewer service, and Toll's constitutional, antitrust, declaratory judgment, and estoppel claims are deficient as a matter of law. The case should be dismissed, and Toll should revert to the State law development process and administrative review procedures available to every land developer.

---

[1]    Toll's complaint is cited as Compl. __ and the amended complaint is cited as AC __.

1

## NATURE AND STAGE OF THE PROCEEDINGS

Toll filed this action on November 13, 2007. The County filed its opening brief in support of its motion to dismiss on January 4, 2008. Toll filed an amended complaint on January 18, 2008. This is the County's brief in support of its motion to dismiss the amended complaint.

## SUMMARY OF ARGUMENT

I.    Toll has not applied for nor received a final decision on its land use applications. The ripeness doctrine therefore bars Toll's antitrust and constitutional claims.

II.    *Parker* immunity bars Toll's antitrust claims because the County is acting pursuant to a clearly articulated State policy.

III.    Toll's substantive due process claim should be dismissed because Toll has no constitutionally protected right to sewer service. Moreover, Toll has not alleged facts sufficient to state a substantive due process claim.

IV.    Toll's equal protection claim should be dismissed because the County has not provided sewer service to any similarly situated developer or treated any similarly situated developer differently than Toll.

V.    Toll's procedural due process claims should be dismissed because Toll has no property right to receive sewer service from the County, has no procedural due process claim relating to legislative acts, and has not exercised the administrative appeals available to it.

VI.    Toll's request for declaratory relief should be dismissed because Toll has failed to exhaust its administrative remedies and because no statute mandates that the County provide sewer service to Toll.

VII.    Toll's equitable estoppel claim should be dismissed because Toll has failed to exhaust administrative remedies and cannot state an equitable estoppel claim as a matter of law.

2

## STATEMENT OF FACTS[2]

### A.    The State's Grant Of Authority To The County

The County is a political subdivision of the State of Delaware established by Title 9 of the Delaware Code. The State has granted the County "home rule" jurisdiction, which permits the County to exercise all powers that "it would be competent for the General Assembly to grant by specific enumeration." Del. Code Ann. tit. 9 § 1101; *see also Salem Church (Delaware) Associates v. New Castle County*, C.A. No. 20305, 2006 WL 2873745, at *5 n.44 (Del. Ch. Oct. 6, 2006) ("*Salem Church*").[3] The County is expressly authorized to adopt and to administer planning, zoning, and subdivision regulations. *See* Title 9, Chapter 26 of the Delaware Code; *see also* Del. Const. Art. II § 25. Under the County's zoning power, the County directs development into areas where adequate public facilities are available. *See* Del. Code Ann. tit. 9 § 2603.

### B.    The County's State Law Authorization For Sewer Control

Under State law, the County has express authority to act upon all matters pertaining to sewers. Under Title 9, § 1521, entitled "Enumeration Of Certain Specific Powers," the State grants the County the following authority:

> In addition to the powers elsewhere conferred upon the New Castle County Council and without limiting their generality, the New Castle County Council shall have general jurisdiction over all matters pertaining to the County, its business, finances and general welfare, including the power to act upon all matters pertaining to sewers, sewerage disposal plants, trunk line sewers and sewerage systems generally. . . .

The County's general jurisdiction to "act upon all matters pertaining to sewers" is further outlined in Title 9, Chapter 22 of the Delaware Code, entitled "Sewers." Section 2202(2) grants

---

[2]    The County accepts as true the complaint's allegations for this motion only.

[3]    Under the County's home rule statute, "the County is given great flexibility to discharge its functions, except as otherwise limited by the State's Constitution or its statutes." *Salem Church*, 2006 WL 2873745, at *5 n.44.

3

the County the right to plan, construct and improve "any sewerage system and furnish the services and facilities rendered or afforded thereby." This authority is "in addition to and not in substitution for the powers conferred by any other general, special or local law." Del. Code Ann. tit. 9 § 2220.

### C.    Sewer Capacity And The County's Land Development Approval Process

To obtain development approval under County law, a developer must satisfy a three stage plan approval process – exploratory, preliminary, and record (or final) plan approval. NCC Code §§ 40.31.112-114 and Appendix 1 of Chapter 40;[4] *Salem Church*, 2006 WL 2873745, at *6. If development plans are submitted that require connection to County sewer service, then prior to receiving final or record plan approval, sewer service must be available for the proposed development. NCC Code § 40.05.320. At the record plan stage, developers "reserve" capacity by executing a sewer agreement with the County, which is an allocation of the County's available sewer service capacity for the houses to be built on the recorded development plan.[5] If sewer service is available for the proposed development at the record plan stage, the developer reserves capacity in a sewer agreement recorded as part of a land development improvement agreement ("LDIA") with the County. NCC Code § 38.02.002; NCC Code § 40.31.820.

If sewer service is not available for the proposed development, then the developer is generally required to submit building plans for on-lot wastewater treatment systems, commonly known as septic systems. *See* NCC Code § 40.22.330; *see* NCC Code § 40.22.360. If possible, developers usually seek connection to sewer to obtain more building lots, because developers are

---

[4]    The New Castle County Code may be found online at www.co.new-castle.de.us/landuse/home/webpage22.asp.

[5]    Developers are generally advised at the preliminary plan stage of available sewer capacity for proposed development. NCC Code § 38.02.002.

generally limited to three quarter or one acre lots sizes if the lots proposed are served by septic systems. *See* NCC Code § 40.22.360A.

### D.     The County's Administrative Appeal Process

Under the County's statutory and home rule authority, the County Council has established administrative boards that are the final decision makers for land development applications. *See Salem Church*, 2006 WL 2873745, at *5 n.44. A land use applicant who is aggrieved by a "finding, decision or interpretation of a decision maker" may appeal a final decision to the proper review board within 20 days after the decision is made. NCC Code § 40.31.510; *Christiana Town Center, LLC v. New Castle County*, C.A. No. 20215, 2003 WL 21314499, at *4 (Del. Ch. June 6, 2003), *aff'd*, No. 318, 2003, 841 A.2d 307 (Del. Jan. 16, 2004). The board may reverse a decision if the administrative official makes an error in an interpretation of the Code, or if the findings are not a result of an orderly and logical review of the evidence. NCC Code § 40.31.512. For decisions relating to subdivision review or interpretation of subdivision regulations, the Planning Board is generally the appellate body responsible for hearing the appeal. NCC Code § 40.30.110. The Board of Adjustment generally hears variance requests and zoning appeals. *See id.* [6]

### E.     The Southern Sewer Service Area ("SSSA")

As alleged by Toll, in the mid-1990s, the County began to develop concept plans for sewer service for an area south of the C&D canal and north of Middletown, Delaware. *See* AC ¶17. The area is known as the SSSA. The old SSSA plans were concepts plans only because there was limited sewer infrastructure built at that time in this largely rural area. AC ¶17.[7] The

---

[6]     If a developer claims the County has caused a "taking" of its property, the developer must make a beneficial use appeal to the Board of Adjustment before it can assert a takings claim in court. *Salem Church*, 2006 WL 2873745, at *8.

5

County's early plan was a phased plan, and considered expanding Water Farm #1 and potentially building Water Farm #2.

The County decided to upgrade Water Farm #1, and the treatment facility is operational. The County purchased the land for Water Farm #2, but has not built the facility. As of 2004, the County projected that Water Farm #2, when built, would ultimately service a large portion of the SSSA, but the construction and implementation of Water Farm #2 and necessary conveyance systems would be phased. *See* AC Ex. "S."

**F.    The County Evaluates The SSSA Plan**

In 2005, the County decided to study the previous concept plan. As set forth in the exhibits to Toll's complaint, "[i]n light of the magnitude and complexity of sewering the SSSA, the County retained a nationally renowned engineering firm to evaluate alternatives" for the proposed SSSA. AC Ex. "I" p. 1. The engineering firm, Red Oak Consulting, performed a comprehensive evaluation of the County's wastewater program for the SSSA ("Red Oak Report"). AC ¶38. The Red Oak Report found that the County's prior concept proposal was practically and financially unfeasible. As alleged by Toll, the Red Oak Report, issued January 25, 2006, "conclude[ed] that the County's existing sewage treatment and disposal plan for the SSSA was inadequate. . . ". AC ¶38.

**G.    The County Revises The SSSA Concept Plan**

After studying the Red Oak Report, the County determined that the old concept plan for SSSA sewer service was not feasible. The County then decided to continue with its plan to

---

[7]    Under the State comprehensive planning statutes, the County is required, as part of its comprehensive plan approval process, to develop capital improvement plans that include sewers. Del. Code Ann. tit. 9 § 2656(c). Capital improvement plans, however, may be "modified as necessary" without amending the County comprehensive plan. *Id.* at § 2656(d). Capital improvement plans are merely concept plans, as only the County's comprehensive plan zoning maps have the force of law. Del. Code Ann. tit. 9 §§ 2651(b) and 2652(b).

allocate available sewer capacity in the SSSA to the Central Core and to areas intended to be permanently serviced by Water Farm #1. *See* AC ¶40. To determine how existing sewer capacity and conveyance systems should be allocated, the County Council passed Resolution 06-069, to provide a "path forward" for the implementation of the SSSA. AC Ex. "I;" AC Ex. "H."[8]

In Resolution 06-069, the County Council: (1) directed that conveyance systems be constructed for the Central Core; (2) directed the County to purchase additional sewer capacity for the Central Core from Middletown; (3) stated that the County would utilize existing capacity at Water Farm #1 and from an existing Middletown facility to service certain development over the next five to seven years; (4) decided that developments in the Central Core and developments intended to be permanently serviced by Water Farm #1 would receive exclusive priority with respect to available sewer capacity over the next five to seven years; (5) requested that amendments be prepared to the County Code to ensure that development plans can continue through the land development process only if sewer is or will be available; and (6) stated that within 18 months of "commencing construction of the components of the Central Core transmission system" the County would provide an analysis of the available sewer capacity and that alternative disposal options for active development plans outside the Central Core "would be considered." The fiscal impact of the Resolution states that the County will pay Middletown up to $3.2 million for additional required capacity, and that the construction costs for the Central Core infrastructure will be between $34-39 million. The fiscal note also contemplates an expenditure of between $5-10 million of taxpayer money to evaluate long-term sewer disposal methods for the SSSA over the next five to seven years. Compl. Ex. "I."

---

[8]    Resolution 06-069 references a map that depicts the location of areas in the SSSA that will be serviced by County sewer under the short term SSSA plan. AC Ex. "I." A copy of the SSSA map is contained at the County's appendix A1. The map shows that the County is not providing sewer to the east of Route 13 and to the north of Augustine Creek at this time.

**H.    Implementation Of Resolution 06-069**

As required by Resolution 06-069, the County prepared amendments to the County Code to assure that "development plans can only continue through the Land Use process if sewer capacity is or will be available for the development." Compl. Ex. "I" § 6.  First, the County adopted Ordinances 06-041 and 06-042 (introduced April 11, 2006), that amended the Code consistent with Resolution 06-069.  A2-A13.  A second round of code changes implementing Resolution 06-069 were made with the adoption of Ordinance 06-125 (introduced October, 24, 2006).  A13-A18.  This latest round of code revisions were adopted on January 23, 2007.

**I.    Toll's Recognition That No Sewer Service Is Available For The 616 Acre Tract**

Sometime prior to the completion of the Red Oak Report, Toll decided to contract for the purchase of 618 acres of land in southern New Castle County which was not serviced by sewer. *See* Compl. ¶¶9-16.  On December 8, 2004, Toll submitted a letter to the County and requested that it be permitted to design and construct sewer infrastructure for the proposed development of the 616 acres.  AC Ex. "D," p. 2.  At that time, Toll recognized "that the costs to install the regional system required to service the Property will cost substantially more than can be borne by the development alone."  *Id.*  Ultimately, Toll proposed building a regional sewer system to service the development <u>if</u> it were granted a "credit against the impact fees that would otherwise be required."  AC Ex. "D," p. 2.  This proposal, however, was not accepted by the County, and Toll does not allege that any written agreement was ever reached with the County concerning extension of sewer service for the development.

Toll again wrote the County on June 9, 2005.  AC Ex. "E."  In that letter, Toll stated that it had between 600 and 700 homes proposed near Port Penn, and sought to develop a "public/private partnership" to "assist the County in expanding the proposed sewer system for

8

the southern part of the County so that Toll Brothers and other developers may proceed with the development of their respective projects . . . with public sewer." AC Ex. "E," p. 1. Toll recognized that substantially all of the remaining capacity for Water Farm #1 had been "reserved" for other development. *Id.* at 2. Toll requested, however, that it be permitted to "borrow" reserved sewer capacity from Water Farm #1 (i.e., capacity already reserved for other developments) until Water Farm #2 was built. *Id.* at pp. 2, 5.

Toll further stated that, for permanent sewer capacity to be furnished for its proposed development, "eventually, the County [with taxpayer funds] is going to have to construct additional facilities," but Toll wanted a reduction of impact fees to construct the proposed infrastructure. *Id.* at p. 5. Toll was also aware that the County was in the process of retaining a consultant "to reassess how the County should proceed in the future with regard to provision of public sewer service for the southern part of the County in general, and how to proceed with regard to Water Farm #2 in particular." *Id.* at p. 3.

Even though it knew sewer capacity might not be available for the proposed development, on August 22, 2005 and October 7, 2005, Toll submitted plans for the development of the properties without on-site septic systems. AC ¶35.[9] Toll gambled that it might get sewer capacity sometime in the future and made a decision to seek approvals for higher density development which would only be permitted only if sewer is available.

**J.     Toll Continues To Seek Approvals After The Passage Of Resolution 06-069**

Just a few months later, on January 25, 2006, the Red Oak Report was made public. AC ¶38. Soon thereafter, in March 2006, the County introduced Resolution 06-069 (adopting many

---

[9]     Toll's proposed development is located approximately five to six miles from Water Farm #1, the County's only existing treatment facility in the area. AC ¶19. As discussed, the County has already committed all available capacity at Water Farm #1 to other development. AC Ex. "E," pp. 2-5.

of the recommendations in the Red Oak Report), which put Toll and other developers on further notice that the County did not have any immediate plans to provide sewer service in the northeast portion of the SSSA where Toll's properties are located. AC Ex. "I." On March 23, 2006, the County advised Toll in writing that "[a]t the time of this request, sanitary sewer is not available nor has New Castle County warranted when or if sanitary sewer service will be available." AC Ex. "J." This fact was again reiterated in a letter from the County Department of Land Use dated March 31, 2006, which again stated "there is no sanitary sewer service in this area." Compl. Ex. "K," p. 2, § 17. And, on June 14, 2006, the County Department of Land Use advised Toll that: "This plan relies on connection to a public sanitary sewer system, but no such system exists. . . Without an approved sewerage strategy, the plan will not be approved and construction will not be permitted." AC Ex. "P."

Even with repeated notice that sewer service would not be available for the development, Toll pressed forward with its development plans assuming connection to County sewer service. Toll submitted land development plans to the County and sewer plans to the Department of Special Services ("Special Services") concerning designs for a potential sewer connection. While Special Services reviewed an exploratory design plan for sewers on December 20, 2006, the Department stated that its review "shall not be interpreted as a guarantee that sewer service will be provided to this region." Compl. Ex. "L." Again on January 22, 2007, in response to review of plan submissions, the County advised Toll that sewer service is not available for the development. Compl. Ex. "M," p. 2 § 20 ("there is no ... sewer service in this area.").[10]

---

[10]    Contrary to every written representation made by the County in the documents attached to the complaint, Toll alleges that it received verbal assurances for sewer. Under the circumstances, the Court is not required to accept bald conclusions that are directly contradicted by the plain language of the letters attached to the amended complaint. *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 184 (3d Cir. 2000) (court "need not accept as true

**K.     The County Stops Processing Plans For Connection To Sewer When Sewer Service Is Not Available**

In an October 22, 2007 letter, the County advised Toll of a jointly adopted policy of Special Services and the Department of Land Use ("Land Use"). AC Ex. "N." This policy, consistent with Resolution 06-069, provides standards to be used by Special Services to determine whether sewer capacity is or will be available for a proposed development. Under the policy, if Special Services certifies that no sewer capacity will be available, development plans designed for connection to sewer will not be processed by Land Use because the plans cannot be approved. *See* NCC Code § 40.05.320. On the same date, the County again advised Toll that "there is no sewer capacity of this development and . . . [that] the above application may not continue through the record plan process." AC Ex. "N."

**L.     Toll Files Suit Instead Of Pursuing An Administrative Appeal**

After the County advised Toll that its plans would not be processed, Toll did not take an appeal to any County administrative board. Even though Toll has previously had cases dismissed in Delaware State courts for failing to take administrative appeals (*see Toll Bros., Inc. v. Wicks*, C.A. No. 1314, 2006 WL 1829875, at *6-8 (Del. Ch. June 21, 2006)), Toll failed to take an administrative appeal and prematurely filed suit in this Court. [11]

---

unsupported conclusions and unwarranted inferences" and should address plaintiffs' allegations in a "realistic" manner).

[11]     Toll alleged in its initial complaint that it is acting on behalf of several property owners who are not joined as party plaintiffs. Compl. ¶¶9-12. After the County's opening brief demonstrated that all affected should be joined as parties (*see* D.I. 8, p. 12, n.11; *Hackett v. Board of Adjustment Of Rehoboth Beach*, 794 A.2d 596, 598-99 (Del. 2002); *Toll Bros.*, 2006 WL 1829875, at *7 n.44), Toll removed references to the actual property owners in the amended complaint. Toll, however, is still asserting claims concerning the property owners' properties (*see* AC ¶10, Ex. "A") who should be joined as parties to the litigation. Toll has again has failed to explain, as required by Rule 19(c), why these owners have not been joined. Toll therefore should be required to join all property owners or have its amended complaint dismissed pursuant to Rule 12(b)(7).

**ARGUMENT**

**I.    TOLL'S COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(b)(1) BECAUSE THE CASE IS NOT RIPE**

This Court lacks jurisdiction to hear Toll's constitutional and antitrust claims because the claims are not ripe. Toll cannot satisfy its "high burden" of demonstrating ripeness, *Acierno v. Mitchell*, 6 F.3d 970, 975 (3d Cir. 1993), because: (1) Toll has not exercised its administrative appeal rights from the County's land use decisions; (2) Toll has not applied for private sewer systems; and (3) County Council has not made a final decision whether the County will eventually permit alternate sewer disposal options for active land use applications, as the 18 month study period required by Resolution 06-069 has not passed. Until these jurisdictional prerequisites are satisfied, Toll does not have any ripe constitutional or antitrust claims.

**A.    Ripeness Is Jurisdictional**

In this Circuit, questions of ripeness implicate the justiciability of Toll's claims. *Acierno*, 6 F.3d at 975; *see also Sameric Corp. v. City of Philadelphia*, 142 F.3d 582, 598 (3d Cir. 1998) (remanding to district court with instructions to dismiss an unripe claim). "Because lack of ripeness impedes justiciability and thus the subject matter jurisdiction of the district court, ripeness claims should be raised in a Rule 12(b)(1) motion to dismiss rather than in a summary judgment motion." *Huberty v. U.S. Ambassador to Costa Rica*, No. 3:07-CV-1420, 2007 WL 3119284, at *1 (M.D. Pa. Oct. 22, 2007); *see also Taylor Inv., Ltd. v. Upper Darby Twp.*, 983 F.2d 1285, 1290 (3d Cir. 1993).

On a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, "no presumptive truthfulness attaches to plaintiff's allegations," and the plaintiff has the burden to prove that jurisdiction exists. *Mortenson v. First Federal Savings and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977); *Anjelino v. The New York Times Co.*, 200 F.3d 73, 87 (3d Cir. 1999); *see also*

12

*Acierno v. New Castle County Dept. of Land Use*, C.A. No. 1173-N, 2006 WL 1668370, at *3 (Del. Ch. June 8, 2006). The Court may consider matters outside the pleadings such as affidavits and other material properly before the Court. *See Acierno v. Haggerty*, C.A. No. 04-1376, 2005 WL 3134060, at *4-5 (D. Del. Nov. 23, 2005).

**B.     Toll's Constitutional Claims Are Not Ripe**

1.     The Finality Requirement.    Toll's substantive due process and equal protection claims are not ripe because the County has not made a final decision on Toll's development plans. "It is well established that, in cases involving land-use decisions, a property owner does not have a ripe constitutional claim until the [land use] authorities have had an opportunity to arrive at a final, definitive position regarding how they will apply the regulations at issue to the particular lands in question." *Sameric Corp.*, 142 F.3d at 597; *Acierno*, 6 F.3d 974 (internal citations and quotations omitted). This finality requirement ensures that issues and the factual components of the dispute are sufficiently fleshed out to permit meaningful judicial review. *Brubaker v. East Heppfield Twp.*, 234 Fed. Appx. 32, 35 (3d Cir. 2007) (citing *Bateman v. City of West Bountiful*, 89 F.3d 704, 707 (10th Cir. 1996)). Developers challenging County land use decisions have a "high burden" of proving that a final decision has been reached (*Acierno*, 6 F.3d at 975; *Eastern Shore Environmental, Inc. v. Kent County Department of Planning*, C.A. No. 1464, 2002 WL 244690, at *7 (Del. Ch. Feb. 1, 2002)), because "strong policy considerations favor local resolution of land-use disputes." *Denninno v. Municipality of Penn Hills*, No. 05CV1755, 2007 WL 316392, at *9 (W.D. Pa. Jan. 31, 2007) (quoting *Taylor*, 983 F.2d at 291). The Third Circuit has stressed the importance of the finality requirement because local authorities are in a better position than the courts to assess the burdens and benefits of land use

13

policy – and the federal courts should not be transformed into "super land-use boards of appeal." *Sameric Corp.*, 142 F.3d at 598.

To have a ripe constitutional claim, a developer making an as-applied challenge[12] to a land use decision must take advantage of administrative review procedures, such as administrative appeals, before a constitutional claim is ripe. *Brubaker*, 234 Fed. Appx. at 37. On numerous occasions, courts have found that failure to appeal to a County administrative board renders constitutional challenges to a land use decision unripe. *See Toll Bros.*, 2006 WL 1829875, at *7 (holding Toll's claims unripe when Toll failed to appeal a decision of Land Use to the Planning Board because "Toll Brothers has not yet obtained a final decision on its development plans"); *Acierno*, 6 F.3d at 974 (holding that a developer's claim is unripe when the developer failed to exercise an available appeal to the County Board of Adjustment); *Baldini West, Inc. v. New Castle County*, 852 F. Supp. 251, 254-55 (D. Del. 1994) (same).[13]  Therefore, until a developer makes an application, the application is denied, and the denial is appealed and decided by the administrative body, it has no ripe constitutional claim.

2.    Toll's Substantive Due Process Claim Is Not Ripe.   There appear to be three central allegations relevant to Toll's substantive due process claim: (a) that the County allegedly refused to allow Toll to provide a privately owned and operated sewer system (AC ¶101); (b) the

---

[12]    If the developer makes a facial challenge to a legislative enactment, and argues that any application of the challenged legislation is unconstitutional, the ripeness requirement is not implicated. *See County Concrete Corp. v. Tp. Of Roxbury*, 442 F.3d 159, 164 (3d Cir. 2006).

[13]    In rare circumstances, the ripeness requirement may be excused when the applicant is making a facial challenge to a legislative action or when an administrative appeal would be wholly futile. *See County Concrete*, 442 F.3d at 167. However, "[t]o come within the [futility] exception, a sort of inevitability is required: the prospect of refusal must be certain (or nearly so)." *Glendon Energy Co. v. Borough of Glendon*, 836 F. Supp. 1109, 1119 (E.D. Pa. 1993). The property owner, who bears the burden of proof, must make at least one application for administrative relief before the futility exception may be invoked" and must demonstrate that the hearing board (as opposed to the County Council) "would inevitably deny it any sort of relief." *Id.*

14

County erred in refusing to allow Toll's development because Toll "would not be able to proceed through the County land development process to record plan approval" without sewer (AC ¶102); and (c) the application of Resolution 06-069 to its proposed development project purportedly violates substantive due process. AC ¶¶104-06. These claims are not ripe.

- <u>Toll Has Not Made A Formal Application For A Private Sewer System, Nor Has Toll Appealed Any Decision.</u> Although Toll alleges that the County has rejected its proposal to build a private, community wastewater treatment facility (*see* AC ¶¶31, 46, 101), Toll has not formally applied for, nor has it ever been formally denied, a community wastewater treatment system.[14] Even though the County raised this issue in its first opening brief (D.I. 8, p. 15), Toll's amended complaint does not allege that it has prepared any engineering plans or studies for a community wastewater treatment system, that it has formally applied for any approvals for a community wastewater treatment facility from the County or the Delaware Department of Natural Resources and Environmental Control ("DNREC"), or that it has set aside sufficient land to construct such a system on its development submissions to Land Use. Because Toll has never made any formal application to the County for a community wastewater treatment system, its constitutional claims relating to a community wastewater facility are not ripe for review. *See Toll Bros.*, 2006 WL 1829875, at *7 (holding that Land Use must make a final decision on development plans before a claim is ripe for judicial review).

Even assuming that the County denied such an application, Toll's constitutional claims would not be ripe because Toll would (if timely filed)[15] have an administrative appeal to the

---

[14]    Even though this same claim was set forth in the County's January 4, 2008, opening brief, Toll's amended complaint does not allege that it has made any formal application to the County for a community wastewater treatment system.

[15]    If Toll has not timely filed its appeal to the Planning Board, and the time for appeal has now passed, its claims are barred. *See Baldini West, Inc.*, 852 F. Supp. at 255 ("If there is no

Planning Board. Under the County Code, an applicant pursuing a land use application[16] who is aggrieved by a finding, decision, or interpretation of a decision maker made in response to review of such application may appeal such action to the board assigned jurisdiction to hear the appeal. NCC Code § 40.31.510. Under the County Code, Table 40.30.110 confers jurisdiction on the Planning Board to review interpretations relating to subdivision issues. *See Toll Bros.*, 2006 WL 1829875, at *7; *Christiana Town Center*, 2003 WL 21314499, at *4. If a denial of an application for a community wastewater treatment system is appealed, Toll is or was free to argue (as it does here) that the failure to authorize a community wastewater treatment system is an error of law. *See* AC ¶¶62, 128, 133. The Planning Board, as the final decision maker, may reverse a decision if an interpretation of the Code was made in error.    NCC Code § 40.31.512A.1.    Because Toll has not exercised its administrative appeal rights and consequently, its constitutional claims are not ripe. *Acierno*, 6 F.3d at 974; *Sameric Corp.*, 142 F.3d at 598.

- The Processing Claim Is Not Ripe For Review. Toll also alleges that the County should have allowed its plans to proceed through the development process because it apparently believes that there is or will be sewer service available for its proposed 631 unit housing development. AC ¶¶21-22, 41, 62. Again, if the County erred in not allowing Toll's plans to

---

case or controversy before the Court, the Court must dismiss the suit, regardless of the dictates of a statute of limitations."); *Washington Greene Associates, Inc. v. Mayor of New Castle,* C.A. No. 90A-AP-11, 1990 WL 1242522, at *1 (Del. Super. Ct. Nov. 5, 1990) (holding that when the plaintiff failed to take an available appeal to the Board of Adjustment and the time for appeal had expired, the case was time barred); *Stevens v. Northwestern Indiana District Council,* 20 F.3d 720, 733 (7th Cir. 1994) ("foreclosure from a judicial remedy is the inevitable consequence of an unexcused and irremediable failure to exhaust.").

[16]    A "land use application" is defined by the County Code as "[a]ny building permit application, zoning permit application, subdivision or land development plan application, rezoning application, limited use application, special use application, variance application, appeals, or any other application made to New Castle County which, if granted, would have the effect of permitting the development or use of land . . .". NCC Code § 40.33.300.

proceed through the development process (AC ¶¶62, 67, 102), its remedy is to appeal to the Planning Board, which can reverse the decision if the interpretation of the Code is flawed or if the findings and conclusions of the decision maker "were not the result of the orderly and logical review of the evidence." NCC Code § 40.31.512A. Until this is done, the decision is not final and the prerequisites for constitutional ripeness have not been satisfied. *Eastern Shore,* 2002 WL 244690, at *7 (holding that if an applicant truncates the administrative appeal process, the preconditions for constitutional ripeness are not met).

• The County Has Not Finally Decided Whether Sewer Capacity Will Ultimately Be Available. Toll's challenge to the County's application of Resolution 06-069 (AC ¶¶45, 104) to Toll's development proposals also fails because Toll has not appealed any final decision concerning its proposals to the Planning Board. AC ¶¶67, 94. Beyond that, County Council also has not made a final decision concerning how it will ultimately apply the Resolution to Toll's proposed development. Resolution 06-069 provides that certain land use applications in designated areas will receive exclusive priority for sewer service. AC Ex. "I," § 5. The Resolution also states that within 18 months of "commencing construction of the components of the Central Core transmission system," the County will provide a report to County Council showing the available sewer capacity in the SSSA. *Id.* at § 10. If it is determined "at that time" that the County is or will be unable to provide sewer service for active plans outside the Central Core area, "alternative sewer disposal options will be considered by the County." *Id.*

Because construction of the Central Core transmission system did not begin until February 2007 (*see* Kuipers Aff., A19-A34)[17] the County will report to County Council in August 2008. "If it is determined at that time that the County will be unable to provide sewer

---

[17]    The Kuipers affidavit may be considered on the County's 12(b)(1) motion without converting the motion to a summary judgment motion. *Mortenson,* 549 F.2d at 891.

capacity" for this development, then "alternate sewer disposal options will be <u>considered</u> by the County." AC Ex. "I," § 10 (emphasis supplied). While nothing obligates the County to approve "alternate sewer disposal options" if sewer service will not be available, until the County completes its study, and until the County considers and decides on whether it will allow "alternate sewer disposal options," there is no final decision. For now, however, there is no sewer capacity available and Toll must wait for the final decision.

    3.    <u>Toll's Equal Protection Claims Are Not Ripe For Review</u>. Toll claims that it has been denied equal protection of the laws because the County has allegedly treated it differently from other developers (AC ¶112) and because the County has decided not to provide sewer service to the area to the northeast of the Central Core of the SSSA where Toll's properties are located (AC ¶118). Toll argues that the County allegedly has no "legitimate reason for the County's refusal to provide sanitary sewer service to properties located in the area northeast of the Central Core" because it has allowed other developments (which are not located east of Route 13 and north of Augustine Creek) to obtain sewer and record plans. AC ¶¶114-115, 119. Again, if Toll believes that a decision of the County relating to its plans is incorrect or that the County has a legal duty to provide it approvals for private or public sewer capacity, its remedy is to appeal to the Planning Board. NCC Code § 40.31.512A. Until appealed, Toll's equal protection claim is not ripe for review. *Acierno*, 6 F.3d at 974.

    **B.    Toll's Antitrust Claims Are Not Ripe**

    Like its constitutional claims, Toll's claims brought for alleged antitrust law violations must also satisfy the finality requirement before they are ripe for review. *See Cooper v. Amster*, 645 F. Supp. 46, 47 (E.D. Pa. 1986). As discussed above, Toll alleges that the County must provide sewer capacity for its proposed development or must allow it to build a private

community wastewater treatment facility. Because Toll failed to take administrative appeals to the Planning Board to challenge any of the County's decisions, its antitrust claims are not ripe.

In *Unity Ventures v. Lake County*, plaintiffs brought a similar antitrust claim alleging that defendants "improperly denied plaintiffs' request for sewage service in order to control the use of plaintiffs' property . . . ." 841 F.2d 770, 771 (7th Cir. 1988). The Seventh Circuit held that for an antitrust claim to be ripe, "[a] final decision must be demonstrated by a development plan submitted, considered, and rejected by the governmental entity." *Id.* at 775. Without taking the administrative appeal, the decision was not final. Therefore, Plaintiffs could not show that "they have done everything possible" and their antitrust claim was "not ripe for adjudication." *Id.* at 776; *see also Suburban Trails, Inc. v. New Jersey Transit Corp.* 800 F.2d 361, 364-366 (3d Cir. 1986) (a case relied upon in *Unity Ventures* dismissing an antitrust claim as unripe because an agency had not made a final ruling on plaintiff's grant application and holding that "Courts are discouraged from acting before issues have been properly presented, and the general policy against piecemeal review applies in the administrative field as in other types of litigation."). The same result should occur here, as Toll has not received a final decision from the final decision maker – the Planning Board.

## II.     ALL OF TOLL'S CLAIMS SHOULD BE DISMISSED UNDER RULE 12(b)(6)

### A.     The Rule 12(b)(6) Standards

While the Court must generally accept as true all facts alleged on a motion to dismiss, it may not "assume that the [plaintiff] can prove any facts that it has not alleged." *Associated Gen. Contractors of Calif., Inc. v. Calif. State Council of Carpenters*, 459 U.S. 519, 526 (1983). The Court should also reject "unsupported allegations," "bald assertions," and unsupported "legal conclusions." *Shipley v. Orndoff*, 491 F. Supp.2d 498, 505 (D. Del. 2007) (citing *Amiot v.*

*Kemper Ins. Co.*, 122 Fed. Appx. 577, 579 (3d Cir. 2004)). Also, the court "need not accept as true 'unsupported conclusions and unwarranted inferences'" and should address plaintiffs' allegations in a "realistic" manner. *Doug Grant, Inc.*, 232 F.3d at 184.

**B.    Toll's Anti-Trust Claims Fail As A Matter Of Law**

The County is immune from liability for any antitrust claim under the State action exemption, commonly know as the *Parker* doctrine.[18] "The state action exemption from antitrust liability was established by the Supreme Court in *Parker v. Brown*, 317 U.S. 341 (1943), and extended to local government entities acting 'pursuant to state policy to displace competition with regulation or monopoly public service.'" *Unity Ventures*, 841 F.2d at 777. Municipalities are immune from antitrust laws if the municipality is acting pursuant to a "clearly articulated" State policy. *Kaehley v. City of Pittsburgh*, 988 F. Supp. 888, 895 (W.D. Pa. 1997); *Unity Ventures*, 841 F.2d at 777; *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 38-39 (1985).[19] To determine if a municipality is acting under a clearly articulated State policy, it is not necessary that the State statute granting power to a municipal or State agency "expressly state . . . that the legislature intends for the delegated action to have anticompetitive effects." *Id.* at 43. "An agency is acting pursuant to a clearly articulated state policy so long as the anticompetitive conduct is a foreseeable result of the authority granted by the state." *Kaehley*, 988 F. Supp. at 895; *Town of Hallie*, 471 U.S. at 44.

The County is immune from any antitrust claim because the County's actions in engaging in alleged anti-competitive conduct are the foreseeable result of the authority granted to it by the Delaware General Assembly. In Title 9, § 1521 of the Delaware Code, the Delaware General

---

[18]    Municipalities are immune from damages under the Local Government Antitrust Act of 1984. 15 U.S.C. §§ 34-36.

[19]    If State action immunity is found, it bars claims for injunctive relief. *See Crosby v. Hosp. Auth. Of Valdotta & Lowndes Cty.*, 93 F.3d 1515, 1534 (11th Cir. 1996).

20

Assembly has provided the County the express authority to act upon all matters pertaining to sewer. The statute, entitled "Enumeration of Certain Specific Powers," states that "the New Castle County Council shall have general jurisdiction over all matters pertaining to the County, its business, finances and general welfare, **including the power to act upon all matters pertaining to sewers, sewerage disposal plants, trunk line sewers and sewerage systems generally . . .")."** (emphasis supplied). Title 9, § 2202 of the Delaware Code also specifically gives the County the right to plan, construct and improve "any sewerage system." By providing the County with "general jurisdiction" to "act upon all matters pertaining to sewers," the State has provided the County specific authority to govern sewer and anti-competitive conduct is clearly a foreseeable result. The County therefore is entitled to *Parker* immunity.

*Parker* immunity was found in the very similar cases of *Town of Hallie*, 471 U.S. at 44 and *Unity Ventures*, 841 F.2d at 777. In *Town of Hallie*, the plaintiffs alleged that they were potential competitors of the City in the collection and transportation of sewage, and that the City had violated antitrust laws by acquiring a monopoly over sewerage treatment and disposal. 471 U.S. at 37-39. Even though the State statutes relied upon by the City made no "mention of anticompetitive conduct," the United States Supreme Court held that the City was entitled to *Parker* immunity because it was "sufficient that the statutes authorized the City to provide sewage services and also to determine the areas to be served." 471 U.S. 42-43.[20] In *Unity Ventures,* the Seventh Circuit granted the municipality antitrust immunity under similar facts. 841 F.2d 778. Even though the State grant of authority was far less express than the Delaware General Assembly's grant of sewer authority to the County, the Court held that the municipality had immunity under the State action doctrine because the statute authorized the actions and

---

[20]    The Supreme Court also held that the active State supervision requirement of *Parker* immunity is not imposed in cases where the actor is a municipality. *Id.* at 46.

provided the authority to deny plaintiffs sewage service. *Id.* The Court held that the restraint on competition was a foreseeable result of the authorizing legislation. *Id.*

The express jurisdiction provided by the Delaware General Assembly to the County over all matters pertaining to sewer provides the County *Parker* immunity. Therefore, Toll's antitrust claim should be dismissed.[21]

### C.    Toll's Substantive Due Process Claims Fail As A Matter Of Law

Toll alleges that the County has violated its substantive due process rights by refusing to allow its proposed development to connect to the County's sewage system (AC ¶101), by not allowing it to build a private sewage system (*id.*), and by passing and implementing Resolution 06-069, which directs that the County will distribute its available sewer capacity to the Central Core and development intended to be permanently served by Water Farm #1. AC Ex. I; AC ¶¶102-106. Toll's claim that the County has arbitrarily interfered within its purported "legal right" to develop the properties (AC ¶107), fails for three reasons: (1) Toll has no right to municipal sewer service; (2) the County is the sole authority to determine the location of sewers; and (3) none of Toll's allegations meet the rigorous standards required to state a substantive due process claim as a matter of law.[22]

1.    <u>Toll Has No Right To Sewer Service</u>.  To prevail on a substantive due process claim, Toll must establish as a threshold matter that it has a protected property interest to which the Fourteenth Amendment's due process protection applies. *Desi's Pizza, Inc. v. City of Wilkes-*

---

[21]    Toll's amended complaint alleges that the County has purportedly abused its monopoly power. *See* AC ¶ 84. However, "any action that qualifies as state action is '*ipso facto* ... exempt from the operation of the antitrust laws.'" *City of Columbia v. Omni Outdoor Advertising*, 499 U.S. 365, 379 (1991).

[22]    Toll also alleges that the "County cannot lawfully preclude development by requiring that developers use non-existent municipal services." AC ¶108. This allegation is simply false, as Toll can submit a plan today and build houses with septic systems. Toll's motivation to obtain sewer services is so that it can build more units on the properties that it wants to buy.

*Barre*, 321 F.3d 411, 427 (3d Cir. 2003). Whether a certain property interest is constitutionally protected "is not determined by reference to state law" but rather depends on whether that interest is "fundamental" under the United States Constitution. *Gagliardi v. Clark*, C.A. No. 06-20, 2006 WL 2847409, at *10 (W.D. Pa. Sept. 28, 2006); *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 n.12 (3d Cir. 2006). It is Toll's burden to "provide the requisite evidence of a protected property interest" necessary to state a substantive due process claim. *Desi's Pizza, Inc. v. City of Wilkes-Barre*, C.A. No. 3:CV-01-0480, 2006 WL 2460881, at *21 (M.D. Pa. Aug. 23, 2006) (citing cases).

In the Third Circuit, the law is clear – the provision of water and sewer services, whether by a municipality or by a private utility company, is not a federally protected right worthy of substantive due process protection. *Ransom v. Marrazzo*, 848 F.2d 398, 412 (3d Cir. 1988); *Nicholas v. Pennsylvania State University*, 227 F.3d 133, 141 (3d Cir. 2000) (quoting *Ransom*); *Gagliardi*, 2006 WL 2847409, at *10 (holding that there is no substantive due process claim for failure to provide water service). Because Toll has no federally protected right to sewer service, it cannot state a substantive due process claim against the County as a matter of law.

2.    <u>The County Has No Duty To Provide A Sewer System.</u>    Toll alleges that the County is "unlawfully preventing" its developments because the County will not "plan or fund public sewer service for the area in which" it wants to build. AC ¶77. It is well settled, however, that "[d]ecisions as to whether, when or where to provide sewer service, like other plans for public improvements, are matters of discretion" and there is "no duty to provide sewer service." *Snyder v. State Dept. of Health and Mental Hygiene*, 391 A.2d 863, 866 (Md. App. 1978); *Ash/Ramunno Associates v. Branner*, C.A. No. 12389, 1993 WL 11701, at *3 (Del. Ch. Jan. 19, 1993) (holding that the court would not enjoin the sewer allocation procedure adopted by a

23

municipality in the absence of bad faith or fraud); *AvalonBay Communities, Inc. v. Sewer Commission of the City of Medford*, 853 A.2d 497, 505 (Conn. 2004) ("[t]he date of construction, the nature, capacity, location, number and cost of sewers and drains are matters within the municipal discretion with which the courts will not interfere.").

Because there is no duty to provide sewer service, municipalities are the sole authority for the location of sewer systems and infrastructure and they cannot be compelled to construct or to allow sewer systems. *See Hawkins v. City of Greenville*, 594 S.E.2d 557, 564 (S.C. App. 2004) (quoting *City of Tyler v. Likes*, 962 S.W.2d 489, 501 (Tex. 1997)) ("The duties of the municipal authorities in . . . determining when and where sewers shall be built, of what size and at what level, are of a quasi judicial nature, involving the exercise of deliberate judgment and large discretion, and depending upon considerations affecting the public health and general convenience throughout an extensive territory; and the exercise of such judgment and discretion in the selection and adoption of a general plan or system . . . is not subject to revision by a court or jury in a private action.").[23]  "[T]here is no authority for compelling a city to construct an artificial drainage sewer; and it would be a radical, dangerous and undemocratic precedent for the [c]ourts to undertake to enter into municipal legislation and administration in any such respect." *Miller v. Brentwood*, 548 S.W.2d 878, 883 (Tenn. App. 1977).  This is especially true in Delaware, as the County has "general jurisdiction over all matters pertaining to the County . . . including the power to act upon all matters pertaining to sewers, sewerage disposal plants, trunk line sewers and sewerage systems generally." Del. Code Ann. tit. 9 § 1521.

---

[23]   Long-established precedent supports this position. *See Martinez v. Cook*, 244 P.2d 134, 140 (N.M. 1952); *City of Greenville v. Queen City Lumber Co.*, 86 So.2d 860, 863 (Miss. 1956); *Mayor and Alderman of the City of Vicksburg v. Vicksburg Water Works Co.*, 202 U.S. 453, 472 (1906) (holding that the Court "had no authority to issue a mandatory injunction requiring the city to construct a sewer, . . . the exercise of this authority is primarily vested in the municipality, and not in the courts.").

24

Because the County has no duty to provide Toll a sewer system, and because no law requires the County to build or to permit Toll to construct a sewer system so it can build a 631 unit housing development, Toll's substantive due process claims fail as a matter of law.

3.  <u>The County's Alleged Conduct Does Not Meet The Demanding Substantive Due Process Test</u>. Even assuming Toll had a federally protected property interest in receiving sewer service (which it does not), under Third Circuit land use cases, the executive action must meet the rigorous "shock the conscience" for Toll to sustain a substantive due process claim. *Blain v. Twp. Of Radnor*, 167 Fed Appx. 330, 333 (3d Cir. 2006); *United Artist Theatre Co., Inc. v. Twp. Of Warrington*, 316 F.3d 392, 399-400 (3d Cir. 2003). Generally, actions which shock the conscience are "only the most egregious official conduct." *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 285 (3d Cir. 2004). "Courts have generally held that even if a municipality is guided by political motivations, unrelated to an application, that is not enough to 'shock the conscience' under a substantive due process analysis, particularly where the municipality, as the County here, can justify its actions as related to some legitimate goal." *Salem Church*, 2006 WL 2873745, at *13 (citing *Thornbury Noble, Ltd. v. Thornbury Twp.*, 112 Fed. Appx. 185, 188 (3d Cir. 2004)).

•  <u>Legislative Acts Satisfy The Substantive Due Process Test If Any Rational Basis Exists</u>. To sustain a substantive due process claim for legislative actions, the Court applies virtually the same standard of review under the due process clause as it does in equal protection cases[24] involving economic classifications – the law must be rationally related to a legitimate

---

[24]    Because Toll's substantive due process claims are reviewed under virtually the same standards as equal protection, "[t]he court may . . . hypothesize the motivations of the . . . legislature to find a legitimate objective promoted by the provision under attack." *United States v. Pollard*, 326 F.3d 397, 408 (3d Cir. 2003) (quoting *Malmed v. Thornburgh*, 621 F.2d 565, 569 (3d Cir. 1980)). Toll bears the burden "to negative every conceivable basis which might support" the legislative action of the County. *Id.*; *Ramsgate Court Townhome Ass'n v. West Chester Borough*, 313 F.3d 157, 160 (3d Cir. 2002).

25

government interest. *Rogin v. Bensalem Twp.*, 616 F.2d 680, 689 (3d Cir. 1980); *County Concrete*, 442 F.3d at 169. Thus, a legislative decision may be invalidated for irrationality or arbitrariness only if "the governmental body could have had no legitimate reason for its decision." *Id.*; *Herr v. Pequea Twp.*, 274 F.3d 109, 110-11 (3d Cir. 2001) (decisions concerning amendment of municipal service plans must survive due process review unless the government body could have had no legitimate reason for the decision).[25] Typically, a legislative act will withstand a substantive due process challenge if the legislature identifies a legitimate interest and could rationally conclude that the interest was served by the legislative act. *County Concrete*, 442 F.3d at 169. Toll bears the burden of demonstrating that the action of the County is arbitrary and irrational, and must allege facts that support a finding of arbitrary or irrational legislative action. *Pace*, 808 F.2d at 1035.

- The County's Actions Are A Hybrid Of Executive And Legislative Actions. Resolution 06-069 is a legislative act by County Council. AC Ex. "I." The implementation of the policies set forth in Resolution 06-069 – relating to plan approvals, sewer capacity letters, and decisions concerning processing of land use applications, etc. – are executive in nature. Therefore, this situation presents a hybrid legislative and executive action which may be reviewed under either test. While it is unclear whether Toll's substantive due process challenge is focused on executive action or legislative action, Toll has no substantive due process claim under either test – nothing shocks the conscience and the County's actions are rational.

- The County's "Path Forward" For The SSSA Is Rational And Does Not Shock The Conscience. The County's decision to build infrastructure for the Central Core of the SSSA and

---

[25]    The Third Circuit has held: "[t]his court will not substitute its judgment about land use policy and thereby undermine the legitimacy of democratic decision making unless the local legislative judgment is without a plausible rational basis." *Pace Resources, Inc. v. Shrewsbury Twp.*, 808 F.2d 1023, 1035 (3d Cir. 1987).

26

allow development that is intended to be permanently served by Water Farm #1 to obtain sewer while the County seeks a long-term solution for the sewer needs of the SSSA is rationally related to a legitimate governmental interest. The Resolution adopts many of the recommendations in the Red Oak Report, and provides a reasonable path forward for sewer service in the SSSA. AC Ex. "I." The County Council rationally determined that it would provide sewer infrastructure (at a cost in excess of $34 million) for the areas where conveyance systems were already substantially designed. AC Ex. "I," § 1. At the same time, the County authorized expenditures of between $5-10 million to study the long-term regulatory, technical and financial issues associated with a yet-unbuilt sewer system.

As Resolution 06-069 recognizes, the County does not currently have the capacity to service all of the development plans in the designated service areas, let alone service developments outside the Central Core. Even Toll admits that the County would need to "borrow" capacity because available sewer capacity is already committed to other development and "eventually, the County. . . is going to have to construct additional facilities" if it were to provide service for Toll's planned development. AC Ex. "E," p. 5. In light of this, the Resolution provided a rational plan to allocate available sewer capacity until its study of the entire system is complete. Indeed, the County would need to make substantial additional capital expenditures to obtain the sewer capacity and infrastructure required to service the entire SSSA. The County, however, decided to act in a fiscally responsible manner, creating a path forward that furthers environmental stewardship, distributes risks and costs fairly and equitably, and ensures that the long-term solution for the SSSA will be financially self-sustaining. AC Ex. "I," p. 1. There is nothing irrational or "conscience shocking" about the County addressing the issue of sewers in a careful, studied manner and acting prudently with taxpayer dollars for capital improvements.

Moreover, there is nothing irrational or conscious shocking concerning the executive actions implementing the policies of Resolution 06-069. Indeed, the County Code states that developments which contemplate connection to sewer must obtain verification from Special Services that capacity is or will be available before a development plan can be recorded. NCC Code § 40.05.320. The County has instituted a rational policy whereby it will not process development plan applications for connection to sewer when sewer is not available because it is a waste of the County's limited financial and personnel resources to process plans that cannot ultimately be approved. AC Ex. "N," p. 4. And, under the Resolution, the County will likely not be providing sewer service to the northeast area of the Central Core in the next five to seven years, so the County has rationally determined that it will not process Toll's plans for a development designed for sewer connection because sewer service will not be available. While Toll disagrees with the decision of the County Council and the implementation by the executive branch, the decisions are rational and nothing "shocks the conscience."

**D.    Toll Has Failed To State An Equal Protection Claim**

An "equal protection claim is not a device to dilute the stringent requirements needed to show a substantive due process violation" and it is "very unlikely that a claim that fails the substantive due process test will survive under an equal protection approach." *Eichenlaub*, 385 F.3d at 287. To establish a viable equal protection claim, Toll must have "received different treatment from that received by other individuals similarly situated." *Phillips v. County of Alleghany*, C.A. No. 05-1502, 2006 WL 1330206, at *4 (W.D. Pa. May 15, 2006) (quoting *Keenan v. City of Philadelphia*, 983 F.2d 459, 465 (3d Cir. 1992)). Toll must also allege facts showing that it was treated differently than others who are *prima facie* identical in all relevant

28

respects. *ADB Monroe, Inc. v. Monroe Twp.*, C.A. No. 04-1412, 2008 WL 58876, at *9 (D.N.J.

Jan. 3, 2008); *Purze v. Village of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002).

Even if arbitrary action is alleged, the County may justify its different treatment by

demonstrating that the governmental action is rationally related to a legitimate governmental

interest. *County Concrete*, 442 F.3d at 171. An equal protection claim will only survive when

"there is no rational basis for the difference in treatment," or, otherwise put, the difference is

"irrational and wholly arbitrary." *Eichenlaub*, 385 F.3d 287 (citing *Village of Willowbrook v.

Olech*, 528 U.S. 562, 564-65 (2000)). Rational basis review is not a license for Courts to judge

the wisdom, fairness, or logic of governmental choices, *Acierno v. New Castle County*, C.A. No.

92-385, 2000 WL 718346, at *7 (D. Del. May 23, 2000), but rather is a "highly deferential"

standard that requires that the challenged classification must be upheld "if there is any

reasonably conceivable state of facts that could provide a rational basis for the classification."

*Angstadt v. Mid-West School Dist.*, 377 F.3d 338, 345 (3d Cir. 2004). The Court may even

"hypothesize the motivations of the ... legislature to find a legitimate objective promoted by the

provision under attack." *United States v. Pollard*, 326 F.3d at 408. Toll bears the burden "to

negative every *conceivable* basis which might support" the actions of the County. *Id.* (emphasis

supplied).

1.    The County Is Not Providing Any Sewer Service To The Northeast SSSA. Toll

claims that the County government is treating it differently because the County is not providing

sewer service to its proposed development and the Pennfield development.[26] AC ¶¶112, 118.

---

[25]    Interestingly, Toll's initial complaint alleged an equal protection violation because the
County was allegedly treating it differently than the Pennfield development. Compl. ¶197. After
the County's opening brief demonstrated that the County is treating Pennfield exactly the same
(D.I. 8, p. 32), Toll now alleges that the County is discriminating against both it and Pennfield
and has dropped any claim that Pennfield is being treated differently. AC ¶118.

These developments are both in the northeast area of the Central Core (east of Route 13 and north of Augustine Creek – the yellow area on the SSSA map) and are both in an area where the County is not providing sewer service at this time. A1. Toll does not allege that the County is providing any sewer service to this yellow area on the SSSA map – located approximately five to six miles from Water Farm #1 and the un-built Water Farm #2. *See* AC ¶¶19, 22. There can be no equal protection claim because the County is treating Toll exactly the same as every other developer in the northeast area of the Central Core. *See* A1. When the County is treating every parcel of land in the area exactly the same, and has no duty to provide Toll sewer service, there is no equal protection violation. *See Gagliardi,* 2006 WL 2847409, at *11-12; *Snyder,* 391 A.2d at 866; *AvalonBay Communities, Inc.,* 853 A.2d at 505.

Even if the County was treating Toll differently by not providing it sewer service at this time, the County has legitimate justifications for providing sewer service to only the Central Core (and development intended to be permanently serviced by Water Farm #1), which include, but are not limited to, the: (1) limited treatment capacity to be allocated; (2) design plans for the conveyance system for the Central Core were substantially complete; (3) County needing time to study the environmental impact of additional treatment facilities; (4) County assuring that a sewer system that extends miles from the treatment facilities is financially sustainable; and (5) "path forward" allowing the County additional time planning and coordinating infrastructure improvements with other governmental agencies and allowing the County time to evaluate growth. Compl. Ex. "I." Because the County's actions are justified by a legitimate governmental objective, there can be no equal protection claim.

2. The County Is Not Treating Toll Any Differently Than Any Other Developer In The Northeast Area Of The SSSA. Toll's claim that it is being treated differently than other

developers must also fail as a matter of law because it cannot establish as a matter of law that the other developers are "*prima facie* identical in all relevant respects." *ADB Monroe, Inc.*, 2008 WL 58876, at *9. Toll alleges that the County is providing sewer services for the Silver Maple, Baymont Farms, and the Ponds at Odessa developments. AC ¶¶114-115. Toll fails to plead that any of these developments are east of Route 13 and north of Augustine Creek, or are outside an area designated by Resolution 06-069 to receive exclusive priority over the next five to seven years. Toll also alleges that the County has withdrawn its objection to a private utility for the Carter Farms development, which is located to the west of the Central Core area – which is nowhere near Toll's proposed developments. AC ¶116. Toll, however, has not alleged that it has sought the same approvals as Carter Farms, it had a pre Resolution 06-069 agreement with the County like Carter Farms, it is willing to build a private utility on the same terms and conditions as Carter Farms, or that it is similarly situated to Carter Farms. In fact, as discussed above, Toll has not even made any formal application for a community treatment system. Because Toll has not (and cannot) allege that it is being treated differently than any *prima facie* identical developer, it cannot meet its "heavy burden of demonstrating that defendants had no rational justifications for any allegedly different treatment." *ADB Monroe, Inc.*, 2008 WL 58876, at *9.

Finally, as repeatedly stated herein, there is simply no requirement for the County to spend its taxpayer money to provide sewer so that Toll can build a 631 unit housing development. *See contra* AC ¶77; *see also Toll Bros.*, 2006 WL 1829875, at *7 (stating that Toll's argument that the Department of Transportation should be required to vary its standards to allow Toll to build a 160 unit housing development is "frivolous"). Even assuming *arguendo* that some tangential equality could be established, the County should not be liable under the

31

equal protection clause because the County is not required to provide sewer service to every property in the County at the same time. *See* 18A *McQuillin Mun. Corp.* § 53.119 (3d ed. 2007) ("the fact that a municipality has adopted a plan of sewerage does not make it liable in damages arising from its failure to execute part of the plan because the municipality is at liberty to carry out the plan in whole or in part at such times as it sees fit."); *Novak v. City of Pittsburgh,* No. 2:05-cv-00897, 2006 WL 3420959, at *2 (W.D. Pa. Nov. 27, 2006) ("The Constitution does not require the City to address all . . . functions at the same time.").

### E.    Toll Has Not Stated A Procedural Due Process Claim

To state a procedural due process claim, a court must determine whether: (1) "the asserted individual interests are encompassed within the fourteenth amendment's protection of 'life, liberty, or property;' and (2) . . . the procedures available provided the plaintiff with 'due process of law.'" *Alvin v. Suzuki,* 227 F.3d 107, 116 (3d Cir. 2000). Toll's procedural due process claim, relating to allegations concerning sewer capacity, private wastewater treatment systems, and failure to process development plans (AC ¶¶91-97), should dismissed for three reasons. *First,* Toll cannot satisfy the first prong of the test because it has no federally protected right to sewer service. *Ransom,* 848 F.2d at 412; *Gagliardi,* 2006 WL 2847409, at *10. *Second,* "legislative acts," such as the adoption of Resolution 06-069 and the decisions about the location of sewer services by County Council "cannot form the basis for a procedural due process claim." *Salem Church,* 2006 WL 2873745, at *14; *Rogin,* 616 F.2d at 693 ("Long ago, the Supreme Court decided that the protections of procedural due process do not extend to legislative actions."). *Third,* if Toll is aggrieved by a decision or interpretation of a decision maker in response to its land use application, it can appeal that final decision to the Planning Board. *See* NCC Code § 40.31.510. Because Toll had a right to appeal that it did not exercise, its procedural

32

due process claim should be dismissed. *Alvin,* 227 F.3d at 116 (holding that a "state cannot be held to have violated due process requirements when it has made procedural protection available and the plaintiff has simply refused to avail himself of them.").

**F.    The Declaratory Judgment Claim Fails As A Matter Of Law**

Toll seeks a declaratory judgment that Section 40.05.520 of the New Castle County Code provides it the right to connect to County sewer facilities (AC ¶128) and/or that provisions of Title 29 of the Delaware Code requires the County to consent to allow a private community sanitary treatment system for its proposed development. AC ¶133. These claims should be dismissed because Toll has failed to exhaust its administrative remedies, § 40.05.520 provides no right for a private system, and no law requires the County to provide sewer service.

1.    The Court Should Not Exercise Jurisdiction Over Toll's Declaratory Judgment Claims. Toll has not exhausted its administrative remedies for its declaratory judgment claim, which seeks a declaratory judgment of its rights under the County Code. AC ¶28. "[T]he long-settled rule of judicial administration [is] that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50-51 (1938); *see also FTC v. Standard Oil,* 449 U.S. 232, 242 (1980) ("Judicial intervention into the agency process denies the agency an opportunity to correct its own mistakes and to apply its expertise ... [and] leads to piecemeal review which at the least is inefficient and upon completion of the agency process might prove to have been unnecessary."). Toll's claim that it is entitled to construct and/or own sewer facilities for sewer treatment under the County Code should be decided by the Planning Board – the final decision maker.

33

2.    <u>Toll Has No Right To Construct A Private Sewer System</u>.  Toll has no right to build a privately owned community sewer treatment system.  Section 40.05.520C of the County Code provides potential development options in the event that the site carrying capacity for the proposed development is insufficient.  This section allows improvements to be made to the sewer "as determined by the Department of Special Services."  This section, however, does not mandate that Special Services must approve a sewer connection or improvements to the system.  Under NCC Code § 38.02.002, the County is not required to execute a sewer agreement with the developer unless sewer capacity is or will be available.  And, NCC Code § 40.05.320 does not allow approval of a record plan unless sewer service is or will be available for the proposed development.  Therefore, if Special Services determines that sewer service is not and will not be available, Special Services is not required to allow improvements to the sewer system for connection.  Because all capacity has already been committed, there is no requirement that the County allow provide Toll connections because sewer service is not and will not be available in the near future.

With respect to private community wastewater treatment systems, there is no right to construct such systems under the Code.  Under the County Code, the County or its assigns are required to own all sewer systems within the County, except "approved Department of Special Services related sewer projects or . . . septic systems."  NCC Code § 38.02.007D.  Therefore, Special Services must approve any private "sewer related projects," and must approve any community system built by a developer for which it desires to accept ownership.

Section 40.05.520C does not obligate the County to approve, permit, accept or authorize a community system.  The section simply provides options <u>if</u> Special Services approves a community system.  <u>If</u> Special Services approves the use of a private system for "sewer related

34

projects," or permits a developer to build a system that the County will own, the sewer improvements "may" include the use of spray irrigation (with certain limitations) or other types of large scale treatment systems. The word "may" is permissive and does not command that Special Services must approve a private system. *See Harden v. Christiana Sch. Dist.*, 924 A.2d 247, 270 n.132 (Del. Ch. 2007) ("The use of the verb "shall" in legislation generally connotes a mandatory requirement while the verb "may" is deemed permissive."). Thus, nothing in Section 40.05.520C gives Toll any right to construct a community wastewater treatment system and Special Services has the right to deny an application for a community system if it so chooses.

3.     The State Code Does Not Require Approval Of A Private Sewer System. Toll's attempt to morph Title 26, Section 203D of the Delaware Code into right-to-build a community wastewater treatment facility (AC ¶133) is simply wrong. Del. Code Ann. tit. 26, § 203D is a statute adopted by the General Assembly which provides the Delaware Public Service Commission ("PSC") regulatory authority over private wastewater utilities within the State. Under the statute, municipalities are exempted from any requirement to obtain a certificate of public convenience and necessity ("CPCN"), and a private wastewater utility is not permitted to "extend its territory into a service territory of a municipality, government agency or wastewater authority or district without the approval of such entity and then obtaining approval of a certificate of public convenience and necessity from the [Public Service] Commission under this section." Del. Code Ann. tit. 26, § 203D. Nothing in the statute limits the County's ability to regulate the whether it will allow private wastewater utilities to operate within the County's jurisdiction or the location where a private wastewater utility may operate. Indeed, the statute does not provide the PSC with any jurisdiction over the County's exclusive authority over sewers. To the contrary, State law clearly provides the County "the power to act upon all matters

35

pertaining to sewers, sewerage disposal plants, trunk line sewers and sewerage systems generally . . .". Del. Code Ann. tit. 9, §1521.

**F.    The Equitable Estoppel Claim Fails As A Matter Of Law**

1.    <u>The Equitable Estoppel Claim Should Be Dismissed</u>.    The pendent State law equitable estoppel claim should be dismissed for Toll's failure to exhaust its administrative appeal to the Planning Board. "[W]here a remedy before an administrative agency is provided, relief must be sought by exhausting this remedy before the courts will either review any action by the agency or provide an independent remedy." *Levinson v. Delaware Compensation Rating Bureau*, 616 A.2d 1182, 1187 (Del. 1992); *Christiana Town Center, LLC*, 2003 WL 21314499, at *4. In other words, the doctrine seeks to relieve courts from having to interfere with an administrative body's "sifting process" when an administrative body might resolve the dispute without unnecessary or premature judicial action. *Salem Church*, 2006 WL 2873745, at *5.

Under Delaware law, a litigant is not required to exhaust its administrative remedies before asserting a pure equitable estoppel claim. That is, if the litigant is not challenging the substantive correctness of the underlying decision, a Court of equity may hear the equitable estoppel claim without the litigant being required to appeal to an administrative board. *See Eastern Shore*, 2002 WL 244690, at *6. However, if the litigant challenges the substantive correctness of the underlying decision, administrative remedies must be exhausted. *Id.*; *Salem Church*, 2006 WL 2873745, at *5 n.44.

Toll is challenging the substantive correctness of the County's decision concerning sewer for its proposed development – the County's alleged errors are the entire focus of Toll's 34 page amended complaint. As an example, Toll alleges that NCC Code §40.05.520 requires the County to allow it to connect to sewer and/or construct a community sewage treatment system.

36

AC ¶128. Toll also alleges that the County has "wrongfully refused to consider alternative sewer disposal options" (AC ¶46) and that the County is "unlawfully preventing the Proposed Developments from proceeding . . .". AC ¶77. Because these and other allegations challenge the substantive correctness of the County's decisions concerning land use and sewer approvals, Toll must exhaust available administrative remedies before it may bring an equitable estoppel claim.

    2.    <u>Standards For Applying Equitable Estoppel Against The Government</u>.  Even if Toll was not required to exhaust its available administrative remedies, its equitable estoppel claim fails as a matter of law.  The doctrine of equitable estoppel may be invoked only when "a party by his conduct intentionally or unintentionally leads another, in reliance upon that conduct, to change position to his detriment." *Waggoner v. Laster*, 581 A.2d 1127, 1136 (Del. 1990). To establish estoppel, Toll must prove by clear and convincing evidence that it: (i) lacked knowledge of the truth of the facts in question; (ii) relied on the conduct of the party against whom estoppel is claimed; and (iii) suffered a prejudicial change of position as a result of such reliance. *Salem Church*, 2006 WL 2873745, at *12.[27]

    "Application of the doctrine of equitable estoppel to governmental actions is rare." *Salem Church*, 2006 WL 2873745, at *12.  In order not to defeat the carrying out of public policy, estoppel is applied cautiously against the government and "only where the circumstances require its application to prevent manifest injustice." *Delaware River and Bay Authority v. Delaware Outdoor Advertising, Inc.*, C.A. No. 15922, 1998 WL 83056, at *4 (Del. Ch. Feb. 20, 1998).  Courts will not apply estoppel against the government "unless there are *exceptional*

---

[27]    "In the context of land development, Delaware courts have also recognized equitable estoppel claims where (1) a party, acting in good faith, upon some act or omission of the government, and (2) makes a substantial change of position or incurs extensive obligations and expenses, and (3) it would be highly inequitable or unjust to impair or destroy rights that the landowner has acquired." *Salem Church*, 2006 WL 2873745, at *12.

circumstances which make it *highly* inequitable or oppressive to enforce the regulations." *Salem Church*, 2006 WL 2873745, at *12 (emphasis in original). And, "Courts have also required that a party seeking to estop the government show some sort of 'affirmative misconduct,' an element normally not required to estop private parties." *Motiva Enters. LLC v. Secretary of the Dept. of Natural Res. & Envtl. Control*, 745 A.2d. 234, 250 (Del. Super. Ct. 1999); *Salem Church*, 2006 WL 2873745, at *12 n.107.

- <u>Toll Has Uses For The Land Absent Estoppel.</u>  Delaware courts apply estoppel against the government in the development context where landowners have incurred considerable expenses and where landowners have no other practical use for the land. *Acierno*, 2000 WL 718346, at *11. In *Acierno*, Judge Robinson denied Acierno's equitable estoppel claim against the County when the developer retained the ability to build a housing development, "albeit not a 322-unit apartment complex." *Id.* Judge Robinson held that so long as the developer had another practical use for the land, estoppel would not apply. *Id.*

Toll has uses for the land absent application of estoppel. Toll has not asserted a takings claim against the County, thereby implicitly recognizing that the County's decision to not provide sewer at this time has not denied it all economically viable use of the land. Moreover, Toll has alternative uses for the land – it can build a housing development which uses septic systems. While this may somewhat limit the number of lots Toll might be permitted to develop, it still provides Toll a practical use for the land – which precludes an estoppel claim as a matter of law. *Acierno*, 2000 WL 718346, at *11.

- <u>Toll Was Always Aware That Sewer Service Might Not Be Available.</u>  Toll's estoppel claim fails because it always knew that sewer service was not available – thereby eliminating Toll's ability to satisfy the first prong of the estoppel test, namely that it lacked

38

knowledge of the facts in question. *Salem Church*, 2006 WL 2873745, at *12. As of June 9, 2005, before Toll submitted its exploratory plans for the proposed development, Toll recognized that substantially all of the remaining capacity for Water Farm #1 had been "reserved" for other development. AC Ex. E. Toll, however, requested that it be permitted to "borrow" reserved sewer capacity from Water Farm #1 – capacity already reserved for other developments – until Water Farm #2 was built. *Id.* at pp. 2, 5. Toll further stated that, for permanent sewer capacity to be furnished for its proposed development, "eventually, the County is going to have to construct additional facilities." With these admissions (contained in a letter attached to Toll's amended complaint), Toll must concede that: (1) it knew the County's existing sewer capacity was reserved for other developments; (2) the County would need to build additional facilities to service its proposed development; and (3) no facilities were constructed.

Additionally, after the Red Oak Report was issued on January 25, 2006 (AC ¶38) and after Resolution 06-069 was introduced on March 28, 2006 (just a few short months after exploratory plans were submitted), Toll was well aware that the County had not reserved sewer capacity for the northeast quadrant of the SSSA and had no plans to service the area for the next five to seven years. AC Ex. "I," *see also* AC Ex. "P." Toll was well aware of the facts in question and could not have reasonably relied on any alleged verbal statement by the County.[28]

• Toll Never Had Any Right To Sewer Service. For equitable estoppel to apply in the land use context, it generally must be highly inequitable or unjust to impair or destroy rights that the landowner has acquired. *Salem Church*, 2006 WL 2873745, at *12. Toll, however, never had any right to sewer service. The County has no duty to provide sewer capacity to its residents. *AvalonBay Communities, Inc.*, 853 A.2d at 505; *Hawkins*, 594 S.E.2d at 564.

---

[28] Toll does not attach any document to the complaint wherein the County at any time guaranteed sewer capacity for the proposed developments.

Moreover, Toll never had a signed sewer agreement with the County (*see* NCC Code § 38.02.002C; NCC Code § 40.31.820), and was always told that sewer capacity could only be reserved at the record plan stage of the development process with a signed sewer agreement. AC Exs. "F," "G." Because Toll never had any right to sewer capacity, it cannot be "highly inequitable" to destroy a right that it never had.[29]

## CONCLUSION[30]

For the reasons stated herein, the County respectfully requests that the Toll's amended complaint be dismissed.

CONNOLLY BOVE LODGE & HUTZ LLP

*Max B Walton*

Collins J. Seitz, Jr. (Bar No. 2736)
cseitz@cblh.com
Max B. Walton (Bar No. 3876)
mwalton@cblh.com
1007 North Orange Street, P.O. Box 2207
Wilmington, DE 19899
Tel: (302) 658-9141
Fax: (302) 656-0116
*Attorneys for Defendant New Castle County*

Dated: January 31, 2008

---

[29]     In addition, Toll is simply unable, as a matter of law, to establish any "*exceptional circumstances*" which make the County's decision to not provide sewer to the northeast quadrant of the SSSA at this time "*highly* inequitable." *Salem Church*, 2006 WL 2873745, at *12. The County has never built infrastructure to service the area, the County has already committed available sewer capacity to other areas, and the cost to build additional treatment capacity is a substantial investment for the County. Indeed, the County intends to spend between $5-10 million solely to study and develop a long-term solution for the SSSA. When the County has never committed to provide sewer for the proposed development, there can be no "highly inequitable" circumstances to force the County to spend tens of millions in taxpayer dollars to provide sewer service for Toll to build a 631 unit housing development.

[30]     Toll's jurisdictional basis is federal question jurisdiction over the Clayton Act and § 1983 claims. In the event that these claims are dismissed, the Court should not retain jurisdiction over the declaratory judgment and estoppel claims if those claims remain viable. *See State Auto Ins. Companies v. Summy*, 234 F.3d 131, 135 (3d Cir. 2000) (holding that "it is counterproductive for a district court to entertain jurisdiction over a declaratory judgment action that implicates unsettled questions of state law."); *see also Duke/Fluor Caribbean S.P. v. Alstom Power, Inc.*, C.A. No. 03-544, 2004 WL 2095702, at *1-2 (D. Del. Sept. 20, 2004).

## CERTIFICATE OF SERVICE

I, Max B. Walton, hereby certify that on the 31st day of January, 2008, a copy of New Castle County's Opening Brief in Support of Its Motion to Dismiss the Amended Complaint was served by CM/ECF to counsel of record as follows:

Jeffrey M. Weiner (Bar No. 403)
Law Offices of Jeffrey M. Weiner
1332 King Street
Wilmington, DE 19801

Max B. Walton (Bar No. 3876)

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

GARY C. and GALE B. WARREN,
and TOLL BROS., INC.,

               Plaintiffs,

      v.

NEW CASTLE COUNTY,

               Defendant.

C.A. No. 07-725 *** LPS

**APPENDIX OF DOCUMENTS TO NEW CASTLE COUNTY'S**
**OPENING BRIEF IN SUPPORT OF**
**ITS MOTION TO DISMISS THE AMENDED COMPLAINT**

CONNOLLY BOVE LODGE & HUTZ LLP
Collins J. Seitz, Jr. (Bar No. 2237)
Max B. Walton (Bar No. 3876)
The Nemours Building
1007 North Orange Street, 8th Floor
P.O. Box 2207
Wilmington, DE 19899
Tel: (302) 658-9141
Fax: (302) 656-0116
*Attorneys for New Castle County*

Dated:  January 31, 2008

## TABLE OF CONTENTS

SSSA Map Dated March 24, 2006.................................................................................. A01

New Castle County Ordinance No. 06-041 ................................................................ A02

New Castle County Ordinance No.06-042 ................................................................ A05

New Castle County Ordinance No.06-0125 .............................................................. A14

Affidavit of Edwin P. Kuipers .................................................................................... A19





## New Castle County
## Southern Sewer
## Service Area



Date: March 24th, 2006
Scale: 1" = 8000'

0  0.5  1        2        3        4   Miles

C:\gisdata\Projects\SSSA_2006_03_09\SSSA_NJ 2006_05_10.mxd

09/15/2006 FRI 13:01 FAX                                                ☑002/013
09/15/2006 10:31 FAX                                                    ☑002

Introduced by:  William J. Tansey
Date of introduction: April 11, 2006

## ORDINANCE NO. 06- _041_

## TO REVISE *NEW CASTLE COUNTY CODE*, CHAPTER 38 ("UTILITIES"), ARTICLE 2 ("SEWERS AND SEWAGE DISPOSAL")

**WHEREAS**, as part of an extensive review of its plans for providing sanitary sewer service to the Southern Sewer Service Area ("SSSA"), New Castle County ("County") has identified several modifications that should be made to Chapters 38 and 40 of the *New Castle County Code* ("*County Code*"); and

**WHEREAS**, the County has assessed capital recovery fees to recoup the cost of sanitary sewer infrastructure north of the Chesapeake & Delaware ("C&D") Canal for more than twenty-five years and the County assessed capital recovery fees south of the C&D Canal until December 31, 1997; and

**WHEREAS**, since December 31, 1997, the *County Code* requires that property owners connecting to the County sanitary sewer system located north of the C&D Canal pay a capital recovery fee, while property owners in the SSSA pay a sewer impact fee in the amount of eight thousand, one hundred and sixty-four dollars ($8,164.00); and

**WHEREAS**, the County, as a sewer utility, enjoys greater legal authority with respect to capital recovery fees than it does with respect to sewer impact fees; and

**WHEREAS**, to provide consistent mechanisms for capital cost recovery above and below the C&D Canal, the County would like to amend the *County Code* to provide for the assessment of capital recovery fees to recoup capital costs throughout all of the County; and

**WHEREAS**, to recoup the operating and maintenance costs of providing interim treatment and disposal service in the SSSA through Middletown's wastewater treatment facility and Water Farm Number One, the County wishes to assess a SSSA interim sewer charge; and

**WHEREAS**, to ensure consistency, the County sewer connection fees belong exclusively in Chapter 38 ("Utilities"), rather than being in both Chapter 38 and Chapter 40 of the *County Code*; and

**WHEREAS**, New Castle County Council has determined that the provisions of this ordinance substantially advance, and are reasonably and rationally related to, the legitimate government interest of promoting the health, safety, morals, convenience, order, prosperity and welfare of the present and future inhabitants of this State.

09/15/2006 FRI 13:01  FAX                                                   ☑003/013
09/15/2006 10:51 FAX                                                        ☑003

**NOW, THEREFORE, THE COUNTY OF NEW CASTLE HEREBY ORDAINS:**

    **Section 1.** *New Castle County Code*, Chapter 38 ("Utilities"), Article 2 ("Sewers and Sewage Disposal"), Section 38.02.014 ("Sewer Connection Fees") is hereby amended by adding the material that is underscored, as set forth below:

**Sec. 38.02.014.  Sewer connection fees.**

A.   The Department of Special Services shall charge the following fees for connection to the sanitary sewer system.

    1.  *Capital Recovery Fee.* A capital recovery fee shall be paid by any property owner connecting to the New Castle County sanitary sewer system. The amount of the capital recovery fee shall be determined by the Department of Special Services, which shall maintain a Sewer District Map reflecting all capital recovery fees.

    2.  *Lateral fee.* A lateral fee is assessed by the Department of Special Services to cover the cost of providing a lateral stub to the property line and for inspecting and processing the tie-in of the on-site sewer to the stub. The Department of Special Services shall establish fees to cover the varying County costs that may be required for different types of installations. If a building permit is required for the lot or parcel, the lateral fee shall be paid in full at the time of building permit application. If a building permit is not required, the lateral fee shall be paid at the time of connection.

    3.  *Sewer Inspection Fee.* The sewer inspection fee covers the cost of inspecting newly-constructed sewer infrastructure and is assessed pursuant to Appendix 2 to Chapter 40 of this Code.

    4.  *SSSA Interim Service Charge.* The Southern Sewer Service Area (SSSA) interim service charge shall be paid in consideration for the County providing interim sewer service in the SSSA. The County plans to provide such interim service through the Middletown wastewater treatment facility and Water Farm Number One while it evaluates and constructs the best long-term treatment and disposal system to service the area. The Department of Special Services shall establish the charge based upon the cost of operating and maintaining such interim service. The administration of the charge shall be pursuant to the Department of Special Services' written policies regarding the allocation and provision of interim sewer service in the SSSA.

    **Section 2.**   **Consistent with Comprehensive Development Plan.** New Castle County Council finds that the provisions of this Ordinance are consistent with the spirit and intent of the New Castle County Comprehensive Development Plan.

**Section 3.    Inconsistent Ordinances and Resolutions Repealed.** All ordinances or parts of ordinances and all resolutions or parts of resolutions that may be in conflict herewith are hereby repealed except to the extent they remain applicable to land use matters reviewed under previous Code provisions as provided in Chapter 40 of the *County Code.*

**Section 4.    Severability.** The provisions of this Ordinance shall be severable.  If any provision of this ordinance is found by any court of competent jurisdiction to be unconstitutional or void, the remaining provisions of this ordinance shall remain valid, unless the court finds that the valid provisions of this ordinance are so essentially and inseparably connected with, and so dependent upon, the unconstitutional or void provision that it cannot be presumed that County Council would have enacted the remaining valid provisions without the unconstitutional or void one; or unless the court finds that the remaining valid provisions, standing alone, are incomplete and incapable of being executed in accordance with County Council's intent.  If any provision of this ordinance or any zoning map or portion thereof is found to be unconstitutional or void all applicable former ordinances, resolutions, zoning maps or portions thereof shall become applicable and shall be considered as continuations thereof and not as new enactments regardless if severability is possible.

**Section 5.    Effective Date.** This ordinance shall become effective immediately upon its adoption by County Council and approval by the County Executive.

Approved on:

County Executive                    7/31/06

Adopted by County Council of
New Castle County on: 7/25/06

President of County Council
New Castle County

**SYNOPSIS:**  Consistent with practice for north of the C&D Canal, this ordinance replaces sewer impact fees with capital recovery fees to offset the cost of new sewer infrastructure in the SSSA. This ordinance also consolidates sewer connection charges in Chapter 38 of the Code and authorizes the County to collect a SSSA interim service charge.

**FISCAL NOTE:**  This Ordinance changes the mechanism for recouping capital costs in the SSSA from an impact fee to a capital recovery fee.  This Ordinance also authorizes the County to collect a SSSA interim service charge to pay the cost of providing interim sewer service in the SSSA.  The County estimates this fee to be between $1,000 and $2,000 per EDU.

A04

09/15/2006 FRI 13:01  FAX                                                   ☒005/013
08/30/2006 11:11 FAX                                                       ☒002

Introduced by:  William J. Tansey
Date of introduction: April 11, 2006

### SUBSTITUTE NO. 1 TO
### ORDINANCE NO. 06 - 042

## TO REVISE *NEW CASTLE COUNTY CODE*, CHAPTER 40 ("UNIFIED DEVELOPMENT CODE"), REGARDING ARTICLE 5 ("SITE CAPACITY AND CONCURRENCY CALCULATIONS"), ARTICLE 12 ("SEWER AND WATER IMPACT"); ARTICLE 14 ("IMPACT FEES"); AND ARTICLE 22 ("DRAINAGE, UTILITIES, SEPTIC SYSTEMS, PARKING, LOADING, AND LIGHTING")

**WHEREAS,** as part of an extensive review of its plans for providing sanitary sewer service to the Southern Sewer Service Area ("SSSA"), New Castle County ("County") has identified several modifications that should be made to Chapters 38 and 40 of the *New Castle County Code* ("*County Code*"); and

**WHEREAS,** the County has assessed capital recovery fees to recoup the cost of sanitary sewer infrastructure north of the Chesapeake & Delaware ("C&D") Canal for more than twenty-five years and the County assessed capital recovery fees below the C&D Canal until December 31, 1997; and

**WHEREAS,** since December 31, 1997, the *County Code* requires that property owners connecting to the County sanitary sewer system located north of the C&D Canal pay a capital recovery fee, while property owners in the SSSA pay a sewer impact fee in the amount of eight thousand, one hundred and sixty-four dollars ($8,164.00); and

**WHEREAS,** the County, as a sewer utility, enjoys greater legal authority with respect to capital recovery fees than it does with respect to sewer impact fees; and

**WHEREAS,** to provide consistent mechanisms for capital cost recovery above and below the C&D Canal, the County would like to amend the *County Code* to provide for the assessment of capital recovery fees to recoup capital costs throughout all of the County; and

**WHEREAS,** to further facilitate consistency, the County sewer connection fees belong exclusively in Chapter 38 ("Utilities"), rather than being in both Chapter 38 and Chapter 40 of the *County Code*; and

**WHEREAS,** Chapter 40 of the *County Code* also provides two different standards for determining sewer concurrency, depending on whether development is located above or below the C&D Canal; and

**WHEREAS,** it has also been determined that is both practical and equitable to apply a uniform method of determining sewer concurrency throughout the County; and

A05

09/15/2006 FRI 13:01  FAX                                    ☒006/013
08/30/2006 11:11 FAX                                        ☒003

WHEREAS, New Castle County Council has determined that the provisions of this ordinance substantially advance, and are reasonably and rationally related to, the legitimate government interest of promoting the health, safety, morals, convenience, order, prosperity and welfare of the present and future inhabitants of this State.

**NOW, THEREFORE, THE COUNTY OF NEW CASTLE HEREBY ORDAINS:**

Section 1.    *New Castle County Code*, Chapter 40 ("Unified Development Code"), Article 5 ("Site capacity and concurrency calculations"), Division 40.05.000 ("Purpose") is hereby amended by deleting the material in brackets and adding the material that is underscored, as set forth below:

**Division 40.05.000.  Purpose.**

. . .

B.  *Sewer capacity*.  County sewer service may represent a limiting factor for development. The County has conducted an analysis of various areas of the County to determine the sewer capacity of each area.  [In the Southern Sewer Service Area each landowner is allocated a proportionate share of the capacity which sets a maximum development potential for each site.  In the remaining sewer services areas sewer capacity shall continue to be provided based upon a first come first serve basis.] In all sewer service areas in the County, sewer capacity shall be provided on a first come, first serve basis if and/or when sanitary sewer service becomes available, as determined by the Department of Special Services.

. . .

Section 2.    *New Castle County Code*, Chapter 40 ("Unified Development Code"), Article 5 ("Site capacity and concurrency calculations"), Section 40.05.320 ("Sewer capacity calculation") is hereby amended by the addition of the underlined text and the deletion of the bracketed text as set forth below:

**Sec. 40.05.320.  Sewer capacity calculation.**

Prior to receiving a rezoning or record subdivision or land development final plan approval from the Department [for land located south of the C&D Canal, the developer shall complete the following calculation of capacity (Table 40.05.320) using data supplied by the Department of Special Services regarding the applicable sewer subbasin.  The developer may be required to complete the calculations for both lines and service plant where the sewer lines may be a limiting factor.  For property located north of the C&D Canal], the developer must obtain verification from the Department of Special Services that sewer capacity is available or will be available at the time of the proposed development.

A06

09/15/2006 FRI 13:01  FAX                                                        ☑007/013
08/30/2006 11:11 FAX                                                            ☑004

[Table 40.05.320
SEWER CAPACITY CALCULATION ]

*[TABLE INSET*

| Step | Action | Formula |
|------|--------|---------|
| Step 1 | Take Line Capacity Gallons / Acre / Day (GPAD) for district from Subbasin Sewer Capacity Report | = GPAD |
| | Add Line Capacity Improvement GPAD from improvement credit or impact fee | + GPAD |
| | Equals Adjusted Line GPAD per acre | = GPAD |
| | Take Plant Capacity Gallons per Day (GPAD) for district from Sewer Capacity Report | = GPAD |
| | Use Adjusted Line GPAD or Plant Capacity GPAD whichever is less | = GPAD |
| Step 2 | Take Base Site Area Table 40.05.420 step 1 | = ac. |
| | Multiply by Adjusted GPAD | × GPAD |
| | Equals GPD Allocation | = GPD |
| Step 3 | Residential only | |
| | Take GPD Allocation | = GPD |
| | Divide by | / |
| | Single family = 300 | |
| | Attached = 250 | |
| | Multi-family and mobile home = 200 | |
| | Equals Maximum Dwelling Units | = du's |
| Step 4 | Nonresidential Uses only | |
| | Take GPD Allocation | = GPD |
| | Divide by GPM per square foot | / |
| | Commercial = 0.10 per sf. | |
| | Industrial = 0.50 per sf. or | |
| | Industrial = actual _____ per sf. | |
| | Office = 0.10 per sf. | |
| | Equals = Maximum Floor Area (square feet) of Nonresidential | = |

]

A07

09/15/2006 FRI 13:01  FAX                                                    ☑008/013
08/30/2006 11:11 FAX                                                         ☑005

Section 3.    *New Castle County Code*, Chapter 40 ("Unified Development Code"), Article 5 ("Site capacity and concurrency calculations"), Section 40.05.510 ("Site carrying capacity calculation") is hereby amended by the addition of the underlined text and the deletion of the bracketed text as set forth below:

**Sec. 40.05.510.  Site carrying capacity calculation.**

The site carrying capacity shall be determined as provided in Table 40.05.510 below.

| Table 40.05.510 SITE CARRYING CAPACITY | | | |
|---|---|---|---|
| *Line* | *Action* | *Residential Yield (dwelling units)* | *Nonresidential Yield (floor area in sq.ft.)* |
| Line 1 | Enter Results from Traffic Impact Study | | |
| Line 2 | Enter Development Capacity of the Site as Determined Under Section 40.05.210 – School Capacity Certification | | |
| Line 3 | Enter Development Capacity of the Site as Determined Using Form 40.05.310 – Water Capacity Certification | | |
| Line 4 | ~~Enter Results from Form 40.05.320 – Sewer Capacity Certification (Existing)~~ | | |
| Line 5 | Concurrency Capacity – Select the Lowest Intensity from Lines 1, 2 ~~, 3 and 4~~ | | |
| Line 6 | Maximum Resource Capacity Enter Results from Tables 40.05.421 and 40.05.422 | | |
| Site Carrying Capacity Enter lowest of Lines 5 and 6 | | | |

Section 4.  *New Castle County Code*, Chapter 40 ("Unified Development Code"), Article 12 ("Sewer and water impact"), Section 40.12.350 ("Sewer connection fees") is hereby revised by the deletion of the bracketed text and the addition of the underlined text as set forth below:

**Sec. 40.12.350.  Sewer connection fees.**

[A.    *Sewer impact fee.* A sewer impact fee shall be paid at the time of application for a certificate of occupancy for a lot or parcel of land located within the Southern New Castle County Service Area. The impact fee may be reduced by the Department of Special Services as provided in Section 40.14.241.] Sewer connection fees shall be charged pursuant to Chapter 38, Section 38.02.014 of the *County Code*.

A08

[B.     *Capital recovery fee.* A capital recovery fee shall be paid by any property owner seeking connection to the public sewer system located in a sewer service area north of the C&D canal as determined by the Department of Special Services. A capital recovery fee shall also be charged in the Southern Sewer Service Area as determined by the Department of Special Services at time of connection to the public sewer system where no sewer impact fee was paid.

C.     *Lateral fee.* A lateral fee shall be paid at the time of connection permit application of the lot or parcel. The lateral fee is assessed by the Department of Special Services to cover the costs of providing a lateral stub to the property line and for inspecting and processing the tie-in of the on-site sewer to the stub. The Department of Special Services shall establish fees to cover the varying County costs that may be required for different types of installations. A lateral fee shall not be charged where an impact fee was paid and all necessary sewer lines were previously installed.

D.     *Septic elimination fee.* A septic elimination fee, as determined by the Department of Special Services shall be paid at the time of connection to the County sewer system following a septic elimination project.]

Section 5. *New Castle County Code,* Chapter 40 ("Unified Development Code"), Article 14 ("Impact fees"), Section 40.14.010 ("Applicability") is hereby revised by the deletion of the bracketed text as set forth below:

**Sec. 40.14.010.  Applicability.**

New Castle County may require that new development provide impact fees for the following services:

A.     *Residential uses:*

   1.     Libraries.
   2.     Fire and rescue.
   3.     Emergency medical services (EMS).
   4.     Law enforcement.
   5.     Parks and special facilities.
   6.     [Sewers.]
   [7.]   County facilities.

B.     *All other uses:*

   1.     Fire and rescue.
   2.     Law enforcement.
   3.     Emergency medical services (EMS).
   4.     [Sewers.]
   [5.]   County facilities.

**Section 6.** *New Castle County Code,* Chapter 40 ("Unified Development Code"), Article 14 ("Impact fees"), Section 40.14.210 ("Impact fees"), Table 40.14.210 is hereby revised by the deletion of the bracketed text and the addition of the unlined text as set forth below:

**Sec. 40.14.210.  Impact Fees.**

Impact fee amounts are provided in Table 40.14.210 below.

| Service | Parks & Special Facilities | Libraries | County Facilities | EMS | Fire and Rescue | Law Enforcement | [Sewer, Southern Service Area*] | Total |
|---|---|---|---|---|---|---|---|---|
| **Table 40.14.210 IMPACT FEES (Dollars)** | | | | | | | | |
| **RESIDENTIAL  Per Housing Unit** | | | | | | | | |
| Single-family detached | $328 | $138 | $112 | $7 | $84 | $62 | [$8,164**] | [$8,895] $731 |
| Single-family attached | $304 | $129 | $105 | $6 | $84 | $58 | [$6,579] | [$7,265] $686 |
| All other housing † | $225 | $95 | $77 | $5 | $84 | $43 | [$5,263] | [$5,792] $529 |
| **NONRESIDENTIAL  Per 1,000 Square Feet of Floor Area ‡** | | | | | | | | |
| Commercial/shopping center (less than 60,000 sf. GFA) | n.a. | n.a. | $127 | $8 | $339 | $42 | [See Section 40.14.241(B)] | [Varies] $516 |
| Commercial/shopping center (60,000 sf. to 200,000 sf. GFA) | n.a. | n.a. | $95 | $6 | $339 | $33 | [See Section 40.14.241(B)] | [Varies] $473 |
| Commercial/shopping center (greater than 200,000 sf. GFA) | n.a. | n.a. | $76 | $5 | $339 | $28 | [See Section 40.14.241(B)] | [Varies] $448 |
| Office/institutional (less than 10,000 sf. GFA) | n.a. | n.a. | $176 | $11 | $112 | $24 | [See Section 40.14.241(B)] | [Varies] $323 |
| Office/institutional (10,000 sf. to 50,000 sf. GFA | n.a. | n.a. | $150 | $10 | $112 | $16 | [See Section 40.14.241(B)] | [Varies] $288 |
| Office/institutional (greater than 50,000 sf. GFA | n.a. | n.a. | $142 | $9 | $112 | $14 | [See Section 40.14.241(B)] | [Varies] $277 |
| Business park | n.a. | n.a. | $120 | $8 | $63 | $14 | [See Section 40.14.241(B)] | [Varies] $205 |
| Light industrial | n.a. | n.a. | $88 | $5 | $63 | $7 | [See Section 40.14.241(B)] | [Varies] $163 |
| Warehousing | n.a. | n.a. | $47 | $3 | $63 | $4 | [See Section 40.14.241(B)] | [Varies] $117 |

A10

| Service | Parks & Special Facilities | Libraries | County Facilities | EMS | Fire and Rescue | Law Enforcement | [Sewer, Southern Service Area*] | Total |
|---------|---------------------------|-----------|-------------------|-----|-----------------|-----------------|--------------------------------|-------|
| Manufacturing | n.a. | n.a. | $70 | $4 | $63 | $3 | [See Section 40.14.241(B)] | [Varies] $140 |

Table 40.14.210
IMPACT FEES (Dollars)

[* All Southern Sewer Service Area impact fees for nonresidential uses shall be determined on a case-by-case basis by the Department of Special Services. See Section 40.14.241 B.]

[** Applicants of subdivision plans being processed pursuant to former Code provisions that have opted for three-quarter (3/4) acre lots pursuant to Section 40.22.360 (A)(2)(B), are subject to all service impact fees but exempt from the sewer impact fee. Upon septic system failure, the user may hook up to the County southern sewer system after paying all applicable capital recovery and connection fees as determined by the Department of Special Services.]

† Due to similar square footage, small single-family units and single-wide mobile homes will be included under the "All other housing" designation.

‡ When building or expanding a nonresidential building, the first 1,000 square feet are exempt from the assessment of impact fees. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ As a condition of such waiver, the Department may require that an alternative funding source be identified to pay the applicable impact fee.

Section 7. *New Castle County Code*, Chapter 40 ("Unified Development Code"), Article 14 ("Impact fees"), Section 40.14.241 ("Sewer impact fees") is hereby revised by the deletion of the bracketed text and the addition of the underlined text as set forth below:

**Sec. 40.14.241. Reserved.** [Sewer Impact Fees.

A.     An impact fee reduction shall be determined by the Department of Special Services on a case-by-case basis for those applicants who construct a spray irrigation system (or other approved large scale treatment system) as provided in Article 5 of this Chapter. The impact fee reduction shall be based upon the extent to which the facility or its connection lines will be utilized by the County as part of the County sewer system.

B.     All sewer impact fees for commercial and industrial uses shall be determined on a case-by-case basis by the Department of Special Services. In calculating this impact fee, the Department shall utilize the same data and methodology relied upon to generate residential sewer impact fees.]

Section 8. *New Castle County Code*, Chapter 40 ("Unified Development Code"), Article 22 ("Drainage, utilities, septic systems, parking, loading and lighting"), Section 40.22.340 ("Standards") is hereby revised by the deletion of the bracketed text and the addition of the underlined text as set forth below:

A11

Sec. 40.22.340. Standards.

A.    Standards for all septic systems . . . .

1.    Site evaluations. Site evaluations shall be . . . .

2.    Disposal fields. All septic systems shall be . . . .

3.    Protection from soil compaction. Prior to commencement of any . . . .

4.    Timing of installation. The applicant shall . . . .

5.    Size and shape of lots. Each lot served shall be . . . .

6.    Dry sewer line. Dry sanitary sewer lines . . . .

7.    Backfilling. Backfilling of excavations . . . .

[8.]    [Impact fee. An impact fee for each lot shall be paid as provided in Article 14 of this Chapter to cover the costs of the construction of a public sewer system and all necessary trunk lines to serve proposed development within the Southern New Castle County Sewer Service Area.]

Section 9.    Consistent with Comprehensive Development Plan. New Castle County Council finds that the provisions of this Ordinance are consistent with the spirit and intent of the New Castle County Comprehensive Development Plan.

Section 10.    Inconsistent Ordinances and Resolutions Repealed. All ordinances or parts of ordinances and all resolutions or parts of resolutions that may be in conflict herewith are hereby repealed except to the extent they remain applicable to land use matters reviewed under previous Code provisions as provided in Chapter 40 of the New Castle County Code.

Section 11.    Severability. The provisions of this ordinance shall be severable. If any provision of this ordinance is found by any court of competent jurisdiction to be unconstitutional or void, the remaining provisions of this ordinance shall remain valid, unless the court finds that the valid provisions of this ordinance are so essentially and inseparably connected with, and so dependent upon, the unconstitutional or void provision that it cannot be presumed that County Council would have enacted the remaining valid provisions without the unconstitutional or void one; or unless the court finds that the remaining valid provisions, standing alone, are incomplete and incapable of being executed in accordance with County Council's intent. If any provision of this ordinance is found to be unconstitutional or void all applicable former ordinances, resolutions, or portions thereof shall become applicable and shall be considered as continuations thereof and not as new enactments regardless if severability is possible.

A12

09/15/2006 FRI 13:02  FAX                                                    ☐013/013
08/30/2006 11:12 FAX                                                         ☐010

      **Section 12.**    **Effective Date.** This ordinance shall become effective immediately upon its adoption by County Council and approval by the County Executive.

Approved on:                                                    Adopted by County Council of
                                                       New Castle County on:
                                                       7/25/06

County Executive       7/31/06                    President of County Council
                                                          New Castle County

**SYNOPSIS:**  This ordinance changes sewer capacity concurrency requirements to provide for the same standard everywhere in New Castle County. This ordinance also replaces impact fees with the collection of capital recovery fees to offset the cost of new treatment works, sanitary sewer interceptors, and trunk line construction in the SSSA.  The sewer connection fees provided in Chapter 40, Article 12 are being moved to Chapter 38 where other sewer provisions and fees are delineated.

**FISCAL NOTE:** This ordinance replaces sewer impact fees with capital recovery fees to offset the capital costs of sewer infrastructure in the SSSA.  The County shall retain a qualified firm to perform a rate study establishing the initial amount of the SSSA capital recovery fee(s).

12/28/2007 FRI 10:49  FAX                                    ☑005/009
01/30/2007 17:58 FAX 302 395 8333                          ☑001

Introduced by:    Mr. Tansey ᴨᵁˢᵀ
Date of introduction:    10/24/06

SUBSTITUTE NO. 1 TO
ORDINANCE NO. 06 - 125

**TO REVISE THE *NEW CASTLE COUNTY CODE*,
CHAPTER 40 ("UNIFIED DEVELOPMENT CODE") REGARDING
ARTICLE 5 ("SITE CAPACITY AND CONCURRENCY CALCULATIONS"),
ARTICLE 12 ("SEWER AND WATER IMPACT"), AND ARTICLE 22
("DRAINAGE, UTILITIES, SEPTIC SYSTEMS, PARKING,
LOADING, AND LIGHTING")**

**WHEREAS,** as part of an extensive review of its plans for providing sanitary sewer service to the Southern Sewer Service Area ("SSSA"), New Castle County ("County") identified several modifications to Chapters 38 and 40 of the *New Castle County Code* ("*County Code*"); and

**WHEREAS,** with the adoption of Ord. 06-041 and Sub. No. 1 to Ord. 06-042 on July 25, 2006 by County Council, the County required capital recovery fees to be paid in the SSSA instead of sewer impact fees and adopted a new method for sewer concurrency for the SSSA, which requires that sewer capacity be provided on a first come, first served basis if and/or when sanitary sewer becomes available, as determined by the Department of Special Services, in all sewer service areas in the County; and

**WHEREAS,** the County desires to revise certain additional portions of the *County Code* to make all provisions of the *County Code* consistent with the provisions of the abovementioned ordinances; and

**WHEREAS,** New Castle County Council has determined that the provisions of this Ordinance substantially advance, and are reasonably and rationally related to, the legitimate government interest of promoting the health, safety, morals, convenience, order, prosperity and welfare of the present and future inhabitants of this State.

**NOW, THEREFORE, THE COUNTY OF NEW CASTLE HEREBY ORDAINS:**

**Section 1.** *New Castle County Code*, Chapter 40 ("Unified Development Code"), Article 5 ("Site Capacity and Concurrency Calculations"), Section 40.05.050 ("Applicability") is hereby amended by deleting the material in brackets and adding the material that is underscored, as set forth below:

**Division 40.05.050. Applicability.**

At the preapplication stage for a rezoning or a major or minor subdivision or land development proposal, the applicant shall comply with the requirements of this Article and shall submit a complete site carrying capacity analysis pursuant to Section 40.05.510, except as follows.

- *1* -

A14

A.   · A site resource capacity analysis....

....

H.   Proposed public facilities that are needed to support development such as schools, parks on government land, libraries, sewer, police, fire stations, or hospitals, shall be exempt from this Article, Article 10 (excluding floodplain or federal or state wetland regulations), Article 14 [(excluding sewer impact fee provisions)], and Table 40.03.210, Table 40.04.111 (excluding lighting regulations), and Section 40.04.240. Such development shall comply with the provisions of Article 11, however, the Department and DelDOT shall determine on a case-by-case basis the time frame by which any mitigation must be completed.

....

K.   The floor area of parking structures....

Section 2.  *New Castle County Code*, Chapter 40 ("Unified Development Code"), Article 12 ("Sewer and Water Impact"), Division 40.12.000 ("Purpose") is hereby amended by deleting the material in brackets and adding the material that is underscored, as set forth below:

**Division 40.12.000. Purpose.**

The purpose of this Article is to ensure that development occurs only where there are adequate sewer and water facilities in place, or programmed for construction, prior to the issuing of development permits. The County supplies sewer service [and] that is limited in its discharges to the Delaware River and is limited by available capacity in its ~~sewage~~ treatment facilities. Independent water companies currently supply water service, but the County must ensure that the service is adequate. New development may use water capacity on a first come, first served basis, but must provide certification that capacity is available. New development may [continue to] use sewer capacity on a first come, first served basis [north of the C&D Canal within a sewer service area. South of the C&D Canal sewer capacity shall be distributed within the Southern Sewer Service Area proportionately based upon acreage] in all sewer districts in the County if and/or when sanitary sewer service becomes available, as determined by the Department of Special Services.

Section 3.   *New Castle County Code*, Chapter 40 ("Unified Development Code"), Article 12 ("Sewer and Water Impact"), Division 40.12.300 ("Service Capacity Calculations"), Section 40.12.310. ("Sewer Capacity Calculations") is hereby amended by deleting the material in brackets and adding the material that is underscored, as set forth below:

-2-

12/28/2007 FRI 10:49  FAX                                    ☑007/009
    01/30/2007 17:59 FAX 302 395 8333                        ☑003

Sec. 40.12.310. Sewer capacity calculations.

A.    *Service.....*

B.    *Available capacity determination.....*

[C.   *Capacity per acre.* The capacity of the Southern Sewer Service Area shall be divided by the number of vacant developable acres in the service area. If there is more than one (1) zoning district in the sewer service area, the Department shall determine the capacity per acre by zoning district as follows:]

[1.   The density or intensity of use in either dwelling units or floor area for each district shall be converted to gd or mgd per acre using the standards in Section 40.05.300.]

[2.   The proportion of the maximum gd or mgd is calculated by multiplying vacant acres for each zoning district by the demand per acre. Gd or mgd for all districts shall be totaled. The percentage of gd or mgd by zoning district shall be obtained by dividing the gd or mgd per zoning district by total gd or mgd.]

[3.   The sewer service area capacity shall be allocated by district using the percentage in step 2 above. Capacity per acre shall be obtained by dividing the gd or mgd per zoning district by the vacant buildable acres.]

**Section 4.**    *New Castle County Code*, Chapter 40 ("Unified Development Code"), Article 22 ("Drainage, Utilities, Septic Systems, Parking, Loading, and Lighting"), Division 40.22.300 ("Sanitary Sewer"), Section 40.22.360 ("Lot size and density requirements for all unsewered lots") is hereby amended by deleting the material in brackets and adding the material that is underscored, as set forth below:

Sec. 40.22.360. Lot size and density requirements for all unsewered lots.

A.    On any subdivision lot where a septic system is permitted by this Article to be used, the minimum lot area shall be as follows:

1.    *Lot size for unsewered lots....*

2.    *Exceptions....*

a.    *....*

b.    Lot sizes no smaller than three-quarters (3/4) of an acre serviced by individual septic fields so long as the applicant agrees to install all dry sewer lines necessary to connect the community system to the future County sewer system trunk

- 3 -

A16

line as determined by the Department of Special Services. Upon completion and acceptance by the Department of Special Services, all dry lines shall be owned and operated by the Department of Special Services. The applicant [shall be exempt from sewer impact fees, but] must pay all applicable service impact fees. Upon septic system failure, the user shall hook up to the County southern sewer system after paying all applicable capital recovery and connection fees as determined by the Department of Special Services. The applicant shall be able to utilize the UDC level of service standards applicable to the Sewer Service Area South of the C&D Canal as provided for in Section 40.11.210(B)(1) so long as the applicant provides an amount of open space at least ten (10) times greater then the amount required under applicable former Code provisions (i.e., one (1) acre of open space per three (3) units instead of one (1) acre of open space per thirty (30) units) and pays the voluntary school assessment pursuant to 9 *Del. C.* § 2661(c), or its successor. At the time the contract of sale is entered into with a prospective buyer who intends to build a home on the lot, the seller shall notify the prospective buyer, in writing, that the buyer shall be fully responsible for all costs and fees associated with the mandatory future sewer connection. The prospective buyer shall acknowledge this notification by signing the document. The seller shall then record the document in the New Castle County Office of the Recorder of Deeds at the time of closing to give such notice to all future purchasers of the home.

**Section 5.    Consistent with Comprehensive Development Plan.** New Castle County Council finds that the provisions of this Ordinance are consistent with the spirit and intent of the New Castle County Comprehensive Development Plan.

**Section 6.    Inconsistent Ordinances and Resolutions Repealed.** All ordinances or parts of ordinances and all resolutions or parts of resolutions that may be in conflict herewith are hereby repealed except to the extent they remain applicable to land use matters reviewed under previous Code provisions as provided in Chapter 40 of the New Castle County Code.

**Section 7.    Severability.** The provisions of this Ordinance shall be severable. If any provision of this Ordinance is found by any court of competent jurisdiction to be unconstitutional or void, the remaining provisions of this ordinance shall remain valid, unless the court finds that the valid provisions of this Ordinance are so essentially and inseparably connected with, and so dependent upon, the unconstitutional or void provision that it cannot be presumed that County Council would have enacted the remaining valid provisions without the unconstitutional or void one; or unless the court finds that the remaining valid provisions, standing alone, are incomplete and incapable of

A17

12/28/2007 FRI 10:49  FAX                                                      ☑009/009
01/30/2007 17:59 FAX 302 395 8333                                            ☑005

being executed in accordance with County Council's intent. If any provision of this Ordinance is found to be unconstitutional or void all applicable former ordinances, resolutions, or portions thereof, it shall become applicable and shall be considered as continuations thereof and not as new enactments regardless if severability is possible.

**Section 8.**     **Effective Date.** This ordinance shall become effective immediately upon its adoption by County Council and approval by the County Executive.

Approved on:

Adopted by County Council of New Castle County on: _1/23/07_

County Executive
New Castle County

President of County Council

**SYNOPSIS:**  This Ordinance revises and conforms certain provisions in Chapter 40, Unified Development Code to the changes in the *New Castle County Code* made by Ord. 06-041 and Sub. No. 1 to Ord. 06-042, which alters, among other things, sewer capacity and concurrency requirements and sewer connection fees for the SSSA.

**FISCAL NOTE:**  This Ordinance has no discernable fiscal impact.

-5-

A18

State of Delaware )
) ss:
New Castle County )

## **AFFIDAVIT**

EDWIN P. KUIPERS, being duly sworn according to law, deposes and states as follows:

1. I am an Assistant County Engineer in the New Castle County ("County") Department of Special Services, who is responsible for the supervision of seven County construction contracts being performed in the area below the C&D canal, commonly known as the Southern Sewer Service Area.

2. To the best of my knowledge and belief, construction on the first of these seven construction projects began on February 5, 2007, and the attached Notices to Proceed are true and accurate copies of the Notices to Proceed sent to the contractors for each of these construction projects.

_Edwin P. Kuipers_
Edwin P. Kuipers

SWORN TO AND SUBSCRIBED before me this 2d day of January , 2008.

_Notary Public_ DE Bar #4331

A19

01/02/2008  WED 11:30  FAX

CHRISTOPHER A. COONS
COUNTY EXECUTIVE



RICHARD T. PRZYWARA
GENERAL MANAGER

### DEPARTMENT OF SPECIAL SERVICES

**CERTIFIED MAIL**

January 26, 2007

Joel Christman
Eastern States Construction Service, Inc.
702 First State Boulevard
Wilmington, DE  19804

RE:  Cedar Lane Force Main

Dear Mr. Christman:

This letter constitutes your formal notice to proceed on the above-mentioned contract. The contract time will begin on the earliest of the eleventh (11th) calendar day after receipt of this notice or the day construction actually starts.

A release of liens must be filled out at the completion of the contract and returned to Cathy DiChristofaro, Financial Office of Special Services, 187-A Old Churchmans Rd, New Castle, Delaware  19720, before final payment can be released.

Sincerely,

Ed Kuipers, 
Assistant Co

EK/ec

cc:    Jonathan Husband
       Tracy Surles
       David Clark
       William Wagner, P.E.
       Jack Wolos

87 READS WAY, NEW CASTLE, DE 19720          PHONE:  302-3

U.S. Postal Service
**CERTIFIED MAIL  RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)
For delivery information visit our website at www.usps.com

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total | |

Postmark Here

Joel Christman
Eastern States Construction Service, Inc.
702 First State Boulevard
Wilmington, DE  19804

A20

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired. ■ Print your name and address on the reverse so that we can return the card to you. ■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Received by (Please Print Clearly) B. Date of Delivery C. Signature ☐ Agent ☐ Addressee D. Is delivery address different from item 1? ☐ Yes If YES, enter delivery address below: ☐ No |
| 1. Article Addressed to: Joel Christman Eastern States Construction Service, Inc. 702 First State Boulevard Wilmington, DE 19804 | 3. Service Type ☐ Certified Mail ☐ Express Mail ☐ Registered ☐ Return Receipt for Merchandise ☐ Insured Mail ☐ C.O.D. 4. Restricted Delivery? (Extra Fee) ☐ Yes |
| 2. Article Number (Copy from service label) | 7004 1350 0004 4789 1081 |
| PS Form 3811, July 1999        Domestic Return Receipt | 102595-99-M-1789 |



UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

RECEIVED

JAN 3 1 2007

New Castle County
Department of Special Services

Ed Kuipers, P.E.
Assistant County Engineer
New Castle County
Department of Special Services
Engineering & Environmental Compliance
187-A Old Churchmans Road
New Castle, DE 19720

A22

01/02/2008 WED 11:31 FAX

CHRISTOPHER A. COONS
COUNTY EXECUTIVE

TRACY ZLOCK SURLES
ACTING GENERAL MANAGER



DEPARTMENT OF SPECIAL SERVICES

**CERTIFIED MAIL**

June 22, 2007

Mr. David Fedor
R. E. Pierson Construction Co.
426 Swedesboro Road
Pilesgrove, N J 08098

RE:    Southern Cedar Lane Force Main
       Contract No.: 2006-05
       Project No.: 279603

Dear Mr. Fedor:

        This letter constitutes your formal notice to proceed on the above-mentioned contract. The contract time will begin on the <u>earliest</u> of the eleventh (11th) day after receipt of this notice or the day construction actually starts.

        A release of liens must be filled out at the completion of the contract and returned to Cathy DiChristofaro, Financial Office of Special Services, 187-A Old Churchmans Road, New Castle, DE 19720, before final payment can be released.

                                        Sincerely,

                                        Ed Kuipers, P.E.
                                        Assistant County Engineer

EK/ec

cc:    Tracy Surles
       Jonathan Husband
       David Clark
       Catherine DiCristofaro
       Jack Wolos
       John Ziemann
       William Wagner

01/02/2008   WED 11:31   FAX



01/02/2008 WED 11:51 FAX

CHRISTOPHER A. COONS
COUNTY EXECUTIVE

RICHARD T. PRZYWARA
GENERAL MANAGER



DEPARTMENT OF SPECIAL SERVICES

**CERTIFIED MAIL**

February 01, 2007

Mr. Robert DePonte
Metra Industries, Inc.
50 Muller Place
Little Falls, NJ 07424

RE: Hyetts Corner Interceptor

Dear Mr. DePonte:

This letter constitutes your formal notice to proceed on the above-mentioned contract. The contract time will begin on the earliest of the eleventh (11th) day after receipt of this notice or the day construction actually starts.

A release of liens must be filled out at the completion of the contract and returned to Cathy DiChristofaro, Financial Office of Special Services, 187-A Old Churchmans Road, New Castle, DE 19720, before final payment can be released.

Sincerely,

Ed Kuipers, P.E.
Assistant County Engineer

EK/ec

cc:     Tracy Surles
        Jonathan Husband
        David Clark
        Catherine DiCristofaro
        Jack Wolos
        Robert Rinne, P.E., BV
        John Ziemann

187-A OLD CHURCHMANS ROAD, NEW CASTLE, DE 19720          PHONE: 302-395-5700          FAX: 302-395-5802

A25

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired. <br> ■ Print your name and address on the reverse so that we can return the card to you. <br> ■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Received by (Please Print Clearly)  MUGNO  B. Date of Delivery 2/6/07 <br> C. Signature  X  ☐ Agent ☐ Addressee <br> D. Is delivery address different from item 1? ☐ Yes <br>    If YES, enter delivery address below: ☐ No |
| 1. Article Addressed to: <br><br> Mr. Robert DePonte <br> Metra Industries, Inc. <br> 50 Muller Place <br> Little Falls, NJ 07424 | 3. Service Type <br> ☒ Certified Mail   ☐ Express Mail <br> ☐ Registered     ☐ Return Receipt for Merchandise <br> ☐ Insured Mail    ☐ C.O.D. <br> 4. Restricted Delivery? (Extra Fee)      ☐ Yes |
| 2. Article Number (Copy from service label) | 7006 0810 0002 8939 6438 |

PS Form 3811, July 1999      Domestic Return Receipt      102595-99-M-1789

U.S. Postal Service™
CERTIFIED MAIL™ RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| Postage | $ | |
| Certified Fee | | |
| Return Receipt Fee (Endorsement Required) | | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total | | |

Mar 2/1/07

Sent To  Mr. Robert DePonte
Street,   Metra Industries, Inc.
or PO    50 Muller Place
City, S   Little Falls, NJ 07424

PS Form 3800, June 2002      See Reverse for Instructions

7006 0810 0002 8939 6438

A26

01/07/2000 WED 11:51 FAX

**CHRISTOPHER A. COONS**
COUNTY EXECUTIVE

**TRACY ZLOCK SURLES**
ACTING GENERAL MANAGER



DEPARTMENT OF SPECIAL SERVICES

**CERTIFIED MAIL**

February 21, 2007

Mr. Carl Zeroski
Quad Construction Company
732 Eayreston Road
Lumberton, NJ 08048

RE:  Scott Run Pumping Station
P.O. #130895

Dear Mr. Zeroski:

This letter constitutes your formal notice to proceed on the above-mentioned contract.  The contract time will begin on the earliest of the eleventh (11th) day after receipt of this notice or the day construction actually starts.

A release of liens must be filled out at the completion of the contract and returned to Cathy DiChristofaro, Financial Office of Special Services, 187-A Old Churchmans Road, New Castle, DE  19720, before final payment can be released.

Sincerely,

Ed Kuipers, P.E.
Assistant County Engineer

EK/ec

cc:   Tracy Surles
      Jonathan Husband
      David Clark
      Catherine DiCristofaro
      Jack Wolos
      William, Wagner, P.E., WR
      John Ziemann

187-A OLD CHURCHMANS ROAD, NEW CASTLE, DE 19720          PHONE: 302-395-5700          FAX: 302-395-5802

A27

01/02/2008 WED 11:31  FAX



**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

**OFFICIAL USE**

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | |
| Total | |

Sent To
Mr. Carl Zeroski
Quad Construction Company
732 Eayreston Road
Lumberton, NJ 08048

PS Form 3800, June 2002          See Reverse for Instructions

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Mr. Carl Zeroski
Quad Construction Company
732 Eayreston Road
Lumberton, NJ 08048

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly)   B. Date of Delivery

C. Signature
X _____  ☐ Agent
                       ☐ Addressee

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

FEB 23 2007

3. Service Type
   ☒ Certified Mail   ☐ Express Mail
   ☐ Registered       ☐ Return Receipt for Merchandise
   ☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number (Copy from service label)   7004 1350 0004 4789 1104

PS Form 3811, July 1999      Domestic Return Receipt      102595-99-M-1789

A28

01/02/2008 WED 11:31  FAX



CHRISTOPHER A. COONS
COUNTY EXECUTIVE

TRACY ZLOCK SURLES
ACTING GENERAL MANAGER



DEPARTMENT OF SPECIAL SERVICES

**CERTIFIED MAIL**

February 27, 2007

Mr. Carl Zeroski
Quad Construction Company
732 Eayreston Road
Lumberton, NJ 08048

RE:  Cedar Lane Pumping Station
     P.O. #130682

Dear Mr. Zeroski:

This letter constitutes your formal notice to proceed on the above-mentioned contract.  The contract time will begin on the earliest of the eleventh (11th) day after receipt of this notice or the day construction actually starts.

A release of liens must be filled out at the completion of the contract and returned to Cathy DiChristofaro, Financial Office of Special Services, 187-A Old Churchmans Road, New Castle, DE 19720, before final payment can be released.

Sincerely,

Ed Kuipers, P.E.
Assistant County Engineer

EK/ec

cc:    Tracy Surles
       Jonathan Husband
       David Clark
       Catherine DiCristofaro
       Jack Wolos
       William, Wagner, P.E., WR
       John Ziemann

187-A OLD CHURCHMANS ROAD, NEW CASTLE, DE 19720          PHONE:  302-395-5700          FAX:  302-395-5602

A29

01/02/2008 WED 11:31 FAX

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage | Mr. Carl Zeroski |

Sent To     Quad Construction Company
Street, Apt.     732 Eayreston Road
or PO Box N     Lumberton, NJ 08048
City, State, Z

PS Form 3800, June 2002                    See Reverse for Instructions

7006 0810 0002 8939 6353

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Mr. Carl Zeroski
Quad Construction Company
732 Eayreston Road
Lumberton, NJ 08048

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly)     B. Date of Delivery
3/5/0

C. Signature
X                                        ☐ Agent
                                         ☐ Addressee

D. Is delivery address different from item 1?     ☐ Yes
   If YES, enter delivery address below:          ☐ No

3. Service Type
   ☑ Certified Mail     ☐ Express Mail
   ☐ Registered          ☐ Return Receipt for Merchandise
   ☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)     ☐ Yes

2. Article Number (Copy from service label)
   7006 0810 0002 8939 6353

PS Form 3811, July 1999        Domestic Return Receipt        102595-99-M-1789

A30

01/02/2008 WED 11:31 FAX

CHRISTOPHER A. COONS
COUNTY EXECUTIVE

TRACY ZLOCK SURLES
ACTING GENERAL MANAGER



DEPARTMENT OF SPECIAL SERVICES

CERTIFIED MAIL

May 22, 2007

Mr. Stephen J. Saloma, P.E.
Vice President
Marona Construction Company
3191 Trewigtown Road
P O Box 283
Colmar, PA  18915-0283

RE:     Cedar Lane Interceptor
        Contract No.: 2004-26
        Project No.: 279603

Dear Mr. Saloma:

        This letter constitutes your formal notice to proceed on the above-mentioned contract. The contract time will begin on the earliest of the eleventh (11th) day after receipt of this notice or the day construction actually starts.

        A release of liens must be filled out at the completion of the contract and returned to Cathy DiChristofaro, Financial Office of Special Services, 187-A Old Churchmans Road, New Castle, DE  19720, before final payment can be released.

                                        Sincerely,

                                        Ed Kuipers, P.E.
                                        Assistant County Engineer

EK/cc

cc:     Tracy Surles
        Jonathan Husband
        David Clark
        Catherine DiCristofaro
        Jack Wolos
        John Ziemann
        William Wagner

187-A OLD CHURCHMANS ROAD, NEW CASTLE, DE 19720          PHONE: 302-395-5700          FAX: 302-395-5802

A31

01/02/2008 WED 11:31 FAX

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

**OFFICIAL USE**

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total | |

Postmark
Here

Sent To
Mr. Stephen J. Saloma, P.E.
Vice President
Marona Construction Company
3191 Trewigtown Road
P O Box 283
Colmar, PA 18915-0283

7006 0810 0002 8537 4108

PS Form 3800, June 2002          See Reverse for Instructions

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Mr. Stephen J. Saloma, P.E.
Vice President
Marona Construction Company
3191 Trewigtown Road
P O Box 283
Colmar, PA 18915-0283

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly)   B. Date of Delivery

C. Signature
X  CAROL Rogtche    ☐ Agent
                    ☐ Addressee

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
   ■ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number (Copy from service label)
   7006 0810 0002 8537 4108

PS Form 3811, July 1999       Domestic Return Receipt       102595-00-M-1789

A32

01/02/2008 WED 11:32 FAX

CHRISTOPHER A. COONS
COUNTY EXECUTIVE

TRACY ZLOCK SURLES
ACTING GENERAL MANAGER



## DEPARTMENT OF SPECIAL SERVICES

**CERTIFIED MAIL**

March 21, 2007

Mr. Stephen J. Saloma, P.E.
Vice President
Marona Construction Company
3191 Trewigtown Road
P O Box 283
Colmar, PA  18915-0283

RE:     Scott Run Interceptor & Force Main
        Contract No.: 2004-35
        Project No.: 279603

Dear Mr. Saloma:

This letter constitutes your formal notice to proceed on the above-mentioned contract. The contract time will begin on the earliest of the eleventh (11th) day after receipt of this notice or the day construction actually starts.

A release of liens must be filled out at the completion of the contract and returned to Cathy DiChristofaro, Financial Office of Special Services, 187-A Old Churchmans Road, New Castle, DE  19720, before final payment can be released.

Sincerely,

Ed Kuipers, P.E.
Assistant County Engineer

EK/ec

cc:     Tracy Surles
        Jonathan Husband
        David Clark
        Catherine DiCristofaro
        Jack Wolos
        John Ziemann
        William Wagner

187-A OLD CHURCHMANS ROAD, NEW CASTLE, DE 19720        PHONE: 302-395-5700        FAX: 302-395-5802

A33

01/02/2008 WED 11:32 FAX



**CERTIFICATE OF SERVICE**

I, Max B. Walton, hereby certify that on the 31st day of January, 2008, a copy of

the Appendix Of Documents To New Castle County's Opening Brief in Support of Its

Motion to Dismiss the Amended Complaint was served by CM/ECF to counsel of record

as follows:

Jeffrey M. Weiner (Bar No. 403)
Law Offices of Jeffrey M. Weiner
1332 King Street
Wilmington, DE 19801

Max B. Walton (Bar No. 3876)